IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ANDREW J. MAXWELL, not individually, but as Trustee for the estate of Eduardo Garcia and Julia Escamilla (nka Julie Garcia); EDUARDO GARCIA; JULIE GARCIA; BYRON GARCIA; and MIRIAHM GARCIA, individually, | Case No. 1:20-cv-02402 |
| Plaintiffs | Hon. Rebecca R. Pallmeyer |
| v. | ORAL ARGUMENT REQUESTED |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

**WELLS FARGO'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

LEGAL STANDARD................................................................................................................. 4

ARGUMENT ............................................................................................................................ 5

I.      The complaint does not state a claim for negligence. ......................................... 5

        A.      Wells Fargo did not owe Plaintiffs a duty of care. ................................ 5

        B.      The economic-loss rule bars the negligence claim. ............................... 6

II.     The complaint does not state a claim under the Illinois Consumer Fraud Act. ................... 7

        A.      The complaint does not plausibly allege that Wells Fargo acted immorally,
                unethically, or against public policy. ...................................................... 8

        B.      The complaint does not plausibly allege that Wells Fargo caused Plaintiffs'
                injury. ......................................................................................................... 8

III.    The Garcias lack standing to sue. ....................................................................... 9

CONCLUSION....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson Elec. v. Ledbetter Erection*,
    503 N.E.2d 246 (1986) ................................................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 4

*Bank of Am. v. 108 N. State Retail*,
    928 N.E.2d 42 (Ill. App. Ct. 2010) ............................................................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 4

*FirstMerit Bank v. Quanstrom-Rose*,
    2013 WL 6577028 (N.D. Ill.) ...................................................................................... 6

*Freedom Mortg. v. Burnham Mortg.*,
    720 F. Supp. 2d 978 (N.D. Ill. 2010) ........................................................................ 5

*Gammons v. Crown Castle USA*,
    2019 WL 1168104 (N.D. Ill.) ...................................................................................... 5

*Gray Ins. v. Zosky*,
    2014 WL 3881546 (N.D. Ill.) ...................................................................................... 7

*Griffith-Fenton v. MERS*,
    531 F. App'x 95 (2d Cir. 2013) .................................................................................. 6

*Kinsella v. Capital One*,
    2018 WL 5884520 (N.D. Ill.) ...................................................................................... 6

*LaSalle Bank Nat'l Ass'n v. Paramont Props.*,
    588 F. Supp. 2d 840 (N.D. Ill. 2008) ..................................................................... 5, 7

*Lightspeed Media v. Smith*,
    830 F.3d 500 (7th Cir. 2016) .................................................................................... 10

*Miller v. Am. Nat'l Bank & Tr.*,
    4 F.3d 518 (7th Cir. 1993) .......................................................................................... 5

*Moorman Mfg. v. Nat'l Tank*,
    435 N.E.2d 443 (Ill. 1982) ...................................................................................... 6, 7

*N. Tr. v. VIII S. Michigan*,
  657 N.E.2d 1095 (Ill. 1995)..................................................................................6

*Pillows v. Cook Cty. Recorder of Deeds Office*,
  2019 WL 5654872 (N.D. Ill.) .............................................................................5

*Putzier v. Ace Hardware*,
  50 F. Supp. 3d 964 (N.D. Ill. 2014) ....................................................................9

*Robinson v. Toyota Motor Credit*,
  775 N.E.2d 951 (Ill. 2002) ..................................................................................8

*Rodriguez v. Chase Home Fin.*,
  2011 WL 5076346 (N.D. Ill.) .............................................................................9

*Siegel v. Shell Oil*,
  612 F.3d 932 (7th Cir. 2010) ..............................................................................7

*Smith v. Fifth Third Mortg.*,
  2015 WL 6152848 (N.D. Ill.) .............................................................................5

*Whitley v. Taylor Bean & Whitacker Mortg.*,
  607 F. Supp. 2d 885 (N.D. Ill. 2009) ..................................................................5

*Wigod v. Wells Fargo Bank*,
  673 F.3d 547 (7th Cir. 2012) .......................................................................3, 6, 7

**Statutes**

Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*............................................1, 2, 7

## **INTRODUCTION**

The Plaintiffs in this case, the Garcias, had the misfortune of refinancing their house with an adjustable rate mortgage at the worst possible time: on the eve of the Great Recession. Their monthly payment increased drastically just as Mr. Garcia's business failed. As a result, they defaulted on their mortgage.

Wells Fargo worked with them to lower their payments. But a repayment agreement failed in late 2008 when they did not make a scheduled payment. Then, around two years later, Wells Fargo declined to offer them a trial loan modification under the federal government's Home Affordable Modification Program ("HAMP"). If the modification had been offered, they would have been put on a trial payment plan, and if they had made the payments, the modification *could* have become permanent. But a calculation error in the software that Wells Fargo used to evaluate modification requests led Wells Fargo to believe Plaintiffs did not qualify. Ultimately, Plaintiffs' house was sold in foreclosure, after which they still owed Wells Fargo more than $150,000, a debt they discharged in bankruptcy.

When Wells Fargo discovered that Plaintiffs were affected by the software error, it notified them, sent them no-strings-attached payments totaling almost $25,000, offered to mediate with them, and provided them with other information. But they and the trustee of their bankruptcy estate sued, asserting that Wells Fargo was negligent and had violated the Illinois Consumer Fraud Act.

The negligence claim is defective for two reasons, First, Wells Fargo, as a lender, owed no duty to Plaintiffs, as borrowers, on which a negligence claim could be based. Wells Fargo was not obliged to modify their loan. Nor can Plaintiffs rely on HAMP to supply a duty. As the Seventh Circuit held, courts have uniformly rejected claims that homeowners have rights that

arise under HAMP itself. Second, the economic loss rule bars the negligence claim, just as the Seventh Circuit held it barred a negligence claim against Wells Fargo in a different HAMP loan modification case. Plaintiffs cannot show Wells Fargo owed them any duty outside the contractual relationship, and the consequences of default are a purely economic injury that can only be redressed through a breach of contract claim—which Plaintiffs have not even asserted.

The Illinois Consumer Fraud Act claim must also be dismissed. It requires factual allegations plausibly showing unfair conduct—meaning that Wells Fargo acted immorally or unethically—but the allegations here show the opposite: Wells Fargo had a software error, which even Plaintiffs admit was not intentional, and Wells Fargo notified Plaintiffs to alert them to it. Wells Fargo also had no incentive to create a software error or have a foreclosure and sale, because the sale here left Wells Fargo with a $150,000 debt that Plaintiffs discharged.

In addition, the only plausible reading of the complaint is that the refinancing and Great Recession caused Plaintiff's injury—the default. They do not even attempt to allege that they could have made the trial payments or the payments under a permanent loan modification. And not only had they already failed to make a scheduled repayment, a document they attached to their complaint shows that their expenses were far higher than their income. The entire complaint should be dismissed.

Finally, if any claim survives, the only proper plaintiff is the bankruptcy trustee. The bankruptcy estate, not the Garcias, owns claims that arose before the bankruptcy, including the claims in this case. Only the trustee has standing to assert them, so the Garcia plaintiffs should in any event be dismissed.

**BACKGROUND**

In 2002, Plaintiffs borrowed money from Wells Fargo to buy a house for more than $200,000. (Compl. ¶¶ 12, 62.) They spent another $40,000 renovating it. (*Id*. ¶ 67.) In 2006, they decided to refinance, and they took out an adjustable rate mortgage. (*Id*. ¶ 68.) Unfortunately, that decision was particularly ill-timed: during the Great Recession, in 2008, the required monthly payment "increased drastically," Mr. Garcia's business failed, and as a result Plaintiffs stopped paying the mortgage. (*Id*. ¶¶ 70-73.)

Plaintiffs asked Wells Fargo to lower the mortgage payments. (*Id*. ¶ 75.) In November 2008, Wells Fargo denied their request for a repayment agreement, because they failed to make the repayment plan's scheduled payment. (*Id*. Ex. A at 2.) Two years later, while Plaintiffs were still in the house, Wells Fargo declined to offer them a loan modification under the federal government's Home Affordable Modification Program. (*Id*. Ex. A at 3.) Under HAMP, a qualifying borrower is put on a trial payment plan, and if the trial payments are made on time, the borrower can receive a permanent loan modification. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 557 (7th Cir. 2012); hud.gov/hudprograms/fhahamp. Plaintiffs do not allege that they would have been able to make the trial payments that HAMP would have required. Nor do they allege that they would have been able to make the payments under a permanently modified loan.

Eventually, in 2011, Wells Fargo foreclosed and obtained approval for a judicial sale of the house. (Compl. ¶¶ 81-83.) After the sale and final judgment, Plaintiffs still owed Wells Fargo more than $150,000. (*Id*. ¶ 85.) They discharged this debt through a Chapter 7 bankruptcy. (*Id*. ¶ 86.) The bankruptcy estate's trustee, as a plaintiff in the present case, seeks to recover amounts claimed by the bankruptcy estate's creditors. (*Id*. ¶ 16.) For ease of reference, this motion generally refers to the Garcias as "Plaintiffs" and the trustee as "Trustee."

Wells Fargo later discovered that the automated software it used to evaluate requests for trial payment plans under HAMP contained a calculation error that led Wells Fargo to believe Plaintiffs did not qualify. (*Id*. ¶¶ 3, 98 & Ex. B at 2.) Wells Fargo sent Plaintiffs a letter that admitted the mistake, stated Wells Fargo's desire to make things right, enclosed a payment, offered to mediate, and informed them about a class action case, *Hernandez v. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.). (*Id*. Ex. B at 2.)[1] Wells Fargo eventually sent them a total of $24,500 in payments, but Plaintiffs and the Trustee filed this lawsuit, alleging gross negligence and consumer fraud. (*Id*. ¶¶ 102, 109 & Counts One and Two.)

This is a copycat lawsuit. Thirty-six paragraphs of the complaint's allegations (paragraphs 23-33 and 37-61) are lifted, verbatim or nearly so, from the complaints in *Hernandez* and another case, *West v. Wells Fargo* (No. 19-cv-286, E.D. Ky.). This copycat case was filed only after the parties in *Hernandez* announced a class settlement that included all borrowers who experienced a foreclosure. It was filed before Plaintiffs or the Trustee even knew the size of the settlement as it relates to Plaintiffs' house.

**LEGAL STANDARD**

"[F]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court may consider "documents attached to the complaint, documents that

---

[1] The software error that affected Plaintiffs affected fewer than 900 of the roughly 3 million borrowers who asked Wells Fargo for a loan modification. In all, Wells Fargo modified roughly 1.6 million loans. (*Hernandez* Dkt. 188 at 2.)

are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Pillows v. Cook Cty. Recorder of Deeds Office*, 2019 WL 5654872, at *2 (N.D. Ill.).

## ARGUMENT

### I.     The complaint does not state a claim for negligence.

The negligence claim fails because Wells Fargo owed Plaintiffs no duty. In addition, the economic loss doctrine bars the claim.

####     A.     Wells Fargo did not owe Plaintiffs a duty of care.

To state a claim for negligence, a plaintiff must establish that the defendant owed her a duty of care. *See, e.g.*, *Freedom Mortg. v. Burnham Mortg.,* 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010). Whether any duty was owed is a question of law for the court. *See, e.g.*, *Gammons v. Crown Castle USA*, 2019 WL 1168104, at *2 (N.D. Ill.). Here, Plaintiffs allege that "Wells Fargo owed them a duty to exercise reasonable care in evaluating [their] eligibility for a loan modification because Wells Fargo undertook to review their mortgage loan for a loan modification." (Compl. ¶ 133.)

Contrary to Plaintiffs' claim, no duty was owed here. As a matter of first principles, "Illinois does not, and would not, recognize a general duty of care owed by lenders to borrowers …" *LaSalle Bank Nat'l Ass'n v. Paramont Props*., 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008) (no "tort liability based on internal lending guidelines"); *see also Whitley v. Taylor Bean & Whitacker Mortg.*, 607 F. Supp. 2d 885, 902 (N.D. Ill. 2009) (same); *Smith v. Fifth Third Mortg.*, 2015 WL 6152848, at *2 (N.D. Ill.) (no fiduciary relationship between lenders and borrowers). It is well-established that "the relationship consists simply of an arms-length transaction between debtor and creditor." *Miller v. Am. Nat'l Bank & Tr.*, 4 F.3d 518, 520 (7th Cir. 1993).

Consistent with these principles, Illinois courts hold that loan modification negotiations do not create a duty of care. For example, in *Kinsella v. Capital One*, 2018 WL 5884520, at *5 (N.D. Ill.), the plaintiffs alleged their loan servicer engaged in "sham negotiations" to prevent them from obtaining a modification. The court rejected that claim, holding that there was no duty "that would require [the bank] to provide [the plaintiffs] with a loan modification or to permit a short sale." *Kinsella*, 2018 WL 5884520, at *5.

Similarly, in *Bank of Am. v. 108 N. State Retail*, 928 N.E.2d 42, 56 (Ill. App. Ct. 2010), the plaintiff brought claims against its loan servicer based on a failed loan modification. The court dismissed the claims because the loan agreement did not require the servicer to modify the loan, and discussions about a modification did not create a duty to modify the loan. *Id*. at 60; *see also FirstMerit Bank v. Quanstrom-Rose*, 2013 WL 6577028, at *4 (N.D. Ill.) (no obligation to evaluate a modified mortgage proposal [where defendant] never contractually agreed to a modification, and thus had no good faith duty to consider one"); *N. Tr. v. VIII S. Michigan*, 657 N.E.2d 1095, 1104-05 (Ill. 1995) (no obligation for bank to renew plaintiff's loan or reveal "its internal decision making process").

Nor can Plaintiffs show that Wells Fargo owed them a duty due to HAMP. Addressing the theory that homeowners had "rights arising under HAMP itself," the Seventh Circuit recognized that "[c]ourts have uniformly rejected these claims." *Wigod*, 673 F.3d at 559 n.4; *see also Griffith-Fenton v. MERS*, 531 F. App'x 95, 1 (2d Cir. 2013) (same).

For the same reasons here, the allegations of the complaint do not plausibly show that Wells Fargo owed Plaintiffs any duty of care. The negligence claim should be dismissed.

### B.      The economic loss rule bars the negligence claim.

Plaintiffs' negligence claim also fails on the separate ground that the economic loss rule bars it. Known in Illinois as the *Moorman* doctrine, after *Moorman Mfg. v. Nat'l Tank*, 435

6

N.E.2d 443, 453 (Ill. 1982), the rule requires a valid claim for negligence to exist independently of the parties' contract, so that the tort duty is not based on the contractual relationship. In other words, there must be a duty even if the contractual relationship did not exist. *Id*. There is no tort of negligent performance of contractual obligations, and "a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Gray Ins. v. Zosky*, 2014 WL 3881546, at \*5 (N.D. Ill.). (citing *Anderson Elec. v. Ledbetter Erection*, 503 N.E.2d 246, 249 (1986)); *see also Paramont Props.*, 588 F. Supp. 2d at 852.

The Seventh Circuit has applied the economic loss rule to bar a negligence claim against Wells Fargo in a case about a denied HAMP loan modification. *Wigod*, 673 F.3d 547. In that case, the borrower alleged Wells Fargo was negligent in implementing HAMP and refusing to modify her loan. *Id*. at 567. The district court dismissed the claim, and the Seventh Circuit affirmed, holding that "to the extent Wells Fargo" owed the plaintiff any duty, that duty could come "solely out of its contractual obligations." *Wigod*, 673 F.3d at 568. "The harm she alleges is that Wells Fargo did not restructure the terms of her mortgage and thereby caused her to default. This is a purely economic injury if ever we saw one." *Id*. The same is true here. Any duty could only come out of the loan contract, and Plaintiffs are claiming an economic loss. The negligence claim should therefore be dismissed.

## II.     The complaint does not state a claim under the Illinois Consumer Fraud Act.

The complaint fails to state a claim under the Act because it does not make factual allegations plausibly showing that Wells Fargo met the Act's requirement of engaging in an unfair act or practice. *Siegel v. Shell Oil*, 612 F.3d 932, 934 (7th Cir. 2010). In determining whether an act or practice is properly alleged to be unfair, this Court considers whether it (1) offends public policy; (2) is immoral, unethical, oppressive or unscrupulous; and (3) causes the

consumer substantial injury. *Robinson v. Toyota Motor Credit*, 775 N.E.2d 951, 961 (Ill. 2002). None of those considerations are present here.

A. **The complaint does not plausibly allege that Wells Fargo acted immorally, unethically, or against public policy.**

Wells Fargo did not offend public policy, or act immorally or unethically or the like, because it is simply alleged to have made a mistake. Computer software is not perfect, and the software here included a calculation error. It was not an obvious error that led, for example, to all borrowers being rejected; it was a subtle error that affected comparatively few people. Of course Wells Fargo regrets the error, but it was only a mistake. Even Plaintiffs admit that Wells Fargo did not make this error intentionally. (Compl. ¶ 138.)

Nor was there any incentive for Wells Fargo to want to make an error or foreclose on Plaintiffs' house. A foreclosure is by definition a loss for a bank, because if a house has sufficient value, a borrower who cannot make the mortgage payments will sell it, pay off the loan, and keep the rest—avoiding a foreclosure. The allegations of this case demonstrate the point. Even after the foreclosure and sale, Plaintiffs still owed Wells Fargo more than $150,000, until their bankruptcy extinguished that debt. Wells Fargo did not benefit from the error.

What's more, when Wells Fargo discovered that the error affected Plaintiffs, it notified them. It sent them—unsolicited and without a release—payments totaling almost $25,000, it offered to mediate with them, and it made sure they were aware of a pending class action lawsuit. These actions cut strongly against a plausible inference of immoral, unethical, or unscrupulous conduct. The consumer fraud claim should be dismissed.

B. **The complaint does not plausibly allege that Wells Fargo caused Plaintiffs' injury.**

Nor does the complaint contain plausible allegations that the error caused the Plaintiffs a substantial injury. Instead, it alleges that their inability to make mortgage payments resulted from

8

their ill-timed decision to refinance to an adjustable rate mortgage on the eve of the Great

Recession, followed by a sharp increase in their mortgage rate and the unfortunate failure of Mr.

Garcia's business. *Rodriguez v. Chase Home Fin.*, 2011 WL 5076346, at *4 (N.D. Ill.) (rejecting

a claim that a bank acted unfairly under the Act: "it was the original (unchallenged) mortgage,

not the [temporary payment plan], that put [plaintiff] in the financial bind of trying to lower her

payments").

Plaintiffs notably do not allege what their payment would have been under a trial or

permanent loan modification, and whether and how they could have made the required

payments. The only plausible inference from the complaint is that they could not. Mr. Garcia

remained unemployed, and in 2008 the Garcias failed to make a required payment on an agreed

repayment plan with Wells Fargo. By February 2011, years after they stopped paying the

mortgage, they had monthly income of $2,759 and monthly expenses of $4,565. (Compl. Ex. A

at 7.) There is simply no way to read the complaint as plausibly alleging that Wells Fargo caused

Plaintiffs a substantial injury. Their consumer fraud claim should be dismissed.

**III.      The Garcias lack standing to sue.**

If the Court determines that the complaint states any claim and should not be dismissed in

its entirety, the Garcias should nonetheless be dismissed as plaintiffs. After the Garcias'

bankruptcy, the Trustee is the only proper plaintiff in this case.

"Virtually all property of the debtor at the time he files for bankruptcy—including any

causes of action—becomes property of the bankruptcy estate." *Putzier v. Ace Hardware*, 50 F.

Supp. 3d 964, 982 (N.D. Ill. 2014). That includes all causes of action whose "elements … had

occurred as of the time the bankruptcy case was commenced, so that the claim is sufficiently

rooted in the debtor's prebankruptcy past." *Id.* "[O]nly the trustee has standing to prosecute or

defend a claim belonging to the estate." *Lightspeed Media v. Smith*, 830 F.3d 500, 505 (7th Cir. 2016).

The Garcias filed for bankruptcy in May 2011 (Compl. ¶ 86), and their debts were discharged in September. (N.D. Ill. Bankr. Pet. 11-22208, Dkt. 16., attached hereto as Ex. A.)[2] In February 2020, they reopened the bankruptcy case to add to their schedule of disclosed assets a "newly discovered asset"—a claim against Wells Fargo. (N.D. Ill. Bankr. Pet. 11-22208, Dkt. 19 at 5, attached hereto as Ex. B; *see also* N.D. Ill. Bankr. Pet. 11-22208, Dkt. 24., attached hereto as Ex. C.) (They assigned this claim the value "Unknown." (N.D. Ill. Bankr. Pet. 11-22208, Dkt. 21 at 2, attached hereto as Ex. D.)) The present lawsuit was filed in April, naming as plaintiffs the Trustee and the Garcias.

The complaint's causes of action plainly accrued before the bankruptcy, because the complaint alleges (albeit implausibly, as explained above) that Wells Fargo's complained-of conduct led to the bankruptcy. Everything relating to the loan modification denial and the foreclosure and sale occurred before the bankruptcy, and the Garcias added their claims against Wells Fargo to their list of assets in the bankruptcy. Thus, the claims asserted in this case belong to the estate and may be asserted only by the Trustee. For that reason, the Garcias should in any event be dismissed as Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' entire complaint should be dismissed.


Dated: July 20, 2020                                  Respectfully submitted,

                                                      /s/   Scott P. Glauberman
                                                            Scott P. Glauberman

---

[2] District courts may "properly consider[] public court documents in deciding . . . motions to dismiss." *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone: 312-558-5600
Fax: 312-558-5700
Email: sglauber@winston.com

*Attorney for Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of July, 2020, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system, upon the following:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

/s/ Scott P. Glauberman