UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ANDREW J. MAXWELL**, not individually, but as Trustee for the estate of Eduardo Garcia and Julia Escamilla (nka Julia Garcia); **EDUARDO GARCIA**; **JULIA GARCIA**; **BYRON GARCIA**; and **MIRIAHM GARCIA**, individually, <br><br>Plaintiffs, <br><br>v. <br><br>**WELLS FARGO BANK, N.A.**, <br><br>Defendant. | Case No. 1:20-cv-02402 <br><br> Honorable Rebecca R. Pallmeyer <br><br> Honorable Heather K. McShain |

**PLAINTIFF'S MOTION TO COMPEL PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37**

Plaintiff Andrew J. Maxwell ("Maxwell") moves this Court for an order compelling discovery responses and imposing sanctions against Defendant Wells Fargo Bank, N.A., ("Wells") for its noncompliance with Federal Rules of Civil Procedure 26 and 37, as follows:

**Introduction**

This matter is before the Court on Plaintiff's motion to compel after numerous conferences with the Court and nearly eight hours of meet and confer by videoconference between counsel for the Parties. The issues are straightforward. At the outset of the case, Plaintiff requested Wells Fargo produce cloned discovery from the *Hernandez* case of the liability related documents and ***excluding*** any consumer

1

loan files or confidential consumer information. Wells refused to provide this cloned discovery of the liability related documents produced in the *Hernandez* case. Wells also refused to produce the 54 deposition transcripts of Wells Fargo employees taken in the *Hernandez* case. The Court denied Plaintiff's request for cloned discovery without prejudice. However, the Court indicated that it would revisit the issue if Plaintiff could show a need for cloned discovery after first seeking traditional discovery.

Plaintiff's counsel served interrogatories, requests for production, and requests for admission on Defendant's counsel. The Parties summarized their current respective positions in a status report filed with the Court on October 7, 2021. The Court entered an order at D.E. 47 directing Wells Fargo to supplement its discovery responses within fourteen days. The Court further ordered any motion to compel follow within ten days of the supplementation. This Motion follows.

## Additional Factual Background

1. Plaintiff provides the following list of additional relevant facts following entry of the Court's order at D.E. 47, on October 8, 2021.

2. On October 11, 2021, Wells Fargo produced an additional 142 documents labeled WF_GARCIA_00001325-1466. Again, these documents are borrower specific to the Garcias' mortgage servicing account with Wells Fargo.

3. On October 14, 2021, Plaintiff's counsel wrote Wells Fargo's counsel to inquire as to whether Wells Fargo had any further documents to produce or any additional responses by supplementation to Plaintiff's discovery requests. Wells

Fargo's counsel indicated there would be further supplemental written responses to discovery.

4. On October 22, 2021, Wells Fargo served ***unverified*** supplemental written responses to Plaintiff's interrogatories and supplemental objections and responses to Plaintiff's First Requests for Admission.

5. On October 29, 2021, Wells Fargo served its verified supplemental written responses to Plaintiff's Interrogatories.

### Interrogatory Responses

6. Despite being given the opportunity to supplement their responses, Wells Fargo continues to assert boilerplate objections and refuses to respond to Plaintiff's interrogatories.

7. Wells Fargo's verified supplemental responses are attached to this motion as ***Exhibit 1*** hereto.

8. Wells Fargo supplemented its responses to Interrogatories 1, 3, 5, 7, 11, 12, and 20.

9. Despite supplementing its responses, Wells Fargo still refuses to provide complete and meaningful answers to Interrogatory Numbers: 1, 2, 4-5, 7-10, 13-19, 21-25.

### Requests for Admission Responses

10. Wells Fargo served supplemental responses to Plaintiff's First Request for Admission on October 22, 2021. These responses continue Wells Fargo's pattern

3

of resting on boilerplate objections rather than simply admitting or denying a Request for Admission.

11. Wells Fargo's supplemental responses are attached hereto as ***Exhibit 2*** to this motion to compel.

12. While Plaintiff finds fault with many of the non-answers to the Requests for Admission, the Plaintiff will not seek to compel these answers since they can be addressed through the examination of Wells Fargo.

13. Plaintiff reserves the right to later seek appropriate sanctions for Wells Fargo's intentional obstruction of discovery related to its failure to respond to these Requests for Admission truthfully and fully, including the costs and fees associated with securing responses to these requests.

### Supplemental Responses to Requests for Production

14. The Court's Order at D.E. 47 addressed Wells Fargo's obligations with respect to document production. Thereafter, On October 22, 2021, Wells Fargo provided an email with an index tying its document production to certain of Plaintiff's requests for Production of Documents. The Table is reproduced herein, as follows:

| Loan File Documents | Responsive to RFP No(s). |
|---|---|
| Loan Documentation | 1 – 6, 15, 22, 23, 75 |
| Loan History / Loan Activity Records | 1 – 6, 15, 16, 22, 23, 75 |
| Borrower Correspondence | 11, 12, 23, 25 |
| Call Logs | 13, 16 |
| Loss Mitigation / Home Preservation Applications | 1 – 6 |
| Foreclosure Notices, Judgments, Materials | 24 |
| Remediation Correspondence | 11, 25 |

| | |
|---|---|
| CAP Sheet | 10, 18 |

15. This Index does not advise Plaintiff's Counsel which documents address each of Plaintiff's Requests for Production.

16. Wells Fargo also does not address whether documents are being withheld in response to each request for production. Rather, Wells Fargo states generally materials are being withheld.

17. Wells Fargo produced a non-compliant privilege log that notes two documents are withheld. See attached ***Exhibit 3*** hereto. The privilege log fails to identify the author of the communications, the recipients of the communications, or inform the Court these communications are part of the consolidated notes log for the Garcia file, which is accessible by thousands of Wells Fargo's employees, not intended to be confidential, not kept as confidential, and entered in the consolidated notes log for the purpose of memorializing and documenting Wells Fargo's conduct during the servicing of the mortgage loan. The communications are also not between executive or management level decision makers charged with determining litigation strategy, and counsel providing that advice.

18. Plaintiff's counsel requested Wells Fargo produce a compliant privilege log and explained the issues with claiming privilege related to the observable information related to the two documents.

19. Wells Fargo has claimed its privilege log is compliant and has not responded to the concerns raised about the assertion of privilege over these two documents.

5

20. On October 27, 2021, Plaintiff requested Wells Fargo confirm no further documents would be produced absent a court order.

21. Wells Fargo responded on October 28, 2021, stating: "At this time, Wells Fargo intends to produce, on a rolling basis, documents in support of its defenses (responsive to RFP Nos. 61, 62, 73, 78, 79, 82-97). However, Wells Fargo's production is complete as to the rest of Plaintiff's RFPs. Wells Fargo does not anticipate further supplementation of its discovery responses." See, ***Exhibit 4***, email from Wells Fargo's counsel.

22. Wells Fargo has not committed to producing a single corporate level document relevant to the liability issues in this case.

23. Beyond these communications, and the production of the additional 142 loan level documents, Wells Fargo has not supplemented its initial responses to Plaintiff's First Requests for Production. Wells Fargo's initial responses are attached hereto as ***Exhibit 5***.

### Compliance with Rule 37.1 Meet and Confer

24. As previously represented, the Parties have spent roughly 8 hours in videoconferences devoted to meeting and conferring over discovery disputes.

25. Wells Fargo's position on the production of documents is succinctly stated as: "Wells Fargo will produce no corporate level documents regarding liability in this case absent a court order."

26. Meeting and conferring will not break the Parties' disputes.

27. The Plaintiff requires the intervention of the Court to address these disputes.

## Two Paths to End Discovery Obstruction

28. It is Plaintiff's position that there are two paths to end the discovery obstruction in this case.

29. The first is the long and tedious process of going item by item related to the disputed interrogatories and requests for production and fighting over each dispute and objection.

30. This process always seems to reward an obstructing defendant even in clear liability cases. This seems true no matter how baseless or boilerplate the objection raised.

31. The second path available here would be to simply order Wells Fargo to produce the documents Wells Fargo already produced in the *Hernandez* case that are not consumer loan files or consumer specific. In other words, limited cloned discovery related solely to liability.

## Contents of *Hernandez* Documents Generally

32. Plaintiff's counsel has investigated certain questions around the documents produced in *Hernandez*.

33. Undersigned counsel has learned that the *Hernandez* case was approximately two months from trial when a settlement was reached.

34. Wells Fargo had produced more than 200,000 documents in *Hernandez*. Of those documents, more than 100,000 *Hernandez* documents were corporate level documents bearing on the liability claims.

35. These documents are not borrower specific. Rather, these documents touch upon Wells Fargo's identification of the error, Wells Fargo's investigation of the error, Wells Fargo's efforts (or lack thereof) to correct the error. These documents identify the persons at Wells Fargo who were aware of the error and involved in addressing the error.

36. Wells Fargo produced these documents electronically, through an FTP file transfer service to the *Hernandez* plaintiffs. This means the *Hernandez* documents are subject to ready production in this case, with the existing *Hernandez* bates labeling, with minimal to no new or additional costs to Wells Fargo.

37. Wells Fargo's counsel in this case, Winston & Strawn LLP, also represented Wells Fargo in the *Hernandez* case and are familiar with these documents.

38. Most importantly, prior to settlement, class counsel for *Hernandez* was ready to proceed to trial with the key documents from the *Hernandez* liability documents and did not need any further documents or discovery to prosecute the intended class action trial.

39. These documents were also the documents utilized for the selection of the 54 Wells Fargo individual fact witnesses deposed in the *Hernandez* case.

**Utility of *Hernandez* Liability Documents**

40. If the Court ordered Wells Fargo to produce the *Hernandez* liability documents, the dataset would include more than 100,000 pages.

41. However, in exchange for such an order, Plaintiff's counsel would forgo its motion to compel and any further or additional written discovery responses from Wells Fargo.

42. Rather, Plaintiff's counsel would simply request approximately 60 days to complete a thorough review of the documents and then be allowed to take the 30(b)(6) deposition of Wells Fargo in this case.

43. Plaintiff's counsel believes that the production of the *Hernandez* liability documents, along with the Wells Fargo 30(b)(6) deposition, would be all the discovery needed to prepare for trial.

44. Plaintiff's counsel represents that such an order would conserve judicial resources. The Court would be spared the substantial time and effort needed to address Wells Fargo's resistance to meaningful discovery of corporate level documents and witnesses relevant to this case. It cannot be forgotten Wells Fargo has already admitted knowledge of this error that took the Garcias' home and devastated their lives.

45. Production of the *Hernandez* liability documents would also establish that Wells Fargo had internal notice and knowledge of the error, the length of time the error had gone unresolved, the executives who were aware of the error and responsible for its cure, Wells Fargo's knowledge the error had caused and was

causing widespread consumer harm, and Wells Fargo's understanding that failing to remedy the error exposed Wells Fargo to serious financial liabilities.

46. Wells Fargo cannot argue the *Hernandez* liability documents do not fall within the Scope of Rule 26. Wells Fargo has already identified and produced these documents in *Hernandez*. This litigation, a *Hernandez* opt-out, is based upon the same error and same alleged wrongdoing. It cannot be seriously contended that documents bearing upon liability based upon the identical error and wrongdoing can be discoverable in the parent litigation but not the child litigation where liability depends upon the exact same evidence.

47. Production of the *Hernandez* liability documents is also supported by the factors set out in Rule 26(b)(1). These documents are clearly relevant to the Parties' claims and defenses, production is proportional to the needs of the case, these documents were identified by Wells Fargo as bearing upon its possible liability for this error in *Hernandez*, the anticipated amount in controversy is larger than the class recovery, Plaintiff has no access to this evidence from any other source, these documents are critical to proving Wells Fargo's liability, corporate complicity, and in support of Plaintiff's request for punitive damages.

48. Most importantly, there is no burden or expense on Wells Fargo (or its counsel) in producing the *Hernandez* liability documents. Wells Fargo has already produced these documents once in the parent litigation, the *Hernandez* class case.

49. The fact that Wells Fargo previously produced the *Hernandez* liability documents means that Wells Fargo does not have to pay its counsel to review the

documents for privilege, or a new review of the documents in general. Rather, the documents can be produced simply by providing those documents that are not specific to a particular consumer or their loan file.

50. Any burden would then shift to Plaintiff's counsel to sort through the 100,000 plus pages of production for the relevant documents to the trial of this case.

51. Alternatively, the Court could direct findings against Wells Fargo that are appropriate to remedy the obstruction to discovery that has already taken place in this case.

52. Plaintiff seeks an order compelling either: (1) full and complete answers to Plaintiff's discovery; or (2) production of the *Hernandez* liability documents; or (3) an order directing findings against Wells Fargo for its obstruction of discovery in this matter.

53. Plaintiff's memorandum in support will follow in a separate document.

WHEREFORE, the Plaintiff requests an order compelling the responses to all written discovery set forth herein, or production of the *Hernandez* liability documents; or an order directing findings against Wells Fargo for its obstruction of discovery; or any other sanctions deemed necessary to do justice in this matter, and any other just and equitable relief.

Dated: November 1, 2021 　　　　　*Respectfully submitted,*

*/s/ Nick Wooten*
Nicholas H. Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

Rusty A. Payton,
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
ROBSON & LOPEZ, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 523-2166
lopez@robsonlopez.com

*Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

 The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF'S MOTION TO COMPEL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37** was served via the Court's Electronic Filing System on all parties and counsel of record on the following date.

Dated: November 1, 2021        By: */s/ Nick Wooten*