UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ANDREW J. MAXWELL,** not individually, but as Trustee for the estate of Eduardo Garcia and Julia Escamilla (nka Julia Garcia); **EDUARDO GARCIA**; **JULIA GARCIA**; **BYRON GARCIA**; and **MIRIAHM GARCIA**, individually, <br><br> Plaintiffs, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.**, <br><br> Defendant. | Case No. 1:20-cv-02402 <br><br> Honorable Rebecca R. Pallmeyer <br><br> Honorable Heather K. McShain |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37</u>**

Plaintiff Andrew J. Maxwell ("Maxwell"), through counsel, files this memorandum in support of his first motion to compel discovery pursuant to Rules 26 and 37. In support of his position, Maxwell shows, as follows:

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 26(a)(1) requires, generally, that parties identify discoverable information and make available by category documents in their possession. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

1

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Relevant discovery includes "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). "The burden rests upon the objecting party to show ***precisely*** why a request is improper." *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 612 (N.D. Ill. 2001).

## ARGUMENT

### I. Boilerplate Objections Should Be Stricken

The boilerplate objections included in all of Wells Fargo's written responses – on relevance, overly broad, and unduly burdensome grounds – are improper and highly disfavored. (Wells Fargo's written responses, *Exhibits 1, 2 and 5* to Plaintiff's Motion to Compel). *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 340, n. 4 (N.D. Ill. 2007) (boilerplate objections are meaningless and insufficient under Rule 33(b)(1) and (4)). See also *Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, at *20-21 (N.D. Ill. 2006) (citing cases). "General objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and

2

courts within the Seventh Circuit consistently overrule them or entirely disregard them." *Odongo v. City of Indianapolis*, 2015 WL 420110 (S.D. Ind. Jan. 30, 2015).

Wells Fargo has made no effort to show any specific applicability to its litany of boilerplate objections to every discovery request. These efforts to avoid direct answers to direct discovery devices should not be accepted. Wells Fargo utilizes these qualified, objection filled responses to avoid direct and binding answers. This frustrates both the spirit and the purpose of the Federal Rules. The Plaintiff requests the Court order Wells Fargo to provide answers to Plaintiff's discovery requests free from boilerplate objections.

## II.  Wells Fargo Has Improperly Withheld Discovery

In addition to filling its responses with boilerplate objections, Wells Fargo has willfully failed to produce relevant discovery materials in this case. Wells Fargo has taken the position that Plaintiff should have no document production beyond the Garcias' mortgage loan servicing records. "The proposition that an adverse litigant may not unilaterally determine the scope of discovery needs no citation. It is well grounded in Anglo-American notions of fairness and due process." *United States v. Bd. of Trade of Chi.*, 1973 U.S. Dist. LEXIS 11307, at *3 (N.D. Ill. Oct. 30, 1973). Neither can Wells Fargo "unilaterally define the scope of discovery based upon its own theory of the case." *Hills v. At&T Mobility Servs., LLC*, No. 3:17-CV-556-JD-MGG, 2021 U.S. Dist. LEXIS 136680, at *21 (N.D. Ind. July 22, 2021).

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

For instance, Wells Fargo has steadfastly refused to allow discovery into the corporate level documents relevant to liability in this case. As the Court knows, the Garcias' claim, brought through the bankruptcy trustee, is an opt out from the *Hernandez* class action. The *Hernandez* case can therefore be considered the parent litigation to this child of *Hernandez*. The Garcia family pursued their claim as an opt out because of the devastating harms suffered from Wells Fargo's conduct. Important to presenting the full picture of liability and the need for a punitive damages award, is the ability to present a clear view of the corporate level conduct.

Publicly available docket entries indicate that Wells Fargo produced over 200,000 pages of documents in the *Hernandez* case. As noted in the motion, Plaintiff's counsel's investigation of the *Hernandez* document production reveals that over 100,000 pages of production can be classified as corporate level document production relevant to liability issues. This 100,000 + pages of document production is also devoid of sensitive customer information or customer account records.

Despite producing more than 100,000 pages in the parent litigation, Wells Fargo has not produced or identified so much as a single page of corporate level documentation relevant to liability issues in this case. In fact, Wells Fargo steadfastly refuses to produce **any** corporate level documents related to liability unless ordered

4

to do so by this Court. Wells Fargo has also failed to explain how it could identify more than 100,000 pages of corporate level production in the parent litigation but not a single document in the child litigation. "A party withholding production must claim the material is privileged or protected as work product and must describe the nature of the material in such a way that the requesting party can "assess the applicability of the privilege or protection." Federal Rule of Civil Procedure 26(b)(5). The withholding party bears the burden of proving the materials are privileged or protected from discovery." *Cunningham v. SmithKline Beecham*, 255 F.R.D. 474, 480 (N.D. Ind. 2009).

### A. The *Hernandez* Liability Documents Would Complete Paper Discovery

*Hernandez's* class counsel were less than two months from trial when the case settled. *Hernandez's* class counsel was ready to proceed to trial based upon the contents of the 100,000 + pages of corporate level document production and the deposition testimony already taken. This corporate level document production touches upon Wells Fargo's identification of the error, Wells Fargo's investigation of the error, Wells Fargo's efforts (or lack thereof) to correct the error. These documents identify the persons at Wells Fargo who were aware of the error and involved in addressing the error. Plaintiff's counsel anticipates these documents would also identify the highest level of management involved in this issue for Wells Fargo. If the Court orders the *Hernandez* liability documents to be produced, the Plaintiff's paper discovery would be complete.

### B. Production of the *Hernandez* Liability Documents Resolves This Motion to Compel

If the Court ordered Wells Fargo to produce the *Hernandez* liability documents, then Plaintiff's counsel would withdraw this motion to compel as to all other issues.

### C. The *Hernandez* Liability Documents Easily Satisfy the Rule 26(b)(1) Factors Supporting Production.

Applying the Rule 26(b)(1) test, these *Hernandez* liability documents are clearly relevant to the Plaintiff's claims. Production is proportional to the needs of the case as these *Hernandez* liability documents are the single largest and most concentrated source of evidence to prove Wells Fargo's corporate conduct. The *Hernandez* liability documents were previously identified by Wells Fargo as discoverable materials bearing upon the claims and defenses, including Wells Fargo's possible liability for this error in the parent *Hernandez* litigation. The amount in controversy is clearly large enough to justify the production. The Plaintiff has no access to this evidence from any other source.

Finally, there is no burden or expense on Wells Fargo (or its counsel) in producing the *Hernandez* liability documents. Wells Fargo has already produced these documents once in the parent litigation. The *Hernandez* liability documents were produced in electronic form and by use of a file sharing service. This means that Wells Fargo does not have to pay its counsel to review the documents for privilege or conduct a new review of the documents in general. Rather, the documents can be produced simply by providing those documents that are not specific to a particular consumer or consumer mortgage loan servicing account with the *Hernandez* bates

6

labeling. In other words, Wells Fargo can simply share the documents with Plaintiff's counsel that were provided to class counsel in *Hernandez*.

### D. The *Hernandez* Liability Documents are Relevant to Plaintiff's Burden of Proof and Punitive Damages.

The *Hernandez* liability documents are critical to proving Wells Fargo's liability, corporate complicity, and in support of Plaintiff's request for punitive damages. "Under Illinois law, punitive damages may be awarded only if "the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. When the defendant is a corporation, like [Wells Fargo], the plaintiff must demonstrate also that the corporation itself was complicit in its employees' tortious acts." See, *Saccameno v. United States Bank National Ass'n*, 943 F.3d 1071, 1082 (7th Cir. 2019). Judge St. Eve also explained "Illinois law insists on managerial involvement before punitive damages may be awarded against a corporation." *Id.* 1083-84.

Judge St. Eve also analyzed the constitutionality of the punitive damages award in *Saccameno*. Therein, the Seventh Circuit considered evidence of reprehensibility. Crucial to this analysis is evidence touching upon "five factors including whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved

7

repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* 1086.

During the trial of *Saccameno,* Plaintiff's counsel was not allowed to present evidence to the jury which would have established the scope, severity, and enormity of Ocwen's wrongdoing. The Seventh Circuit made clear in *Saccameno* this evidence is absolutely relevant to the proper evaluation of reprehensibility and the assessment of punitive damages. Here, the Plaintiff seeks to prove Wells Fargo is a recidivist. The Plaintiff may prove this by proving Wells Fargo's repeated actions towards the Garcias *or* by proving Wells Fargo's repeated wrongful actions towards similarly situated consumers. *Id.* 1087. The Plaintiff must also show that Wells Fargo's employees were not merely negligent but rather recklessly indifferent. *Id.* 1088. The evidence necessary to meet this burden is contained within the *Hernandez* liability documents. These documents provide the best evidence supporting Plaintiff's proof on three of the five reprehensibility factors for an award of punitive damages. The *Hernandez* liability documents also serve as evidence of managerial involvement and corporate complicity necessary to support an award of punitive damages against a corporation per the holding in *Saccameno.*

### E. Production of the *Hernandez* Liability Documents Expedites Discovery and Hastens the End of Litigation

The Plaintiff has shown the production of these materials is highly probative of, and relevant to, the dispute in this child of *Hernandez* litigation by applying the Rule 26(b)(1) test. Wells Fargo has made no specific showing as to why production of these materials is not proper. Production of the *Hernandez* liability documents serves

8

the spirit and purpose of Rule 1. If the Court orders Wells Fargo to produce the *Hernandez* liability documents, then the Plaintiff will need no further paper discovery in this matter. The Plaintiff will also be able to withdraw this motion to compel discovery. Further, the Plaintiff will only need a limited amount of time to review the *Hernandez* liability documents and prepare a thorough 30(b)(6) deposition notice.

After reviewing the *Hernandez* liability documents and taking the 30(b)(6) deposition, the Plaintiff will be ready to proceed to a trial. This process could be completed in less than 90 days. Such an order requiring production of the *Hernandez* liability documents would therefore bring discovery to a rapid close and hasten the end of this litigation by allowing a trial to be conducted sooner.

Further, such an order would conserve judicial resources by allowing the Court to avoid the time and energy necessary to undertake a line-by-line review of Plaintiff's discovery requests and Wells Fargo's objections. This would clearly save hours of the Court's time associated with a hearing and the rendering of a lengthy opinion on the discovery dispute.

The Court's ordering of Wells Fargo to produce the *Hernandez* liability documents would also keep Wells Fargo's obstructionist litigation tactics from being rewarded. If the Court does not order production of the *Hernandez* liability documents, then Wells Fargo will invariably argue Plaintiff failed to produce sufficient evidence of corporate complicity and corporate wrongdoing to support any punitive damages award. This would defeat the spirit and purpose of the Rules. "Discovery is intended to be a broad exercise where the parties lay all their cards on

the table, so to speak, to reveal the truth behind the claims and defenses at issue in the case." *Hills v. AT&T Mobility Servs., LLC,* No. 3:17-CV-556-JD-MGG, 2021 U.S. Dist. LEXIS 136680, at *20 (N.D. Ind. July 22, 2021). Denying production of the *Hernandez* liability documents would allow Wells Fargo to only lay down the cards they wished. In effect, Wells Fargo could pull Aces out of its sleeve to show a Full House rather than showing the busted hand Wells Fargo actually owns.

### F. Cloned Discovery is Preferred by existing Seventh Circuit Case Law

"Rule 1 of the Federal Rules requires the Rules to be construed to secure the just, speedy, and inexpensive determination of every action." *Wilk et al v. American Medical Ass'n. et al.*, 635 F.2d 1295, 1299 (7th Cir. 1981)(internal citations omitted). "We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Id.* (citing: *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir.), cert. denied, 379 U.S. 900 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); Ex parte Uppercu, 239 U.S. 435, 439-40, 36 S.Ct. 140, 140-141, 60 L.Ed. 368 (1915).

Production of the *Hernandez* liability documents in this case would certainly secure a speedy determination of the dispute, as Plaintiff's counsel anticipates being ready for trial within 90 days of such production. And since the issue of liability in this case is identical to that in the *Hernandez* case, there is no dispute that the

*Garcias* will otherwise have to unnecessarily repeat the extensive discovery exercise of the *Hernandez* Plaintiff's in obtaining over 100,000 pages of liability related documents already determined in that case to be discoverable.

### III.     Wells Fargo Improperly Refused to Answer Discovery

Wells Fargo has also refused to participate in discovery in good faith. Wells Fargo failed to respond meaningfully to 21 of 25 Interrogatories. Wells Fargo produced no documents directed towards its corporate conduct. By its own admission, contained in the table copied into the Plaintiff's motion, Wells Fargo provided no documents responsive to Requests for Production numbered 7-9, 14, 17, 19-21, 26-74, 76-87. Alternatively, Wells Fargo claims to have responded to 18 of 87 requests for production, or 21% of the Requests for Production. Wells Fargo has generally objected to responding to these Requests for Production on the basis they would reach corporate level documents that Wells Fargo does not believe are relevant to this case.

"When the discovery request is facially relevant, the party opposing the request is burdened with establishing lack of relevance or that the likelihood of discovering relevant evidence is so minimal that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. This burden cannot be met by the reflexive invocation of the same baseless, often abused, litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Instead, the objecting party must show with specificity that the request is improper." *Close Armstrong LLC v. Trunkline Gas Co.*, No. 3:18-CV-270-

PPS-MGG, 2021 U.S. Dist. LEXIS 62569, at *7-8 (N.D. Ind. Mar. 31, 2021) (Internal citations and quotations omitted). Furthermore, "[Wells Fargo] cannot unilaterally dictate the proper scope of discovery by producing only the documents it deems responsive based on its personal interpretation of the [scope of litigation]." *Id.* at *22.

If the Court does not order production of the *Hernandez* liability documents, Wells Fargo should be required to provide full and complete responses to these discovery requests free from the scourge of boilerplate objections.

## CONCLUSION

Wells Fargo has attempted to thwart, delay, and deny the Plaintiff's proper discovery in this case for many months. Rather than play Wells Fargo's game for many more months, Plaintiff requests the Court order production of the *Hernandez* liability documents. Wells Fargo will suffer no prejudice or burden by such an order. The end of litigation will be hastened, and the parties resources will be preserved.

Dated: November 1, 2021          *Respectfully submitted,*

/s/ Nick Wooten
Nicholas H. Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

Rusty A. Payton,
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

                                Salvador J. Lopez
                                ROBSON & LOPEZ, LLC
                                180 W. Washington Street, Suite 700
                                Chicago, Illinois 60602
                                (312) 523-2166
                                lopez@robsonlopez.com

                                *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37** was served via the Court's Electronic Filing System on all parties and counsel of record on the following date.

Dated:  November 1, 2021                                            By: */s/ Nick Wooten*