IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EDUARDO GARCIA** and **JULIE GARCIA**, <br><br> Plaintiffs, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.**, <br><br> Defendant. | Case No. 1:20-cv-02402 <br><br> Hon. Rebecca R. Pallmeyer <br><br> **ORAL ARGUMENT REQUESTED** |

**WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR ORDER TO CONDUCT AN INDEPENDENT
MEDICAL EXAMINATION OF PLAINTIFFS**

# **PRELIMINARY STATEMENT**

Defendant Wells Fargo Bank, N.A., ("Wells Fargo" or "the Bank"), by and through its attorneys, and pursuant to Federal Rule of Civil Procedure 35, respectfully moves for entry of an order that Plaintiffs Eduardo and Julia Garcia ("Plaintiffs") submit to independent medical examinations ("IMEs") by Wells Fargo's chosen medical expert Dr. David Hartman. Plaintiffs have placed their past, current, and future physical and psychological conditions directly at issue in this litigation by alleging severe emotional and physical injuries as a result of Wells Fargo's conduct, including Major Depressive Disorder, fibromyalgia, extreme migraines, stress, anxiety, sleeplessness, depression, loss of motivation, inability to get out of bed, and difficulty concentrating. Compl. ¶ 115(T). Indeed, the majority of the $30 million in compensatory damages Plaintiffs seek is comprised of non-economic damages.[1] However, Plaintiffs have now withdrawn their consent to submit to a psychological IME on the ground that Wells Fargo's retained expert Dr. Hartman's examination will take up to seven and a half hours per patient, while the Bank's prior proposed expert's IME was only expected to take approximately two hours.

Plaintiffs' objection to the amount of time it will take Dr. Hartman to complete his IME is without merit. Plaintiffs have wrongly stated that Wells Fargo can simply "find another expert" to perform a shorter examination in order to accommodate Plaintiffs. Nor is Wells Fargo (or Plaintiffs, for that matter), in the position to tell Dr. Hartman—who has been performing Rule 35 IMEs of this nature for over three decades—that his standard examination procedures are "too long." Finally, it is Plaintiffs who seek 12 years of noneconomic damages for Eduardo Garcia and Julia Garcia, at $100 and $200/hour, respectively. It is thus reasonable for each of the Garcia

---

[1] Plaintiff Julia Garcia agrees to submit to an IME for her alleged physical conditions before physician Dr. William Conte, and both Plaintiffs previously agreed to submit to IMEs to test their psychological conditions before a psychologist.

plaintiffs to submit to a psychological IME comprised of a series of noninvasive tests that may last seven and a half hours.

The Parties have conferred telephonically in compliance with Local Rule 37.2. Accordingly, this Court should order each Plaintiff to submit to an IME before Dr. Hartman in order to verify the nature and extent of their non-economic psychological injuries for which they seek millions of dollars in compensation from Wells Fargo.

## BACKGROUND

Plaintiffs' claims arise out of a mortgage loan serviced by Wells Fargo Bank, N.A. ("Wells Fargo"). Compl. ¶ 1. Plaintiffs admit that, as a result of various financial hardships, they were not able to pay their mortgage and defaulted on their loan. *Id*. According to Plaintiffs, they sought a loan modification from Wells Fargo, which would have provided a three-month trial payment plan and—if the trial payments were made—a permanent loan modification. *Id*. ¶¶ 1-3. Plaintiffs claim that Wells Fargo denied their application due to a calculation error in its modification software, which was publicly disclosed in 2018. *Id*. ¶¶ 3-4, 95. Plaintiffs allege that this error resulted in the loss of their property by foreclosure in February 2011 and forced them to file for bankruptcy in May 2011. *Id*. ¶¶ 6-7, 86.

Plaintiffs filed their Complaint on April 18, 2020, asserting claims for negligence and a violation of the Illinois Consumer Fraud Act ("ICFA"). On March 31, 2021, the Court dismissed the negligence claim, but allowed the ICFA claim to proceed to discovery. Dkt. 24. Plaintiffs claim that, as a result of Wells Fargo's conduct, Mrs. Garcia was "diagnosed with Major Depressive Disorder" and fibromyalgia. Compl. ¶ 115(T). She also began suffering "extreme migraines," lost her ability to drive, and had to undergo therapy. *Id*. Mr. Garcia has found himself

2

"on edge," has had difficulty concentrating and sleeping, lost motivation, and "[f]or years after the foreclosure he would spend days where he was unable to get out of bed." *Id*. at ¶ 118; 115(U).

In his March 7, 2022 responses to Wells Fargo's First Set of Interrogatories, Plaintiff Eduardo Garcia calculated his non-economic damages as $10,106,400. Parker Decl., Ex. 1 (Eduardo Garcia Response to Interrog. No. 16) at 9. Plaintiff Eduardo Garcia calculated his damages by multiplying $100/hour by 101,064 hours. *Id*. Similarly, in her March 7, 2022 responses to Wells Fargo's First Set of Interrogatories, Plaintiff Julia Garcia calculated her non-economic damages by multiplying $200/hour by 101,064 hours for a total of $20,212,800. Parker Decl., Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9. Both Plaintiffs claim that they suffered emotional distress damages including, among other things, depression, stress, and anxiety. Mrs. Garcia also claims "bodily injuries and pain and suffering resulting from the medical conditions which were caused by, or result from, or were otherwise exaggerated, increased, exacerbated, or caused to be made worse because of Wells Fargo's conduct, including, but not limited to causing or worsening of her major depressive disorder, fibromyalgia, and migraines." *Id*.

On March 16, 2022, Plaintiffs assented to both mental and physical independent medical examinations. Parker Decl., Ex. 3. Due to scheduling conflicts, among other things, Defendant was unable to proceed with its previously disclosed psychological expert. *Id*. Defendants proceeded with Dr. Hartman instead, who is well qualified to perform psychological IMEs and was available to proceed immediately in light of the impending June 10th dispositive motion deadline. On March 25, 2022, Defendant's counsel informed Plaintiffs' counsel accordingly, and provided them with the updated "time, scope, and manner" of the examinations under Rule 35, including that they will be performed by Dr. Hartman and will not involve any invasive procedures.

*Id*. Dr. Hartman's curriculum vitae was provided to opposing counsel along with a description of the nature and approximate length of the exams, as well as the location. *Id*. The examination will consist of the administration of a number of psychological tests. *Id*. It will also involve a review of the written documentation connected with Plaintiffs' report of their psychological and/or emotional injuries or damages and the claimed causes thereof. *Id*.

On March 28, 2022, Plaintiffs objected to the length of the examinations and stated that Defendant should switch to a different doctor. *Id*. Defendant's counsel responded the following day by stating that Dr. Hartman's examination tests were standard, with a fixed number of questions, and could not be shortened. *Id*. On April 1, 2022, Plaintiffs withdrew their consent to the psychological IMEs and this Motion to Compel became necessary. *Id*.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party ..." Federal Rule of Civil Procedure 35 (a) provides:

> When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Similarly, the United States Supreme Court has stated that "[a] plaintiff ... who asserts mental or physical injury places that mental or physical injury clearly in controversy [and] provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Shlagenhauf v. Holder,* 379 U.S. 104, 119 (1964). The decision whether to order

4

a mental examination is committed to the sound discretion of the trial court, and the court must satisfy itself that both the "in controversy" and "good cause" requirements are satisfied. *Id.*

## ARGUMENT

### A. Plaintiffs Put Their Alleged Mental and Physical Health Conditions in Controversy and Defendant Has Demonstrated Good Cause.

Under the first requirement for Rule 35 examinations, when alleged emotional injuries rise above mere humiliation and embarrassment, they amount to more than a "garden variety" emotional distress claim and are held "in controversy." *Mitchell v. Iowa Interstate R.R., Ltd.*, No. 07 1351, 2009 WL 2431590 at *1–2 (C.D. Ill. Aug.5, 2009) (holding mental condition in controversy because plaintiff alleged more than mere embarrassment); *Haymer v. Countrywide Bank, FSB*, No. 10 C 5910, 2013 WL 657662, at *4 (N.D. Ill. Feb. 22, 2013) (when a plaintiff complains of "resulting symptoms or conditions that [she] might have suffered, including sleeplessness, nervousness, [and] depression, then her mental condition is in controversy"). Further, when emotional distress damages are a "large portion" of a damages claim, a litigant's mental health has been held to be in controversy. *See Bovey v. Mitsubishi Motor Manufacturing of Am., Inc.*, No. 00 1402, 2002 U.S. Dist. LEXIS 5701, at *2–3 (C.D. Ill. Apr. 3, 2002); *Walti v. Toys R Us*, No. 10 C 2116, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011), *objections overruled*, No. 10 CV 2116, 2011 WL 4715198 (N.D. Ill. Oct. 6, 2011).

When analyzing whether the second requirement for "good cause" for the examination is satisfied, courts find "good cause" for Rule 35 examinations when plaintiffs have disclosed their own doctor as an expert witness to testify. *See Bovey*, 2002 U.S. Dist. LEXIS 5701 at *2–3 (good cause shown because plaintiff intended to introduce mental health evidence or testimony at trial, and defendant should have opportunity to rebut that evidence); *Allshouse v. JBL Ltd.*, No. 05 CV 403 DRH, 2006 WL 517615 at *2 (S.D. Ill. Mar.2, 2006) (holding defendant not required to rely

5

solely on assessment made by plaintiff's witnesses regarding her mental condition). Furthermore, good cause is "doubly clear" where, as here, plaintiffs allege a continuing harm, not just past harm. *Walti*, 2011 WL 3876907, at *2-3. Finally, good cause is also found when plaintiffs allege injuries that arose before the events at issue in the present case. *Id*. (explaining that before the events giving rise to the present case, plaintiff was involved in a car accident that led to post-traumatic stress disorder and defendant should be given the opportunity to "explore whether any of the emotional injuries claimed in this case were caused by that accident"); *see also Franco v. Boston Scientific Corp.*, No. 05 CV 1774 RS, 2006 WL 3065580 at *2 (N.D. Cal. Oct.27, 2006) (refusing to limit scope of Rule 35 psychological examination because defendant should be allowed to investigate what psychological effects were caused by patient's history of depression and "post-traumatic stress"); *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 323 (N.D. Ga. 2000) (holding good cause established where plaintiff admitted to other events that could have caused or contributed to emotional distress).

Good cause exists here. First, Plaintiffs allege emotional injuries that rise above mere humiliation and embarrassment. Mrs. Garcia claims that she was "diagnosed with Major Depressive Disorder" and fibromyalgia, began suffering "extreme migraines," lost her ability to drive, and had to undergo therapy as a result of Wells Fargo's conduct. Compl. ¶ 115(T); Parker Decl. Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9. She also claims "bodily injuries and pain and suffering resulting from the medical conditions which were caused by, or result from, or were otherwise exaggerated, increased, exacerbated, or caused to be made worse because of Wells Fargo's conduct, including, but not limited to causing or worsening of her major depressive disorder, fibromyalgia, and migraines." Parker Decl. Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9. Mr. Garcia similarly alleges that he has found himself "on edge," has had difficulty

concentrating and sleeping, lost motivation, and "[f]or years after the foreclosure he would spend days where he was unable to get out of bed." Compl. at ¶ 118; 115(U). He further claims depression, stress, and anxiety as a result of Wells Fargo's conduct. Parker Decl., Ex. 1 (Eduardo Garcia Response to Interrog. No. 16) at 8-9. Accordingly, Plaintiffs' emotional injuries amount to more than "garden variety" emotional distress and are "in controversy." *Mitchell*, 2009 WL 2431590 at *1–2.

Plaintiffs have further placed their mental conditions "in controversy" because they are seeking over $30 million in "[a]ctual damages including emotional distress damages." Third Supp. Initial Disclosures; Parker Decl. Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9; Parker Decl., Ex. 1 (Eduardo Garcia Response to Interrog. No. 16) at 8-9. "When emotional distress damages are a major component of a damages claim, a litigant's mental health has been held to be in controversy." *Walti,* 2011 WL 3876907, at *2 (*citing Bovey*, 2002 U.S. Dist. LEXIS 5701 at *2–3). Here, Mrs. Garcia says that she is seeking $200 per hour for non-economic damages, and that as of March 5, 2022, that calculation is $20,212,800. Parker Decl., Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9. Mr. Garcia says that he is seeking $100 per hour for non-economic damages and as of March 5, 2022 that calculation is $10,106,400. Parker Decl. Ex. 2 (Julia Garcia Response to Interrog. No. 16) at 9. Because Plaintiffs' non-economic damages are "a major component of their damages claim," their mental health is "in controversy." *Walti*, 2011 WL 3876907, at *3.

Second, good cause is shown because Plaintiffs disclosed their own medical witness, Dr. Anita Pillai, and Wells Fargo should have the full opportunity to rebut any testimony that Dr. Pillai might raise regarding Plaintiffs' mental conditions. Parker Decl., Ex. 8 (Third Supplemental Initial Disclosures) at 3. Indeed, Plaintiffs admit that Mrs. Garcia's mental conditions long predate the

7

2011 foreclosure at issue here: Mrs. Garcia was diagnosed with Major Depressive Disorder in or about 2008, with fibromyalgia in or around 2005, and with migraines in or around 1994.[2] Parker Decl., Ex. 2 (Julia Garcia Response to Interrog. No. 20) at 13. Mrs. Garcia also explained that at one point around 2008 or 2009 she nearly got into a major driving accident on the expressway that "terrified her and left her traumatized." Parker Decl., Ex. 9 (Julia Garcia Response to Request for Production No. 10) at 6. Accordingly, good cause is also established because Mrs. Garcia admits to other events that could have caused or contributed to her emotional distress. *Walti*, 2011 WL 3876907, at *2-3 (allowing IME because the defendant "should be given the opportunity to explore whether any of the emotional injuries claimed in this case were caused by [an unrelated] accident.").

Finally, good cause is "doubly clear" because Plaintiffs allege a continuing harm, not just past harm. *Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410 (N.D. Ill. 1994) (holding good cause component "doubly clear" was satisfied given that plaintiff was alleging continuing emotional harm). Parker Decl., Exs. 1 and 2 (Eduardo Garcia Response to Interrog. No. 16; Julia Garcia Response to Interrog. No. 16) at 8-9.

In sum, the "in controversy" and "good cause" requirements are satisfied for a psychological IME.

### B. Plaintiffs' Sole Objection to the Length of Dr. Hartman's IME Is Without Merit.

Apparently conceding, as they must, that good cause is met, Plaintiffs are willing to submit to IMEs. Parker Decl., Ex. 3. Indeed, Mrs. Garcia agreed to a physical IME before Dr. Conte for

---

[2] A range of symptoms are possible with a fibromyalgia diagnosis, including but not limited to depression, anxiety, sleeping difficulties, neuropsychological impairments of thinking, memory and concentration, and headaches. https://www.cdc.gov/arthritis/basics/fibromyalgia.htm (last visited April 6, 2022).

her alleged migraines and fibromyalgia. *Id*. And both Mr. and Mrs. Garcia previously agreed to IMEs before a psychologist. *Id*. Their only complaint is that the psychological IME by Dr. Hartman will take too long. Plaintiffs' complaint is without merit.

Wells Fargo understands that a full-day forensic neuropsychological assessment is standard for Dr. Hartman, who has routinely performed these types of exams under Rule 35. Declaration of Dr. Hartman ("Hartman Decl.," at 2). According to Dr. Hartman, such exams are consistent with the norms of forensic neuropsychological practice, but also necessary to examine a complex set of possible symptoms, particularly where, as here, an individual also claims to suffer from fibromyalgia. *See* Hartman Decl. at 2. It is standard that "clinicians asked to provide neuropsychological syndrome measurement are expected to familiarize themselves with available research and to determine expectable diagnostic patterns, range of severity, and even the viability of the construct."[3] Hartman Decl. at 3. Further, in a comprehensive and detailed forensic assessment, a clinician must consider the broad neuropsychological influences on the patient and their possible causative conditions. Hartman Decl. at 3. Consequently, "forensic evaluations are much longer than other types of evaluation, with a mean and median of 14 hours."[4] Hartman Decl. at 3-4. Wells Fargo's request for a seven-and-a-half-hour patient examination is entirely reasonable and is wholly consistent with the community standard for these types of examinations. Hartman Decl. at 4.

---

[3] David E. Hartman, *Differential diagnosis in neuropsychology: A Strategic Approach*, in Textbook of Clinical Neuropsychology 51-61 (J.E. Morgan and J.H Ricker eds., 2d ed. 2018).
[4] Jerry J. Sweet, Kristen M. Klipfel, N.W., et al., *Professional practices, beliefs, and incomes of U.S. neuropsychologists: The AACN, NAN, SCN 2020 practice and "salary survey,"* 35 The Clinical Neuropsychologist 7-80 (2021), DOI: 10.1080/13854046.2020.1849803.

In sum, Plaintiffs have put their psychological conditions at issue in this case and should be required to sit for the examinations before Dr. Hartman so that Wells Fargo can completely and accurately evaluate the nature of the damages Plaintiffs claim.

## CONCLUSION

WHEREFORE, Wells Fargo respectfully requests that the Court order an independent psychological evaluation to be conducted by its retained medical expert Dr. Hartman at a mutually convenient time and date for the purpose of evaluating Plaintiffs' claims for emotional distress.

Dated: April 11, 2022          Respectfully submitted,

     /s/ Shawn R. Obi

Shawn R. Obi (*pro hac vice*)
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213-615-1700
Fax: 213-615-1750
Email: SObi@winston.com

Christopher Parker
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone: 312-558-8085
Fax: 312-558-5700
Email: cparker@winston.com

Angela A. Smedley (*pro hac vice*)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Phone: 212-294-5348
Fax: 212-294-4700
Email: asmedley@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

10

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 11th day of April 2022, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system, upon the following:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

                                                /s/ *Shawn R. Obi*