# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EDUARDO GARCIA and JULIA GARCIA, | Case No. 1:20-cv-02402 |
| Plaintiffs, | |
| v. | Judge Rebecca Pallmeyer |
| WELLS FARGO BANK, N.A., | Judge Heather K. McShain |
| Defendant. | |

## EDUARDO GARCIA'S ANSWERS TO DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF INTERROGATORIES

Plaintiff Eduardo Garcia ("Eduardo"), by and through his undersigned counsel, hereby submits the following answers and objections to the First Set of Interrogatories propounded by Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") pursuant to the provisions of Rule 33 of the Federal Rules of Civil Procedure. Eduardo reserves the right to supplement his answers.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify Your employment since January 26, 2006, and please Include the dates of employment, the Identity of the employer(s), supervisor(s), and evaluator(s), and the reason(s) such employment ended.

**ANSWER:** Eduardo was employed in construction in one form or another since arriving to the United States in 1988. From 1998 until about 2000, he worked for Manuel Nuñez, whom owned many apartment buildings that Eduardo would rehab. In 2000 he began to be self-employed in construction work, concentrating mostly on small projects in remodeling baths, kitchens, basements, and outdoor projects. While he has experience in many areas of construction, Eduardo

1

is especially skilled as a carpenter. In or around 2006, Eduardo left construction work and started Woodland Lumber LLC a new business, with a business partner named Jose Alejandro Espinoza. Woodland Lumber LLC specialized in making custom household furniture out of lumber. However, the business never really got off the ground, and soon after his business partner fled with the capital they had invested into the company. Since the economy crashed soon after, it became impossible for Eduardo to continue operations and the business folded. Eduardo then attempted to return to self-employment in construction. However, with the housing market crash Eduardo found that no one was hiring for these types of projects. Unable to find enough work, he tried seeking employment elsewhere, something that he had never done. In approximately 2010, he applied for a custodian position at Morton High School, and for a factory position at V&V Supremo Foods in Pilsen. He does not believe he received a call back from either position and believes this was attributed to his lack of traditional work history. Eduardo didn't start working again in any real capacity until approximately 2012, when he returned to being self-employed in construction.

In 2019, Eduardo started a new business, Sustainable Manufacturing, LLC (d/b/a Wood Metal and Beyond), with his son Byron and another business partner, Ali Ahmed. The business makes custom tables and other wooden furniture. Eduardo continues to work in this business to date.

**INTERROGATORY NO. 2:**

If You claim that You were self-employed at any time since January 26, 2006, please Include the dates of self-employment, the Identity of Each corporate affiliate, general partner, limited partner, employee, and custodian of business records, and the reason(s) such self-employment ended.

    **ANSWER:**   *See* Answer to Interrogatory No. 1.

2

**INTERROGATORY NO. 3:**

If You claim that you were unemployed at any time since January 26, 2006, please Identify the names of Each individual You named as a professional reference while seeking employment.

**ANSWER:**    In 2010, Eduardo applied for a custodian position at Morton High School, and for a factory position at V&V Supremo Foods in Pilsen. Eduardo named the following as professional references: Rafael Robles; Marco Garduno; and Ana Gomez. *See* GARCIA 01737-01742.

**INTERROGATORY NO. 4:**

Identify the amount of monthly rent You paid as a tenant at the Brookfield Apartment, as defined in the Complaint and as alleged in paragraphs 91–94 in the Complaint.

**ANSWER:**    Eduardo believes it was $1200 or $1300.

**INTERROGATORY NO. 5:**

Identify Each rental property that You applied to, or otherwise considered moving into, after the foreclosure of Your Mortgage.

**ANSWER:**    Eduardo objects to this Interrogatory on the basis that Wells Fargo foreclosed on the Garcias' property over 10 years ago and it is unreasonable for Wells Fargo to expect him to remember "each" rental property the Garcias applied to, or otherwise considered moving into, after Wells Fargo wrongly foreclosed on the Garcia's property and forced them to vacate the property on short notice. Subject to and without waiving this objection, the Garcias will testify as to the significant time and financial investment made in finding new housing and trying to stay within the same school district after they were evicted with a short notice to vacate the home. Byron will testify to the time he spent personally looking for a place to live, calling landlords, sending emails, driving around looking for "for rent" signs, and helping his parents fill

3

out rental applications.

Eduardo's recollection is that the Garcias considered approximately twenty-five apartments total. Eduardo is unable to remember most of them. Eduardo recalls the family did not apply for all of them because the application process usually required a fee of at least $50 and a credit inquiry.

**INTERROGATORY NO. 6:**

Identify the individual or entity who owned the Brookfield Apartment, as defined in the Complaint, at the time you became a tenant there.

**ANSWER:** Eduardo believes the owner of the Brookfield Apartment was identified as 4630 Vernon LLC, however, he is not positive this entity was the owner.

**INTERROGATORY NO. 7:**

Identify Each doctor or healthcare provider, Including Each mental healthcare provider, therapist, or counselor, with whom You have consulted since January 26, 2006, and please include the dates of treatment, the doctor or healthcare provider's specialty (if applicable), the reason(s) for the consultations, Each diagnosis made, and the treatment(s) prescribed for Each such diagnosis.

**ANSWER:** Eduardo refers Wells Fargo to the 853 pages of medical records he has produced (*see* EDUARDO'S MED RECS 00001-00853), Wells Fargo has already subpoenaed his medical records and the records provide the information sought.

**INTERROGATORY NO. 8:**

Identify all prescription medications, over-the-counter medications or remedies, and other non-prescription medications You have taken since January 26, 2006, and please include the name

4

of the prescriber (if applicable), the date of the prescription (if applicable), the diagnosis or medical condition for which You took such medication or remedy, and the dates on which You took such medication or remedy.

**ANSWER:** Eduardo refers Wells Fargo to his medical records produced as EDUARDO'S MED RECS 00001-00853.

**INTERROGATORY NO. 9:**

Have You had any Communications or discussions with any healthcare provider(s), Including mental healthcare provider(s), therapist(s), or counselor(s), about Your mental health or emotional well-being, Including stress, anxiety, or depression since January 26, 2006? If so, please Identify the healthcare provider(s) and state the date, location, and substance of Each such Communication or discussion.

**ANSWER:** Eduardo refers Wells Fargo to the 853 pages of medical records he has produced and his medical records subpoenaed by Wells Fargo to provide the information sought. Furthermore, Wells Fargo has subpoenaed for deposition Eduardo's medical providers who may testify to such communications or discussions.

**INTERROGATORY NO. 10:**

If You claim that Your Children experienced educational difficulties from the actions alleged in the Complaint, Identify the name and location of any school attended by Your Child(ren), and include the dates of attendance and the name(s) of Your Child(ren)'s teacher(s).

**ANSWER:** Eduardo Objects to this interrogatory on the basis that these events happened over 10 years ago and it is unreasonable for Wells Fargo to expect him to remember all of his children's teachers and the exact dates of his children's school attendance. Without waiving said objection, Eduardo responds as follows. Byron attended Lyons Township High School from

approximately 2006-2010. Miriahm attended Lyons Township High School from approximately 2008-2012. Byron attended National Louis University from approximately 2010 through approximately 2014 or 2015. Miriahm attended National Louis University from 2012 through 2017.

## INTERROGATORY NO. 11:

If You claim that Your Child experienced educational difficulties because of the actions alleged in the Complaint, Identify the name and location of any school or post-secondary institution attended by Your Child, and include the dates of attendance, dates of withdrawal, the reason(s) for withdrawal, and the names of Your Child's institution administrators who were involved in Your Child's withdrawal process.

**ANSWER:** See Eduardo's response to interrogatory 10 above.

## INTERROGATORY NO. 12:

If You claim that Your Child experienced educational difficulties at National Louis University because of the actions alleged in the Complaint, Identify the names of any of Your Child's college/university roommates, college/university co-workers, and college/university residential assistants.

**ANSWER:** Both Byron and Miriahm attended National Louis University, but never lived on campus.

## INTERROGATORY NO. 13:

If You claim that Your Children experienced educational difficulties from the actions alleged in the Complaint, Identify the name of Each healthcare provider, Including doctors, nurses, social workers, and counseling and mental health providers, who consulted with Your Child(ren) Regarding the problems Your Child(ren) experienced, and include the date of Each consultation,

the reason(s) for Each consultation, the diagnosis made or result of the consultation, and the treatment(s) and solution(s) Communicated to You.

**ANSWER:** Eduardo objects to this Interrogatory on the basis that medical records were produced for Byron, and medical records for Miriahm and school records containing information regarding Miriahm's hearing impairment were produced (*see* BYRON'S MED RECS 00001-00292; MIRIAHM'S MED RECS 00001-00840 and MIRIAHM'S SCHOOL RECORDS 00001-00210). Furthermore, Wells Fargo subpoenaed medical records and those records will contain all of the information requested in this Interrogatory.

**INTERROGATORY NO. 14:**

If You Claim that You experienced problems in Your marriage or relationship as a result of the actions alleged in the Complaint, Identify the name and location of any and all Persons with whom You have had Communications or discussions regarding struggles, issues, or problems in Your marriage, and please include the dates of Each such Communication or discussion and the struggle, issue, or problem discussed.

**ANSWER:** Eduardo is a very private person and does not believe he discussed his marital problems with anyone other than with his wife. Byron and Miriahm were the ones that noticed the impact that the financial stress of the loss of the house had on their parents' marriage.

**INTERROGATORY NO. 15:**

Identify Each lawsuit to which you have been a party, other than this action.

**ANSWER:** *Deutsche Bank vs. Garcias, et al.*
2009-CH-00855
GARCIA 00015-00060

*In Re: Eduardo Garcia and Julia Escamilla*
Chapter 7 Bankruptcy Case No. 11-22208
GARCIA 00061-00113

7

**INTERROGATORY NO. 16:**

Identify and itemize all elements of damages, past or future, You claim or allege to be caused by Wells Fargo in this Action, and as to Each, Identify the amount claimed, the method, if any, by which You computed the amount, the figures used in that computation, and the facts and assumptions upon which your claim is based.

**ANSWER:** Eduardo objects to this interrogatory on the grounds that the damages claimed are unliquidated and within the province of the jury to determine. Without waiving said objection, and solely for the edification and understanding of Wells Fargo regarding the various ways in which Wells Fargo's action caused massive needless harm to Eduardo, the following information is provided relative to Eduardo's claims:

Actual Damages:
>
> Non-Economic Damages:

- Emotional distress damages including:
  - Mental Anguish associated with the loss of the family's home,
  - Shame associated with the loss of the family's home,
  - fear of being homeless,
  - disruption of the parental relationship with his children,
  - the loss of his daughter's dogs, which ultimately was temporary
  - disruption of the marital relationship with his spouse,
  - embarrassment over the loss of his family's home,
  - feelings of failure associated with the loss of his family's home,
  - interference with his spiritual and church relationships,
  - depression,
  - stress,
  - anxiety,
  - worry,
  - loss of sense of place,
  - Loss of what the Garcias considered a meeting space for their church community, as the house had become the go-to space for their church members, bible studies, and youth meetings. Not to mention the favorite hangout for the children and their friends. Over the years it had become a weekly tradition for the bible study group to meet at the Family Home, and also a favorite hangout location for the church youth. They would pray, sing, practice musical instruments. It was considered a safe space for them. In fact, at one point the Garcias decided to eliminate a wall between dining room and living room to create an open concept specifically

8

because of this. This all ended when they moved to the Brookfield apartment. The Garcia's or their children were never able to regain this.

- increased isolation,
- loss of keepsakes and heirlooms,
- the distress of watching his wife's health deteriorate,
- The anguish of having all the needless harms associated with losing his family's home revisited upon him when he received the first Wells Fargo letter in 2019,
- Anger associated with learning his family never should have suffered these losses;
- The destruction of Eduardo's American Dream;

Eduardo has no training or expertise by which he could value the needless harms Wells Fargo has inflicted upon him since its wrongful conduct denied his family loss mitigation. Eduardo is relying upon his counsel to set the value for his case. Eduardo's counsel will ask the jury to award $100 per hour for non-economic damages. As of March 5, 2022, that number is 101,064 hours. As of March 5, 2022, that calculation is $10,106,400.

Economic Damages:

- Severe damage to his credit rating;
- Inability to access credit to purchase a reliable automobile;
- Inability to access significant parts of the housing market after foreclosure;
- Legal fees for filing of Chapter 7 = $1,750.00; Chapter 7 filing fee = $299.00
- Loss of potential equity = $182,586.00 through the complaint date. This number is almost certain to increase  by the time of trial.
- Approximately $1000-1500 in application fees for apartments after the loss of the marital home.
- Loss of approximately $4000.00-5000.00 in tools and power tools that Eduardo used for his self-employment construction work that he was forced to sell or give away because there wasn't sufficient space in the Brookfield apartment.
- Loss of personal property such as furniture and appliances the family was forced to give away after the foreclosure.
- Significant time spent attending Court on the foreclosure case.
- Time spent working on loss mitigation efforts.
- Costs of making copies and mailing information to Wells Fargo for loss mitigation efforts.
- Increased maintenance costs required to maintain the older, cheaper and unreliable vehicles the family was required to drive since their credit was destroyed.
- Loss of the family home the Garcias expected to pass to their children or grandchildren.
- Legal fees and costs for preparing/filing/prosecuting this action. The Garcias object to the production of these documents at this time on the basis of attorney-client privilege and work product doctrine. Documents will be produced as may be ordered by the Court for an award of attorney fees. These attorney's fees will

9

not be claimed in the case in chief, rather, if the Plaintiff prevails then counsel will seek fees under the ICFA.

**INTERROGATORY NO. 17:**

Explain in detail the basis for the discrepancy between Your allegation in paragraph 67 of the Complaint and Your subpoena response to Request for Production of Documents 8, dated November 16, 2021.

**ANSWER:** Eduardo objects to this interrogatory as there is no discrepancy. At the time of filing the Complaint, the Garcias had not itemized the amount. The Garcias knew they invested "***over $40,000*** and extensive time in completely rehabbing" the Family Home. In responding to Wells Fargo's Request for Production No. 8, the Garcias itemized the costs, which total an estimated $66,850.00.

**INTERROGATORY NO. 18:**

Explain in detail the basis of Your contention that Wells Fargo caused Your Child, Byron Garcia, to not to attend "DePaul University or College of DuPage," or to "never … finish and obtain a college degree" as alleged in paragraph 115(O) of the Complaint.

**ANSWER:** College of DuPage charges a significantly reduced "in-district" tuition to students that reside in their District. The LaGrange house was located in said District. Upon losing the house, the Garcias were no longer residents of the District. College of DuPage is a community college with a very good reputation. Mr. Garcia believes it is exactly the type of school in which Byron could have thrived once he began to become frustrated and unmotivated with the program at National Louis University. However, the significant costs of the out-of-district tuition was a deciding factor for Byron to no longer consider the school. Byron has admitted to his parents that the "cost" of attending college became a primary concern for him, and that with the house going into foreclosure and being lost, he lost all confidence in his parents' ability to help him financially,

and he also just didn't want to be a further financial burden on them. Because of this he never considered DePaul University, a very expensive college, as an option. Byron's closest friends attended DePaul and went on to graduate. Eduardo believes that if Byron would have gone to a school that he wanted to, or majored in a program of his choice, that he would have been more motivated and would have graduated. Eduardo believes Byron's feelings of being a financial burden on his parents impacted his post-secondary education choices and his performance in college.

**INTERROGATORY NO. 19:**

Explain in detail the basis of Your contention that Wells Fargo caused You to "[believe]" that "the loss of the Family Home was due to [Your] temporary unemployment" as alleged in paragraph 115(S)(e) of the Complaint.

**ANSWER:** Eduardo privately faulted himself for not being able to produce income for the family during the time that the house was being lost. Culturally as a Mexican, Eduardo strongly believes that as the husband and father of the family he should be a provider and protector for his family, to advance the family forward and upward, and provide opportunities for his children. Eduardo believed that his inability to generate enough income was ultimately the reason the family lost the home. And that because of this, Eduardo failed in his capacity as a husband and father.

**INTERROGATORY NO. 20:**

Explain in detail the basis of Your contention that Wells Fargo caused You "embarrassment, humiliation, shame" and "feelings of failure" as alleged in paragraph 115(S)(h) of the Complaint.

**ANSWER:** Before losing the house, Eduardo genuinely believed that everything was going to be fine and the bank and the federal government were going to help them save the house.

11

They heard everywhere on the radio and on television that President Obama had created the HAMP Program to help families save their homes. Mr. Garcia felt that the Garcias were doing everything they were supposed to do. They communicated with Wells Fargo continually, they sent and re-sent documents to Wells Fargo in support of their application for a loan modification. They took the loan application process very seriously from the very beginning. Eduardo and Mrs. Garcia would spend hours every night preparing budgets, writing letters, and gathering documents. They would plan together on what needed to be sent or re-sent. Until the moment they received notice that the house was sold and they were going to be evicted, Eduardo believed Wells Fargo would help them keep the house. Eduardo grew up dirt poor and was proud of the business he built and the home that he and his wife had provided for their children. Through his own hard work, Eduardo totally remodeled the house and made it a beautiful home that Eduardo and his family were proud of. When Wells Fargo took the home in foreclosure, Eduardo's world came crashing down. Eduardo lost all hope and didn't know what he and his family was going to do. Eduardo didn't know where the family would live or if they would be homeless. Wells Fargo's actions and inactions caused Eduardo considerable embarrassment, humiliation, shame, and caused Eduardo to believe he had failed his family in his role as husband and father. Eduardo was embarrassed to talk to his family. Eduardo would isolate himself and avoid communication with his brothers and sisters, as he was too ashamed to face them. Eduardo was severely depressed and had difficulty functioning in daily life. Eduardo will personally testify to the embarrassment, humiliation, shame and feelings of failure caused by Wells Fargo, and how Wells Fargo drastically affected his mental health and well-being.

**INTERROGATORY NO. 21:**

Explain in detail the basis of Your contention that Wells Fargo "drastically affected" Your

12

"mental health" as alleged in paragraph 115(U), Including its subparagraphs, of the Complaint.

**ANSWER:** *See* Eduardo's response to Interrogatory no. 20 above. After losing the house, Eduardo fell into a deep black well and had no way of getting out. Eduardo felt that he didn't have the energy to do anything. Historically, even on weekends and days he didn't have work, Eduardo has always been an early riser and a morning person. During these dark years, Eduardo lost this, Eduardo felt he was without energy and would just want to go back to bed no matter what time he woke up. Until Eduardo lost the family home, Eduardo had never in his life felt the feeling of waking up in the morning and not wanting to work. Now Eduardo felt this way every day. Eduardo had no will to do anything. Eduardo had never felt like this in his life and didn't know what to do. Eduardo was frustrated and angry with himself, Eduardo constantly asked himself what he could have done differently to save the house. Eduardo couldn't stop thinking about how many years he felt his family had lost, how far they had been set back, how he had thrust his family into poverty. Eduardo would spend hours thinking about the sacrifices they had made throughout the years in order to afford this house and to make improvements to it. All the vacations they had not taken, the long weekend trips they had skipped, all so they could save money and have time to work on the house. Eduardo felt that he had taken his children's youth. It all seemed like a waste to him now and these thoughts consumed every waking hour of his life for many years.

**INTERROGATORY NO. 22:**

Explain in detail the basis of Your contention that Wells Fargo caused Your Child, Byron Garcia, "trauma" as alleged in paragraph 115(V)(f) and (g) of the Complaint.

**ANSWER:** This Interrogatory is best answered by Byron, himself. Byron suffered emotional damages as a result of Wells Fargo's actions alleged in the Complaint. Byron suffered from stress, emotional distress, and other emotional and psychological harm. Eduardo believes

13

Wells Fargo's conduct forced Byron to grow up and take on adult responsibilities at a very young age during this time. From going to court and helping Eduardo understand what was happening, to helping put together documents for the modification, to helping the family find an apartment in a hurry. Eduardo feels Wells Fargo's actions put part of the responsibility of saving the house on Byron, and that this affected Byron greatly.

Dated: March 7, 2022                    *Respectfully submitted,*

                                        */s/ Nick Wooten*
                                        Nick Wooten
                                        NICK WOOTEN, LLC
                                        5125 Burnt Pine Drive
                                        Conway, Arkansas 72034
                                        (833) 937-6389
                                        nick@nickwooten.com

                                        Rusty A. Payton,
                                        PAYTON LEGAL GROUP
                                        20 North Clark Street, Suite 3300
                                        Chicago, Illinois 60602
                                        (773) 682-5210
                                        info@payton.legal

                                        Salvador J. Lopez
                                        ROBSON & LOPEZ, LLC
                                        180 W. Washington Street, Suite 700
                                        Chicago, Illinois 60602
                                        312-523-2166
                                        lopez@robsonlopez.com

                                        *Counsel for the Plaintiffs*

## VERIFICATION

I, EDUARDO GARCIA, declare under penalty of perjury that I have read the foregoing answers contained in Plaintiff's Answers to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories, and that the answers set forth therein are truthful to the best of my knowledge, information and belief.

Executed this _____ day of March, 2022.

_____

Eduardo Garcia

## **CERTIFICATE OF SERVICE**

I certify that on March 7, 2022, a copy of the foregoing **Eduardo Garcia's Answers to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories** was served via electronic means on:

Scott P. Glauberman
Christopher Parker
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
sglauber@winston.com
cparker@winston.com

Angela A. Smedley
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Asmedley@winston.com

Shawn R. Obi
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Sobi@winston.com

*Counsel for Defendant*

*/s/ Nick Wooten*
Nick Wooten