# Exhibit 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDUARDO GARCIA and JULIA GARCIA, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-02402 |
| vs. | ) | |
| | ) | Honorable Rebecca R. Pallmeyer |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RULE 26(a) THIRD SUPPLEMENTAL INITIAL DISCLOSURES**

Plaintiffs Eduardo Garcia and Julia Garcia, by and through counsel, hereby provides the following third supplemental disclosures pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. Plaintiffs continue their investigation and reserve the right to supplement these disclosures in accordance with Rule 26(e).

1.      State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses and provide a fair description of the nature of the information each person is believed to possess.

**ANSWER:**

- Eduardo Garcia

  Eduardo Garcia is one of the Plaintiffs in this action. Mr. Garcia may be contacted through counsel. Mr. Garcia has information as detailed in the Complaint filed herein.

- Julia Garcia

  Julia Garcia is one of the Plaintiffs in this action. Mrs. Garcia may be contacted through counsel. Mrs. Garcia has information as detailed in the Complaint filed herein.

- Byron Garcia

1

Byron Garcia is the son of Eduardo and Julia Garcia and is expected to testify as to how Wells Fargo's conduct affected his family and his parents. Byron Garcia is still represented by Plaintiffs' counsel and may be reached by contacting Plaintiffs' counsel.

- Miriahm Garcia

Miriahm Garcia is the daughter of Eduardo and Julia Garcia and is expected to testify as to how Wells Fargo's conduct affected her family and her parents. Miriahm Garcia continues to be represented by Plaintiffs' counsel and may be reached by contacting Plaintiffs' counsel.

- Domingo Garcia

Domingo Garcia is Eduardo's brother and has information concerning the issues Eduardo and Julia were going through with Wells Fargo and their attempts to keep their house.

- Kathy Kapsa

Kathy Kapsa was, at all times relevant to this case, a licensed realtor. Ms. Kapsa worked with the Garcias when they originally purchased the property located at 407 Beach Avenue, LaGrange Park, IL in 2002. In 2009, Ms. Kapsa listed the Garcias' house for sale. Ms. Kapsa has information regarding the improvements the Garcias made to the property, the issues the Garcias had with the Loan, and the Garcias' reasons for listing the house for sale.

- Susan Vega

Susan Vega is a friend and was Julia's co-worker from 2004-2012. Ms. Vega has information concerning the issues Eduardo and Julia were going through with Wells Fargo and their attempts to keep their house.

- Martha Polo Koehler

Martha Polo Koehler has been a spiritual, academic and personal counselor, and Julia's supervisor. Ms. Koehler has information concerning the issues Eduardo and Julia were going through with Wells Fargo and their attempts to keep their house.

- Elena Briseño

Elena Briseño is a friend and was Julia's co-worker from 2005-2012. Ms. Briseño has information concerning the issues Eduardo and Julia were going through with Wells Fargo and their attempts to keep their house.

- Rosa Garcia

2

Rosa Garcia is Julia's sister and has information concerning the issues Eduardo and Julia were going through with Wells Fargo and their attempts to keep their house.

- Anita Pillai, M.D.

  Anita Pillai, M.D., is the Garcias' Primary Care Medical Provider with Elmhurst. She has information concerning the stress and its detrimental affects on Julia's fibromyalgia, and medical history of Eduardo, Byron and Miriahm.

- Wells Fargo Bank, N.A.

  Wells Fargo Bank, N.A. ("Wells Fargo") is the Defendant in this case and may be contacted through counsel. Wells Fargo has information as detailed in the Complaint herein.

- Wells Fargo & Company

  Wells Fargo Bank, N.A. is the primary subsidiary of Wells Fargo & Company ("WFC"). WFC may be contacted through Defendant's counsel. WFC has information as detailed in the Complaint herein.

- Robert Ferguson

  Mr. Ferguson, a Loan Administration Manager for Wells Fargo Home Mortgage, was a 30(b)(6) witness for Wells Fargo in *Hernandez* (deposed on July 10, 2019) and also submitted a Declaration dated December 10, 2019, in support of Wells Fargo's opposition to Plaintiffs' renewed motion for class certification. Wells Fargo has identified Mr. Ferguson as a person who may have information responsive to the interrogatories.

- Carmen Bell

  Ms. Bell, a Senior Vice President for Wells Fargo Home Mortgage, was a 30(b)(6) witness for Wells Fargo in *Hernandez* (deposed on August 2, 2019) and also submitted a Declaration dated December 31, 2018, in support of Wells Fargo's response to order to show cause stating, "I have read the complaint filed by Plaintiff Alicia Hernandez and, relevant here, I was primarily responsible for determining impacted customers and the remediation plan for the issues described in the complaint." *Hernandez, et al. vs. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.), Dkt. 24-1. According to Wells Fargo, during the relevant time period, Ms. Bell was Head, Wells Fargo Home Mortgage Customer Contact and Default Decisions. Wells Fargo has identified Ms. Bell as a person who may have information responsive to the interrogatories.

- Diane Young

3

Ms. Young has been employed by Wells Fargo for more than 20 years and during the relevant time period, Ms. Young a Project Manager. In 2014 to 2015, Ms. Young was the project manager for a technology update, "Corporate Advance and State Attorney Fee Matrix Research." Ms. Young was deposed in *Hernandez* on July 19, 2019. Wells Fargo has identified Ms. Young as a person who may have information responsive to the interrogatories

- Tom Wayne

Mr. Wayne, at all times relevant, was a Vice President/Lending Officer of Wells Fargo Home Mortgage Default Servicing - Default Decisioning. Mr. Wayne has been an employee of Wells Fargo for more than 11 years and was actively involved in the Corporate Advance and State Attorney Fee Matrix Research Project. Mr. Wayne has information as detailed in the Complaint herein.

- Beena Menon

Ms. Menon was employed by Wells Fargo for 10 years. She was Head of Default Decisions at Wells Fargo from 2013 to 2018. According to her LinkedIn profile, Ms. Menon "assumed leadership of the Default Decision operation, leading 4,000+ team members in supporting home preservation efforts for all servicing portfolios, including government-sponsored entities, company-owned, and private investors." Ms. Menon was Executive Vice President, Enterprise Services from 2018 until she left Wells Fargo in July 2021. Ms. Menon was deposed in *Hernandez* on August 21, 2019. According to Wells Fargo, Ms. Menon was Head of Enterprise Utility Services during the relevant time period. Wells Fargo has identified Ms. Menon as a person who may have information responsive to the interrogatories.

- Susan Crawford

During the relevant time period, Ms. Crawford was employed by Wells Fargo as Operational Risk Consultant. Ms. Crawford was one of the employees who warned Wells Fargo that incorrect loan modification denials would result if Wells Fargo did not fix the error and yet, Wells Fargo continued to use the tool because it did not want to spend the money to fix it. Ms. Crawford was deposed in *Hernandez* on November 14, 2019. Wells Fargo has identified Ms. Crawford as a person who may have information responsive to the interrogatories.

- Daniel N. Pfeil

Mr. Pfeil was, at all times relevant to this matter, employed by Wells Fargo as a Credit Portfolio Consultant, and was actively involved in the Corporate Advance and State Attorney Fee Matrix Research Project. Mr. Pfeil was deposed in *Hernandez* on November 14, 2019. Wells Fargo has identified Mr. Pfeil as a person who may have information responsive to the interrogatories.

- Kara Reimers

  Ms. Reimers has been employed by Wells Fargo for over 18 years. She was a Lending Officer at Wells Fargo from 2003 to February 2020, Operational Risk Consultant, Vice President, from August 2019 to February 2020, and Operational Risk Officer from February 2020 to present. Ms. Reimers was deposed in *Hernandez* on November 20, 2019. Wells Fargo has identified Ms. Reimers as a person who may have information responsive to the interrogatories.

- Michael Bates

  Mr. Bates was employed as a HAMP Specialist with Wells Fargo. Mr. Bates communicated with the Garcias regarding their loan modification application. Wells Fargo has identified Mr. Bates as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories

- Erika Diaz

  Ms. Diaz has been employed by Wells Fargo for over 13 years. She currently lists her position with Wells Fargo as Wholesale Relationship Associate II (09/2021 to present). Wells Fargo has identified Ms. Diaz as a person who may have information responsive to the interrogatories.

- Wendy Spaziani

  Ms. Spaziani was employed by Wells Fargo during the Garcias' application for a loan modification. Mr. Garcia faxed loan modification documents to Ms. Spaziani. Wells Fargo has identified Ms. Spaziani as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Danny Mccarl

  Mr. Mccarl was employed as a Loan Verification Analyst with Wells Fargo during the Garcias' application for a loan modification. Wells Fargo has identified Mr. Mccarl as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Casey Goodrich

  Ms. Goodrich was employed as a Loan Verification Analyst with Wells Fargo during the Garcias' application for a loan modification. Wells Fargo has identified Ms. Goodrich as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- M. Keith Hallman

  Mr. Hallman was employed as a HAMP Analyst with Wells Fargo. In 10/2010 and 02/2011, Mr. Hallman signed certifications pertaining to the Garcias' loan modification application stating: "The borrower has been evaluated for HAMP and was determined to be ineligible for the program." Wells Fargo has identified Mr. Hallman as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Drew Standridge

  Mr. Standridge was employed as a HAMP Analyst with Wells Fargo. In 12/2010, Mr. Standridge signed a certification pertaining to the Garcias' loan modification application stating: "The borrower has been evaluated for HAMP and was determined to be ineligible for the program." Wells Fargo has identified Mr. Standridge as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Ben Windust

  Mr. Windust was a Senior Vice President for Wells Fargo Home Mortgage. Mr. Windust authored a letter to borrowers regarding HAMP. Upon information and belief, Mr. Windust was Sponsor for the HAMP - Decision Making GSE Tool Rewrite (Release: 2009). Wells Fargo has identified Mr. Windust as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Robert Seneney

  Wells Fargo has identified Mr. Seneney as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Brent Potter

  Mr. Potter was employed as a Senior Vice President, SPOC, for Wells Fargo Home Mortgage and was directly involved with Wells Fargo's Remediation Plan. Wells Fargo has identified Mr. Potter as a person who may have information responsive to the interrogatories.

- Stirling Carpenter

  Mr. Carpenter was employed as a Loss Mit Supervisor for Wells Fargo. Mr. Carpenter, along with Capricia Wizzard-Murray, Loss Mit Specialist, reviewed the Garcias' loan modification application and documents and on 02/02/2011, recommended removal from Loss Mit. Wells Fargo has identified Mr.

6

Carpenter as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Annette Baez

  Ms. Baez's name appears on WF_GARCIA_00001463, Snapshot (HAMP-Tier 1-Std) dated 08/24/2010, the date that the Garcias' loan modification application was erroneously and wrongly denied. Wells Fargo has identified Ms. Baez as an employee who may have worked on the Garcias' application and may have information responsive to the interrogatories.

- Mike Nold

  Mr. Nold, at all times relevant, was an employee of Wells Fargo and is currently a lending officer with Wells Fargo. Mr. Nold was actively involved in the Corporate Advance and State Attorney Fee Matrix Research Project. Mr. Nold has information as detailed in the Complaint herein.

- Perry J. Hilzendeger

  Mr. Hilzendeger, at all times relevant, was a Senior Vice President of Wells Fargo, Default Services and Real Estate Servicing. Mr. Hilzendeger was actively involved in the investigation of Wells Fargo's servicing issues and has information concerning Wells Fargo's HPA Tool errors and claims as detailed in the Complaint herein.

- Unknown Representatives of Wells Fargo Bank, N.A. and/or Wells Fargo & Company

  Unknown Representatives of Wells Fargo Bank, N.A. and/or Wells Fargo & Company may have information regarding Wells Fargo's policies and procedures pertaining to consumer's eligibility for HAMP and other loss mitigation programs and foreclosure; Wells Fargo's mortgage modification software, errors in Wells Fargo's mortgage modification software; examinations and audits conducted by the Office of Comptroller of the Currency ("OCC") and the Federal Reserve, and consent orders; Wells Fargo's policies and procedures pertaining to its investigation of the errors resulting in Wells Fargo's improper denial of several hundred loan modification applications; and information as detailed in the Complaint herein.

- Unknown third parties

  Unknown third parties associated with Wells Fargo's loss mitigation processing, mortgage modification software, determination of consumer's eligibility for a loan modification, approvals and denials of loan modification applications, foreclosures, and may have knowledge and information regarding Wells Fargo's policies and procedures pertaining to same.

7

2.      Description by category of all documents, data compilations and tangible things that are in Plaintiffs' possession, custody or control, that may be used to support their claims:

**ANSWER:**    The Garcias have in their possession the following documents which have been produced, to date:

| Bates Number | Date | Document Description |
|---|---|---|
| 1 | 11/20/2008 | Wells Fargo loan modification denial (*Exhibit A to Complaint*) |
| 2 - 3 | 11/12/2010 | Wells Fargo loan modification denial (*Exhibit A to Complaint*) |
| 4 - 5 | 12/01/2010 | Wells Fargo loan modification denial (*Exhibit A to Complaint*) |
| 6 | 02/07/2011 | Wells Fargo loan modification denial (*Exhibit A to Complaint*) |
| 7 - 10 | 07/26/2019 | Wells Fargo letter re: Wells Fargo's error; check payable to Mr. Garcia in amount of $14,500 (*Exhibit B to Complaint*) |
| 11 - 12 | 11/18/2019 | Wells Fargo letter re: Wells Fargo's error and additional check payable to Mr. Garcia in the amount of $10,000 (*Exhibit C to Complaint*) |
| 13 | 11/25/2019 | Wells Fargo letter to Mr. Garcia re: 07/26/2019 check in amount of $14,500 not cashed (*Exhibit D to Complaint*) |
| 14 | 04/18/2020 | Zillow Estimate of subject property located 407 Beach Ave., LaGrange Park, IL 60526, as of April 18, 2020 (*Exhibit E to Complaint*) |
| 15 - 27 | 01/08/2009 to 03/29/2011 | Foreclosure Docket - Cook County Case No. 2009-CH-00855 *Deutsche Bank vs. Garcias, et al.* |
| 28 - 60 | 01/08/2009 | Summons and Complaint *Deutsche Bank v. Garcias, et al.*, Cook County Case No. 2009-CH-00855 |
| 61 - 109 | 05/26/2011 | Garcia Chapter 7 Voluntary Petition (ND IL BK Case No. 11-22208) |
| 110 - 113 | 09/07/2011 | Discharge Order entered in Garcia's Chapter 7 |
| 114 - 287 | 06/30/2018 | Wells Fargo & Company Form 10-Q |
| 288 - 466 | 09/30/2018 | Wells Fargo & Company Form 10-Q |
| 467 - 634 | 09/30/2019 | Wells Fargo & Company Form 10-Q |
| 635 - 921 | 2018 | Wells Fargo & Company 2018 Annual Report |
| 922 - 1186 | 2019 | Wells Fargo & Company 2019 Annual Report |
| 1187 - 1190 | 05/26/2011 to 09/07/2011 | Chapter 7 Docket (ND Illinois U.S. Bankruptcy Court 11-22208) Filed: 05/26/2011 Discharged: 09/07/2011 |
| 1191 - 1281 | 04/20/2018 | Wells Fargo Form 8-K filed with the SEC, re: *In the Matter of: Wells Fargo Bank, N.A.*, United States of America, Bureau of Consumer Financial Protection, Administrative Proceeding 2018-BCFP-0001, Consent Order |

| Bates Number | Date | Document Description |
|---|---|---|
| | | *In the Matter of Wells Fargo Bank, N.A.*, United States of America Department of the Treasury, Office of the Comptroller of the Currency, AA-EC-2018-15, Consent Order, #2018-025<br><br>*In the Matter of Wells Fargo Bank, N.A.*, United States of America Department of the Treasury, Office of the Comptroller of the Currency, AA-EC-2018-15, Stipulation and Consent to the Issuance of a Consent Order |
| 1282 - 1309 | 09/09/2021 | *In the Matter of Wells Fargo Bank, N.A.*, United States of America Department of the Treasury, Office of the Comptroller of the Currency, Consent Order (Cease and Desist Order) #2021-035, AA-ENF-2021-29; and<br><br>Consent Order (Civil Money Penalty) #2021-036, AA-ENF-2021-30 |
| 1310 - 1322 | 01/28/2010 | Supplemental Directive 10-01 Home Affordable Modification Program |
| 1323 - 1421 | Various | Julia's Paystubs (2007-2011); Byron's 12/17/2010 Paystub |
| 1422 - 1585 | Various | 2003, 2007, 2008, 2009, 2010 Tax Returns - Eduardo and Julia Garcia<br><br>2011-2012 FAFSA with 2010 Tax Return - Byron Garcia |
| 1586 - 1608 | 03/21/2011 | Credit Report - Eduardo Garcia |
| 1609 - 1683 | Various | Emails between Julia Garcia and CredAbility |
| 1684 - 1709 | Various | Communications with ASC (Wells Fargo) re: Loan Modification Application |
| 1710 - 1730 | 10/2009 | Smothers Realty Group brochure - Listing of the house for sale with estimates of expenses for materials and labor for the renovation of the property; photos of property |
| 1731 - 1735 | 02/15/2011 | Julia's Work Evaluation for 01/2010 to 12/2010 Alivio Medical Center (Date of Hire: 09/08/2003) |
| 1736 | 04/25/2011 | Letter to property owner for Brookfield rental |
| 1737 - 1742 | 01/13/2010 | Eduardo's Application for Custodial position |
| 1743 - 1784 | 11/16/2010 | *Asset Acceptance v. Julia Escamilla*, Cook County Case No. 2010-M1-204569 |
| 1785 - 1787 | 03/13/2009 | *Household Finance v. Julia Escamilla*, Cook County Case No. 2009-M1-121723 (Docket) |
| 1788 - 1899 | Various | Complete 2010, 2011, 2012 Federal & State Tax Returns - Eduardo and Julia Garcia |
| 1900 - 1925 | 2013 | 2013 Federal & State Tax Returns - Miriahm Garcia |
| 1926 - 2002 | 2011 2013 | 2011, 2013 Federal & State Tax Returns - Byron Garcia |
| 2003 | 03/05/2009 | Email from NACA to Julia Garcia |

| Bates Number | Date | Document Description |
|---|---|---|
| 2004 - 2118 | Various | 2012 Julia Garcia W-2<br>2013 - 2015, 2018 - 2019 Federal & State Tax Returns - Eduardo and Julia Garcia |
| 2119 - 2131 | | Seminario Biblico Hispano Records re: Julia Escamilla (Garcia) produced by Martha Polo Koehler |
| 2132 - 2244 | March 2020 | The Real Wells Fargo: Board & Management Failures, Consumer Abuses, and Ineffective Regulatory Oversight - Report Prepared by the Majority Staff of the Committee on Financial Services, U.S. House of Representatives |

| BYRON E. GARCIA AND MIRIAHM GARCIA SCHOOL RECORDS | | |
|---|---|---|
| 1 - 41 | | Byron E. Garcia's school records |
| 1 - 210 | | Miriahm Garcia's school records |

| MEDICAL RECORDS | | |
|---|---|---|
| 1 - 292 | | Byron E. Garcia's medical records |
| 1 - 853 | | Eduardo Garcia's medical records |
| 1 - 3322<br>3323-3691 | | Julia Garcia's medical records |
| 1 - 840 | | Miriahm Garcia's medical records |

In addition to the above documents, Plaintiffs may use documents, deposition transcripts and exhibits produced by Wells Fargo in the *Hernandez* class action.

3. Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.

**ANSWER:**

- Actual damages including emotional distress damages. This category of damages is considered unliquidated and normally does not require Plaintiffs to list a specific amount. However, Garcias' Counsel is putting Wells Fargo on notice they intend to request the jury in this case award at least $20,000,000 in compensatory damages in this case.

- While punitive damages are also considered unliquidated and usually do not require disclosure of the amount to be sought for the same reason as general compensatory damages, the Garcias' counsel is putting Wells Fargo on notice

10

they intend to seek an award of at least $100,000,000 in punitive damages in this case. That number is a minimum and is subject to sharp upward revision as discovery continues.

Discovery has already revealed Wells Fargo internal documents showing Wells Fargo identified the problem that led to the loss of the Garcias' home in this case as early as 2013. Wells Fargo could have corrected the problem for approximately $62,000. Wells Fargo could have identified the consumers who had been needlessly harmed by this problem in 2013. This would have identified the Garcias, and their needless harm could have been remediated as early as 2013.

Instead, Wells Fargo closed the issue and ignored the problem for several more years. This compounded the magnitude of needless harm the Garcias suffered due to Wells Fargo's callous disregard for the consumers Wells Fargo needlessly harmed. Wells Fargo's actions also more than doubled the length of time the Garcias suffered needless harm. Wells Fargo's documents also lead to the ready inference that Wells Fargo was prepared to pay almost a billion dollars to resolve this issue if consumers were willing to litigate.

Instead, Wells Fargo has escaped any financial punishment for this wrongdoing. Wells Fargo has resolved its class litigation as well as its regulatory exposure on the cheap. This case represents the last opportunity for a jury to punish Wells Fargo for this wrongdoing.

- Legal fees for preparing/filing/prosecuting this action: Plaintiff has incurred approximately $270,670 in legal fees to date in the prosecution of this matter. The amount of these damages will continue to grow as this matter continues.

- Costs for Instant Action: Plaintiff has incurred $639.69 in costs to date related to the instant action including but not limited to the filing of the Complaint.

4.      Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.

**ANSWER**:    Not applicable to Plaintiff.

Dated: March 9, 2022                              *Respectfully submitted*,


                                      */s/ Nick Wooten*
                                       Nicholas H. Wooten - *Lead Trial Counsel*
                                       NICK WOOTEN, LLC
                                       5125 Burnt Pine Drive
                                       Conway, Arkansas 72034
                                       (833) 937-6389
                                       nick@nickwooten.com


                                       */s/ Rusty A. Payton*
                                       Rusty A. Payton,
                                       PAYTON LEGAL GROUP
                                       20 North Clark Street, Suite 3300
                                       Chicago, Illinois 60602
                                       (773) 682-5210
                                       info@payton.legal

                                       */s/ Salvador J. Lopez*
                                       Salvador J. Lopez
                                       ROBSON & LOPEZ, LLC
                                       180 W. Washington Street, Suite 700
                                       Chicago, Illinois 60602
                                       312-523-2166
                                       lopez@robsonlopez.com


                                       *Counsel for Plaintiff*

12

## CERTIFICATE OF SERVICE

I certify that on March 9, 2022, a copy of the foregoing Plaintiffs' Rule 26(a) Third Supplemental

Initial Disclosures was served via electronic means on:

Scott P. Glauberman
Christopher Parker
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
sglauber@winston.com
cparker@winston.com

Angela A. Smedley
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Asmedley@winston.com

Shawn R. Obi
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Sobi@winston.com

*Counsel for Defendant*

By: /s/ *Nick Wooten*