IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EDUARDO GARCIA** and **JULIA GARCIA**, <br><br> Plaintiffs, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.,** <br><br> Defendant. | Case No. 1:20-cv-02402 <br><br> Hon. Rebecca R. Pallmeyer <br><br> **ORAL ARGUMENT REQUESTED** |

**DECLARATION OF DAVID E. HARTMAN IN SUPPORT OF DEFENDANT'S
RULE 37 MOTION TO COMPEL INDEPENDENT MEDICAL EXAMINATIONS**

I, David E. Hartman, Ph.D, MS, ABN, ABPP, hereby declare as follows:

1. I have personal knowledge of the matters contained in this declaration and if called to testify to them could and could do so competently.

2. Since 1982 I have operated a private practice for clinical, forensic, and medical neuropsychology and clinical psychology in Chicago, Illinois. I have served as a neuropsychological and psychological consultant to the Isaac Ray Center for Psychiatry and Law at Rush Presbyterian St. Luke's Hospital. Before that I served as the Clinical Director of the Rush Human Performance Lab for the Isaac Ray Center for Psychiatry and Law at Rush Presbyterian St. Luke's Hospital. Prior to that, I served as the Director of inpatient and outpatient hospital neuropsychological services for Cook County Hospital.

3. I received my Ph.D in clinical/cognitive psychology from the University of Illinois at Chicago in 1982. I was board certified in Clinical Neuropsychology by the American Board of Professional Neuropsychology (ABN) in 1994. I received board certification in Clinical Psychology from the American Board of Profession Clinical Psychology (ABPP-CL) in

2006.  I earned my MS in psychopharmacology from Alliant University in 2013.  I completed my residency in psychology at Michael Reese Hospital and Medical Center in Chicago, Illinois.  I am a health care provider who is licensed to practice neuropsychology and psychology in Illinois.  Attached as Exhibit A is a copy of my current CV.

      4.      I have been retained by counsel for Defendant Wells Fargo Bank, N.A. to conduct a forensic neuropsychological examination of Plaintiffs Eduardo and Julia Garcia ("Plaintiffs").  The purpose of the examinations is to evaluate the nature and extent of Plaintiffs' mental and emotional state, and diagnose their psychological and neuropsychological conditions, if any, and whether their distress, if any, is related to Plaintiffs' assertions of mental and emotional distress and claims of disability.  These examinations are standard practice and I have been conducting independent medical examinations, for both plaintiffs and defendants, for over three decades.

      5.      Standard practice for this examination involves a full-day, forensic neuropsychological assessment.  This assessment includes a comprehensive clinical interview and a broad array of cognitive tests, behavior measures, and symptom self-report questionnaires.  All tests are generally accepted objective procedures.  Forensic neuropsychological assessment typically involves differential diagnostic examination of complex symptoms and behavior types.  The forensic neuropsychological assessment is intended to evaluate Plaintiffs' mental and medical history, and the possible sources of any alleged physical and emotional difficulties Plaintiffs have experienced that are at issue in the current lawsuit—namely Plaintiff Julia Garcia's alleged depression, stress, anxiety, fibromyalgia, migraines, and sleeping difficulties, and Plaintiff Eduardo Garcia's alleged feelings of being on edge, stress, anxiety, loss of motivation, inability to get out of bed, and difficulty concentrating.  Since these patterns are often subjective and differ from person to person, each individual requires such detailed

assessment to determine their unique pattern of symptoms and the best explanation for that symptom pattern. It is standard practice that "clinicians asked to provide neuropsychological syndrome measurement are expected to familiarize themselves with available research and to determine expectable diagnostic patterns, range of severity, and even the viability of the construct."[1] Depending on various factors, approximately five to twenty (20) tests will be administered. Individual tests range from five to ninety (90) minutes.

6. A scientifically valid neuropsychological examination must include a review of the Plaintiffs' medical, personal, and mental health history. In particular, I cannot evaluate the nature and extent of Plaintiffs' mental and emotional distress, if any, without an in-person examination and objective tests that allow the comparison of individual patient history, symptoms, and test results with expectation for various disorders and states of ill-being. Among the issues a forensic examiner is called upon to testify about are the factors that have affected the psychological condition of the subject. To do so, I must examine a broad scope of information related to patient history, experiences, medical treatment, social and family history, among other things, to determine the correct context for symptom development and possible progression.

7. . To impose artificial time restrictions upon the examination is contrary to standard practice and is clinically unsound. Comprehensive and detailed forensic assessment militates that the clinician consider the broad neuropsychological, medical and psychological influences on the patient and their possible causative conditions. Consequently, "forensic evaluations are much longer than other types of evaluation, with a mean and median of 14

---

[1] David E. Hartman, *Differential diagnosis in neuropsychology: A Strategic Approach*, in Textbook of Clinical Neuropsychology 51-61 (J.E. Morgan and J.H Ricker eds., 2d ed. 2018).

hours."[2] Defendant's request for a seven-hour patient examination is entirely reasonable within the community standard for these types of examinations.

8. With respect to testing, I do not plan to administer any physically painful tests to Plaintiffs, nor do I plan to perform any invasive procedures. I plan to conduct a thorough forensic neuropsychological assessment consisting of comprehensive clinical interview and a broad array of cognitive tests, behavior measures, and symptom self-report questionnaires, as stated above. I will not make any inquiries that violate the ethical standards of my profession or the standards of competent forensic neuropsychological practice.

9. The exploration of patient history is crucial to a true and correct determination of medical, neuropsychological and psychological causation—specifically, whether or not a subject's claimed emotional distress or condition was caused or exacerbated by the conduct forming the basis of the lawsuit or by some alternate source(s).

10. I shall not question Plaintiffs on conversations with their attorneys, Mr. Wooten, Mr. Lopez, or Mr. Payton, nor any person retained by Plaintiffs' counsel's office in this lawsuit other than any medical, mental health, or other healthcare and/or counseling professionals to whom Plaintiffs may have been sent by their attorneys for (and retained by Plaintiffs' attorneys so as to conduct) a litigation-related independent medical examination. I will not question Plaintiffs regarding their counsel's evaluation of any of Plaintiffs' claims against Defendant, and I will not question Plaintiffs on any other discussions that are subject to attorney-client privilege.

11. In prior cases similar to this one, the provision of ample time allows the subject of the examination to settle into the setting and respond comfortably to clinical interview

---

[2] Jerry J. Sweet, Kristen M. Klipfel, N.W., et al., *Professional practices, beliefs, and incomes of U.S. neuropsychologists: The AACN, NAN, SCN 2020 practice and "salary survey,"* 35 The Clinical Neuropsychologist 7-80 (2021), DOI: 10.1080/13854046.2020.1849803.

questioning and objective test questions. Provision of the availability of a full seven and a half hours also safeguards against a Plaintiff attempting to stall or delay in responding to questions in an attempt to avoid answering them and/or prevent completion of the examination. In prior cases, a full seven and a half hours of examination time was routinely allowed by the Judge or Mediator of whom it was requested.

    I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct and that this Declaration was executed on April 11, 2022, in Chicago, Illinois

Dated: April 11, 2022

                                          David E. Hartman, Ph.D, MS, ABN, ABPP

**Certificate of Service**

The undersigned, an attorney, hereby certifies that on the 11th day of April, 2022, the foregoing Declaration of David E. Hartman in Support of Defendant's Motion to Compel independent medical examinations was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system on all parties of record.

Dated: April 11, 2021

David E. Hartman