UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDUARDO GARCIA and JULIA GARCIA, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-02402 |
| vs. | ) | |
| | ) | Honorable Rebecca R. Pallmeyer |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | **ORAL ARGUMENT** |
| Defendant. | ) | **REQUESTED** |

**DEFENDANT WELLS FARGO BANK'S MOTION FOR PROTECTIVE ORDER
STRIKING PLAINTIFFS' RULE 30(b)(6) DEPOSITION NOTICE**

After reaching an agreement with Wells Fargo that they would not seek testimony on any topic that was covered by prior Rule 30(b)(6) testimony in *Hernandez v. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.), and representing to the Court at the last status conference that they could "be ready for trial as early as April 12, 2022," Plaintiffs Eduardo and Julia Garcia served a Rule 30(b)(6) Notice of Deposition ("Notice") on Wells Fargo. The Notice purports to identify 24 topics, including one with 11 discrete sub-topics.[1] Setting aside that Plaintiffs waited until the tail end of discovery to serve it, the Notice fails to comply with Federal Rule of Civil Procedure 30(b)(6)'s requirement that the deposing party describe the matters for examination with "reasonable particularity." Fed. R. Civ. P. 30(b)(6); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058, n5 (7th Cir. 2000). Plaintiffs' Notice is replete with overbroad and harassing topics that are not relevant to the claims and defenses in this individual opt-out case.

Wells Fargo has engaged in extensive efforts pursuant to Local Rule 37.2 to obtain clarification of Plaintiffs' Rule 30(b)(6) Notice. Indeed, the parties have met and conferred for three hours over the course of three teleconferences. Despite amending their Notice to eliminate

---

[1] Plaintiffs' original Notice of 30(b)(6) Deposition sought testimony on 31 topics.

1

or modify certain topics, the Notice remains noncompliant with Rule 30(b)(6). As detailed below, these defects establish good cause for the entry of a protective order quashing Plaintiffs' 30(b)(6) deposition notice. Wells Fargo's motion should therefore be granted in its entirety[2] pursuant to Fed. R. Civ. P. 26(c).

I. **Relevant Facts**

    A. **Case Background**

In 2002, Plaintiffs borrowed money from Wells Fargo to buy a house in LaGrange Park, Illinois for more than $200,000. Compl. ¶¶ 12, 62. They spent another $40,000 renovating the property. *Id*. ¶ 67. In 2006, Plaintiffs decided to refinance, and they took out an adjustable-rate mortgage. *Id*. ¶ 68. Unfortunately, that decision was particularly ill-timed: during the Great Recession, in 2008, the required monthly payment "increased drastically," Mr. Garcia's business failed, and as a result Plaintiffs stopped paying the mortgage. *Id*. ¶¶ 70-73.

Plaintiffs asked Wells Fargo to lower the mortgage payments. *Id*. ¶ 75. In November 2008, Wells Fargo denied their request for a repayment agreement because they failed to make the repayment plan's required payments. *Id*. Ex. A at 2. A year later, in 2009, Wells Fargo offered Plaintiffs a forbearance agreement, but Plaintiffs failed to make the requirement forbearance payments. Declaration of Shawn R. Obi ("Obi Decl."), Ex. 7. Finally, in 2010, Plaintiffs were still in the house, Wells Fargo declined to offer them a loan modification under the federal government's Home Affordable Modification Program. Compl. Ex. A at 3. Under HAMP, a qualifying borrower is put on a trial payment plan, and if the trial payments are made on time, the

---

[2] Wells Fargo objects to Topic Nos 1-4 on the grounds that they are not proper topics for binding corporate testimony, and instead are background questions for the witness. They are not the subject of this motion, as counsel for Plaintiffs agreed during the meet-and-confer that Wells Fargo is not required to educate a witness on those topics under Rule 30(b)(6), and instead those topics were included as subjects he intends to ask the witness as background. Obi Decl. ¶ 9.

borrower can receive a permanent loan modification. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 557 (7th Cir. 2012). Plaintiffs do not allege that they would have been able to make the trial payments that HAMP would have required. Nor do they allege that they would have been able to make the required payments under a permanently modified loan.

Wells Fargo later discovered that the automated software it used to evaluate requests for trial payment plans under HAMP contained a calculation error that led Wells Fargo to believe Plaintiffs did not qualify when it declined their application in 2010. Compl. ¶¶ 3, 98 & Ex. B at 2. Wells Fargo sent Plaintiffs a letter that admitted the mistake, stated Wells Fargo's desire to make things right, enclosed a payment, offered to mediate, and informed them about a class action case, *Hernandez v. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.). *Id*. Ex. B at 2. Wells Fargo eventually sent Plaintiffs a total of $24,500 in payments, but Plaintiffs filed this lawsuit, alleging consumer fraud.

    **B.**    **Discovery History**

This is a copycat lawsuit. Thirty-six paragraphs of the complaint's allegations (paragraphs 23-33 and 37-61) are lifted, verbatim or nearly so, from the class action complaints in *Hernandez* and another case, *West v. Wells Fargo* (No. 19-cv-286, E.D. Ky.). This case was filed only after the parties in *Hernandez* announced a class settlement that included all borrowers who experienced a foreclosure. In *Hernandez*, the parties conducted extensive discovery regarding the software error that impacted Plaintiffs' loan modification application. Wells Fargo produced approximately 11,000 documents (including the named plaintiffs' loan files and related documents), and the plaintiffs conducted numerous depositions of current and former Wells Fargo employees, including a comprehensive Rule 30(b)(6) deposition. Wells Fargo has agreed that Plaintiffs may use deposition transcripts from *Hernandez,* as well as documents and exhibits produced by Wells Fargo in that case. In exchange for that agreement, Plaintiffs agreed that they would not seek to

3

re-depose the same witnesses or seek testimony on any topic that was covered by prior Rule 30(b)(6) testimony in *Hernandez*. Obi Decl. ¶ 2.

Plaintiffs apparently were satisfied with the information they obtained via that agreement. On March 7, 2022, Plaintiffs filed a Motion to Set Case for Trial, representing to the Court that they could "be ready for trial as early as April 12, 2022." Dkt. 72, ¶ 20. At the March 8, 2022 status conference, Plaintiffs' counsel reiterated that he "could be ready for trial very quickly" and "[w]e don't really feel like we need a lot else." To that end, Plaintiffs' counsel indicated he was considering "the possibility of taking *one* other employee deposition that did not get taken in [*Hernandez*]," "[b]ut other than that, we pretty much could be ready [for trial] very quickly." *Id*. (emphasis added).

Contrary to those representations, on April 21, 2022, Plaintiffs served seven deposition notices on Wells Fargo, including a Rule 30(b)(6) notice. Obi Decl., ¶ 3. The notice included 31 topics, the majority of which sought testimony on topics that were covered by prior Rule 30(b)(6) testimony in *Hernandez*, in stark violation of Plaintiffs' agreement not to seek any such deposition testimony.[3] Obi Decl., Ex. 1. On April 26, 2022, the parties met and conferred over a number of discovery issues, including the 30(b)(6) topics. Obi Decl. ¶ 4. A second meet-and-confer to discuss the 30(b)(6) topics was held on April 29, 2022. *Id*. ¶ 5. On May 1, 2022, Plaintiff served an amended notice that included 23 topics. The parties met and conferred for a third time on the 30(b)(6) topics on May 3, 2022. Obi Decl. ¶ 7. On May 5, 2022, Plaintiff served a further amended Notice that included 31 topics and 24 sub-topics. Obi Decl., Ex. 3. During the course of the meet

---

[3] Five of those notices seek depositions of former Wells Fargo employees: (1) Wells Fargo's former CEOs, John Stumpf and Timothy Sloan; (2) Perry Hilzendeger; (3) Brett Potter; and (4) Ben Windust, a former employee whose electronic signature appears on certain modification denial letters to Plaintiffs. Wells Fargo separately moves for protective orders regarding the depositions of Perry Hilzendeger and its former CEOs.

4

and confer process, counsel for Wells Fargo requested that Plaintiffs provide copies of the consent decrees that are the subject of multiple topics and that they identify the portions they perceive as relevant. Plaintiffs provided highlighted copies of various consent decrees from 2011, 2013, 2015, 2018, and 2021 on May 3, 2022. Obi Decl., Ex. 4. This effort did not sufficiently clarify or narrow Plaintiffs' topics.

In accordance with the "good faith" requirements of Federal Rule of Civil Procedure Rule 26(C)(1) and Local Rule 37.2, Wells Fargo convened multiple meet and confers with Plaintiffs' counsel, but were unable to resolve this dispute.

## II. Legal Standard

Rule 30(b)(6) authorizes litigants to name a business entity as a deponent. Fed. R. Civ. P. 30(b)(6). Doing so places a duty upon the business to designate an individual to testify on behalf of the business, and to educate that individual so that he or she has knowledge that is responsive to the requests set forth in the 30(b)(6) notice. *Id.* However, "[a] Rule 30(b)(6) notice is not a repository to be used at the end of the case for all discovery requests that could have been pursued earlier but were not." Sidney I. Schenkier, LITIGATION (Winter 2003), at 22.2.

The district court has wide discretion to decide when a protective order is appropriate and what degree of protection is required. *See Seattle Times Co. Rhinehart,* 467 U.S. 20, 36 (1984); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002); *DeRance, Inc. v. PaineWebber Inc.,* 872 F.2d 1312, 1325-26 (7th Cir. 1988). The scope of Rule 30(b)(6) is limited by Rule 26 which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 26 also allows a court, upon a showing of good cause, to enter a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ.

5

P. 26(c)(1). Finally, Rule 26 requires that the court must limit the frequency or extent of discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

Typically, a district court presented with a discovery motion under Rule 26(c) will try to assess the incremental benefits and burdens of the proposed discovery at issue, consistent with the balancing language of Rule 26(b)(2)(C)(i)-(iii). When determining whether a protective order is appropriate, the court should consider the totality of the circumstances and weigh the value of the material sought against the burden of providing it. *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *1 (N.D. Ill. Dec. 7, 2017) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Here, as set forth below, the balancing of burden against benefit is straightforward, because the requested discovery at issue in this motion, while plainly burdensome, is duplicative, overly broad, has little, if any, relevance to any claim or defense at issue and/or is out of proportion to the needs of the case.

**III.** **Plaintiffs' 30(b)(6) Notice Fails to Identify Topics With Reasonable Particularity, Seeks Cumulative Testimony on Issues That are Irrelevant, Disproportionate, or Not In Dispute, or Were Otherwise Covered by Prior Testimony in *Hernandez*.**

    **a.** **Topics 5 and 6**

**Topic 5**: "The factual allegations in the Plaintiffs' complaint regarding Wells Fargo's conduct and actions that are the subject of this lawsuit as contained in the Complaint (D.E. 1) filed in Eduardo Garcia and Julia Garcia vs. Wells Fargo Bank, N.A., Northern District of Illinois, Eastern Division, Case No. 1:20-cv-02402."

**Topic 6:** "A discussion of the Garcias' mortgage loan account including any matter contained in the Garcias' mortgage loan account records produced by Wells Fargo."

Rule 30(b)(6) requires that "the requesting party "describe with reasonable particularity the matters on which examination is requested." Recognizing the substantial burden imposed on corporate entities by the 30(b)(6) deposition procedure, several courts have emphasized the noticing party's duty to "take care to designate, with painstaking specificity, the particular subject areas that are intended to be questions, and that they are relevant to the issues in dispute." *See, e.g., Kalis*, 231 F.3d at 1058, n. 5 (citing *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)); *LKQ Corp. v. Gen. Motors Co.*, 2021 WL 5415152, at *7 (N.D. Ill. Nov. 19, 2021). Topics must be at least specific enough to allow the entity to "reasonably prepare a witness to testify." *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, 2007 WL 601837, at *3 (E.D. Wis. Feb. 23, 2007).

Topics 5 and 6 are overly broad because they do not describe with "reasonable particularity" the particular subject areas within the Complaint that are intended to be questioned, as required by Rule 30(b)(6). Put simply, Topic 5 does not identify which "factual allegations" are matters for examination. Similarly, Topic 6 fails to indicate with any particularity *what* within Plaintiffs' "mortgage loan account records" will be "discuss[ed]" during the 30(b)(6) deposition. According to the Notice, Wells Fargo is obligated to educate its witness on "any matter" contained therein. *See* Topic 6. As discussed during the parties' meet and confer on May 3, 2022, Plaintiffs'

7

mortgage loan file consists of over 1,000 pages of documents. Thus, as it stands, Topic 6 would require Wells Fargo to prepare its designated representative on more than 1,000 pages of information, *for a single topic*. Given their breadth, Wells Fargo asks that Topics 5 and 6 be stricken or substantially narrowed.

    **b.**    **Topics 7, 8, and 9**

**Topic 7:** A discussion of Wells Fargo's mortgage system of record, Black Knight fka LPS fka Fidelity, commonly referred to as MSP, this is to include, but not be limited to, each of the following:

a. A discussion of the purpose of MSP.
b. A discussion of the various screens in MSP that aggregate data relating to fees charged during the servicing of a mortgage loan account.
c. A discussion of the information contained within those screens as well as the title of each of the screens.
d. A discussion of the DDCH screen and all records tracked by the DDCH screen.
e. A discussion of "allowable" fees for services performed by vendors and attorneys during the servicing of a mortgage loan account.
f. A discussion of Wells Fargo's default services provider.
g. A discussion of Wells Fargo's default servicing agreement with Wells Fargo's default services provider.
h. A discussion of the limitations on attorney's fees and costs that are properly "allowable" against any mortgage loan account.
i. A discussion of who audits attorney's fee invoices received for any mortgage loan account serviced by Wells Fargo.
j. A discussion of the "Network Attorney's Agreement" between Wells Fargo's Default Services Provider and the firms who have executed a "Network Attorney's Agreement" with Wells Fargo's Default Services Provider.
k. A discussion of the contractual limitation on the maximum attorney's fees that are "allowable" for the provision of foreclosure and bankruptcy related services for the Creditor's attorneys who handle foreclosure and bankruptcy matters for mortgage loan accounts serviced by Wells Fargo.

**Topic 8:** A discussion of the lines of business and the executives who made the decision to utilize the State Attorney's Fee Matrix in the HPA tool.

**Topic 9:** A discussion of whether the use of the State Attorney's Fee Matrix was unnecessary given the processes and procedures utilized by Wells Fargo, Wells Fargo's Default Services Provider, and the Network Attorney's which limited any attorney's fees charged for foreclosure related legal work to the State Maximums as published by the GSE's as their "allowable" fees and costs for legal work related to a foreclosure. This includes a discussion of the records maintained by the system of record ("MSP") in the DDCH screen and the quality control process Wells Fargo has employed since at least 2008

to verify that any invoice received from an attorney's office is authorized under the agreement that Wells Fargo maintained with its default services provider and does not exceed the maximum "allowable" fee in any given case.

These topics all relate to the nature of the software error, which was already covered by prior Rule 30(b)(6) testimony in *Hernandez*. Obi Decl., Ex. 5 (*Hernandez* Notice of 30(b)(6) Deposition). Specifically, on August 2, 2019, senior Wells Fargo executive Carmen Bell testified about the use of the State Attorney's Fee Matrix (along with a host of other topics) as a Rule 30(b)(6) deponent in *Hernandez*. *See* Obi Decl, Ex. 6, Excerpts of C. Bell Tr. at 31:8-22; 73:4-21; 130:7-131:12 (discussing the process for using attorneys' fees and the use of a state fee matrix); 164:2-165:9. Because Plaintiffs agreed that they would not seek testimony on Rule 30(b)(6) topics already covered in *Hernandez*, these topics are improper. Obi Decl. ¶ 1.

Furthermore, the existence, nature, and extent of the software error is not in dispute in this case. Wells Fargo has admitted the error. Thus, there is no need for further discovery into Wells Fargo's entire "mortgage system of record" and the software that contained the error. Wells Fargo should not have to educate a witness, especially at this late stage, on what essentially amounts to 13 topics on a matter that is not in dispute. Topics 7 (and its 11 subparts), 8, and 9 should be stricken.

    **c.**    <u>**Topics 10-16, 20**</u>

**Topic 10:** The timeline of the Foreclosure, Deutsche Bank v. Garcias, et al., Cook County Case No. 2009-CH-00855 vis-à-vis Wells Fargo's timeline for negotiating and agreeing to the resolution of the 2011 consent decree executed by Wells Fargo on March 31, 2011.

**Topic 11:** A discussion of the timeline of Wells Fargo's 2011 consent decree with the OCC. This includes a discussion of the date that Wells Fargo's management agreed to enter negotiations for a consent decree and the date Wells Fargo's management made the decision to agree to the consent decree executed on March 31, 2011.

**Topic 12:** A discussion of the obligations, duties, and timeline set out in the 2011 consent decree for Wells Fargo to take certain actions.

**Topic 13:** A discussion of Wells Fargo's efforts to comply with the 2011 consent decree.

9

**Topic 14:** A discussion of Wells Fargo's decision making with respect to continuing ongoing foreclosures vis-à-vis Wells Fargo's decision to enter the 2011 consent decree.

**Topic 15:** A discussion of the consent decrees and monetary penalties that followed the 2011 consent decree with the OCC. This topic is limited to the consent decrees that directly followed and are causally related to the original 2011 OCC consent decree on mortgage foreclosure practices.

**Topic 16:** A discussion of relevant portions of the April 4, 2012 Consent Judgment (with Wells Fargo) entered in the matter, United States of America, et al., v. Bank of America Corp., et al., In the United States District Court for the District of Columbia, Case No. 12-cv-0361, and the relevant allegations contained in the March 12, 2012 Complaint filed in that matter.

**Topic 20**: A discussion of Wells Fargo's history of regulatory consent decrees and fines, and monetary penalties since 2009 other than those arising from the 2011 consent decree and its following orders discussed in topic 15 above.

Most of these topics are improper because the 2011 Consent Order with the OCC, the 2011 Consent Order with the Federal Reserve, and Wells Fargo's compliance therewith were already covered by Rule 30(b)(6) testimony in *Hernandez*, and Plaintiffs are seeking to re-tread this ground in violation of the parties' agreement. *See* Obi Decl., Ex. 5 at 3 (*Hernandez* Topic 6: "Actions Wells Fargo took to ensure compliance with the two 2011 consent orders only to the extent it relates to loan modifications and to whether an error existed in Wells Fargo's loan modification software."); Ex. 6 at 87:6-21; 100:4-101:9; 106:5-107:5; 244:18-264:12. *See* Topics 10-14.

The topics that do not fall within the *Hernandez* 30(b)(6) testimony are not identified with reasonable particularity, are overbroad, and not proportionate to the needs of this case. *See* Topics 15, 16, 20. For example, it would be overly burdensome in light of the needs of this case (not to mention this late stage of discovery) to require Wells Fargo to educate a witness to "discuss[] [its] history of regulatory consent decrees and fines, and monetary penalties since 2009 other than those arising from the 2011 consent decree and its following orders," which Topic 20 demands. These topics are in violation of Rule 30(b)(6)'s requirements and the parties' agreement and should be stricken.

Moreover, Topics 13, 14, 15, and 20 are objectionable to the extent they seek testimony on Wells Fargo's communications with its regulators that would be protected by the Bank Examination Privilege. *See In re Bank One Sec. Litig., First Chicago S'holder Claim*s, 209 F.R.D. 418, 426 (N.D. Ill. 2002) ("The bank examination privilege provides ... protection for the banking industry ..."); *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Rsrv. Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992) ("courts have long recognized that the report of a bank examiner is protected by a qualified privilege") (collecting cases).

### d. Topics 17, 19

**Topic 17:** A discussion of relevant documents produced from the Hernandez litigation that were not covered in prior testimony by Wells Fargo. This currently includes: Hernandez 00001339-1340, Hernandez 00012186, 00014848-00014888, 00066783, 00066929-66931, 00068070-68072, 00071717-00071718, 00075856, 00075858, 00075860, 00075898.

**Topic 19:** A discussion of Wells Fargo's reasoning and approach to remediation of consumers harmed by Wells Fargo's conduct.

Topic 17 is improper on its face as it seeks a "discussion" concerning "relevant" documents Plaintiffs have "currently" identified, but without explanation of their relevance or the subject matter on which Plaintiffs seek testimony. Moreover, the identified documents are primarily drafts of remediation letters sent to impacted customers and other documents related to the remediation program. Wells Fargo's corporate witness in *Hernandez* already testified extensively about the customer remediation efforts and Plaintiffs should not be permitted to renege on their agreement. Obi Decl., Ex. 6 at 36:19-37:24; 50:2-51:12; 98:5-12; 115:9-116:10; 136:7-20; *see also* Obi Decl. Ex. 5 (*Hernandez* Topic 8: "Wells Fargo Bank's investigation of and search for a solution regarding the software error disclosed in August and November 2018 in its Net Present Value software that Wells Fargo Bank used with respect to class members that caused the faulty calculations of class members' eligibility for a loan modification pursuant to the requirements of

11

government- sponsored enterprises, the Federal Housing Administration (FHA), and the U.S. Department of Treasury's Home Affordable Modification Program (HAMP)" ); *Hernandez* Topic 4: "How Wells Fargo Bank identified the customers affected by each of the errors identified in response to Topic 2, and the documents that Wells Fargo Bank relied on to identify each affected customer."). Given Plaintiffs' agreement not to duplicate prior Rule 30(b)(6) testimony provided in *Hernandez*, Topics 17 and 19 are improper and should be stricken.

    e.    **Topic 22**

**Topic 22:** A discussion of the relevant HAMP guidelines in place at the time Wells Fargo serviced the Garcias' mortgage loan account and Wells Fargo's obligations arising from its agreement to participate in HAMP.

The outer bounds of Rule 30(b)(6) is limited by Rule 26, which states "[p]arties may obtain discovery regarding any nonprivileged matter that *is relevant to any party's claim or defense and proportional to the needs of the case….*" Fed. R. Civ. P. 26(b)(1) (emphasis added). As to Topic 22, Wells Fargo has already admitted that the automated software it used to evaluate requests for trial payment plans under HAMP contained a calculation error that led Wells Fargo to believe Plaintiffs did not qualify when it declined their application. In other words, Wells Fargo has admitted that Plaintiffs should have been approved for a HAMP trial payment plan. Thus, the "relevant HAMP guidelines in place at the time Wells Fargo serviced the Garcias' mortgage loan" are not relevant to the claims or defenses. Nor is this broad topic—which covers multiple years and does not identify any guidelines with particularity—proportional to the needs of this case. Wells Fargo should not be required to prepare a witness on this Topic.

    f.    **Topics 21, 23, and 24**

**Topic 21**: "A discussion of the total amount paid by Wells Fargo to resolve the *Hernandez* litigation including Wells Fargo's costs of defense."

**Topic 23**: "How large would a punitive damages verdict need to be to bankrupt Wells Fargo?"

12

**Topic 24**: "A discussion of how much net interest income Wells Fargo earns on a daily basis according to Wells Fargo's most recent financial filings with the SEC."

These topics are improper and Wells Fargo should not have to educate a witness to testify to them, particularly when more appropriate means exist to establish Wells Fargo's ability to satisfy a punitive damages award. Information about Wells Fargo's wealth is publicly available and it is willing to stipulate to its ability to satisfy a punitive damages award. Further, Topic 21 is wholly irrelevant to the claims and defenses, and Topic 23, in particular, which seeks testimony regarding "[h]ow large [] a punitive damages verdict need[s] to be to bankrupt Wells Fargo" is harassing, and is intended to annoy and embarrass. This is precisely what Rule 26(c) seeks to prevent. *See* Fed. R. Civ. P. 26(c)(1) (authorizing the Court for good cause to issue a protective order precluding discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). The Court should grant Wells Fargo's Motion and strike Topics 21, 23, 24 in Plaintiffs' Notice.

## IV.    Conclusion

For the foregoing reasons, Wells Fargo Bank requests that the Court grant its Motion for a Protective Order under Federal Rule of Civil Procedure 26(c) and order that Wells Fargo is relieved from producing witnesses and providing testimony about the topics discussed above.

Dated: May 12, 2022                                  Respectfully submitted,


   */s/ Shawn R. Obi*

Shawn R. Obi (*pro hac vice*)
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213-615-1700

13

Fax: 213-615-1750
Email: SObi@winston.com

Christopher Parker
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone: 312-558-8085
Fax: 312-558-5700
Email: cparker@winston.com

Angela A. Smedley (*pro hac vice*)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Phone: 212-294-5348
Fax: 212-294-4700
Email: asmedley@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

## **RULE 26(C)(1) AND LOCAL RULE 37.2 CERTIFICATION**

The undersigned certifies that counsel for Wells Fargo conferred with Plaintiffs' counsel concerning Plaintiffs' Rule 30(b)(6) Notice of Deposition subpoena via email, as well as during a telephone conference among counsel on May 3, 2022 (whose participants included Angela A. Smedley, Shawn Obi, and DaWanna McCray for Defendant Wells Fargo, and Nick Wooten for Plaintiffs), that counsel attempted to negotiate a resolution of this issue in good faith, and that the parties were unable to reach an accord.

By: /s/ *Shawn R. Obi*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of May 2022, the foregoing was served by email on the following parties of record:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

/s/ *Shawn R. Obi*