IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO GARCIA; and JULIA GARCIA, <br><br> Plaintiffs <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No. 1:20-cv-02402 <br><br> Hon. Rebecca R. Pallmeyer <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT WELLS FARGO BANK, N.A.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF
PERRY HILZENDEGER**

This case concerns the handling of Plaintiffs' mortgage loan secured by a home in LaGrange Park, Illinois. Perry Hilzendeger—a former high-level executive at Wells Fargo—has no knowledge of Plaintiffs, Plaintiffs' mortgage loan, or Plaintiffs' alleged emotional and physical injuries. Nor was he personally involved in any of the key events at issue in this case. Instead, the extensive discovery that has been taken in suits that covered the same software error at issue here—*in which Mr. Hilzendeger's deposition was never sought*—confirms that Mr. Hilzendeger possesses no meaningful information regarding Plaintiffs' claims. Certainly, he does not possess any unique information that cannot be obtained from other knowledgeable witnesses who have already been deposed, or who will be deposed in this case.

Because Mr. Hilzendeger no longer works at Wells Fargo and is not a relevant witness, subjecting him to a deposition would be unduly burdensome and improper under even ordinary discovery principles. Here, however, a higher standard applies. Because Mr. Hilzendeger was an "apex," or high-ranking executive, employed at the highest levels of Wells Fargo, his deposition

1

would be proper only if he possesses (1) relevant and unique information of the matter in dispute that (2) could not be obtained from other sources. Mr. Hilzendeger's accompanying declaration, and the well-developed record here, show that neither requirement is satisfied. The Parties have conferred telephonically in compliance with Local Rule 37.2. The Court should therefore enter a protective order barring Mr. Hilzendeger's deposition under Rule 26.

I.   BACKGROUND

   A.   Mr. Hilzendeger

Mr. Hilzendeger held various high-level roles at Wells Fargo. He was Senior Vice President of Real Estate Servicing from 2007 to 2018, where he oversaw Wells Fargo's servicing operations for home mortgage and home equity loans, and Senior Vice President for Default Services from 2009 to 2018, where he led teams dedicated to helping customers prevent and resolve delinquencies. From 2018 to 2020, Mr. Hilzendeger was the Head of Retail Operations, where he oversaw Wells Fargo's mortgage and home equity origination functions, including sales, underwriting, and fulfillment. Mr. Hilzendeger never interacted with Plaintiffs and has no knowledge of their loan or circumstances. He left Wells Fargo in 2020. On April 21, 2022, Plaintiffs served a deposition notice for Mr. Hilzendeger and indicated their intent to subpoena him for deposition.

   B.   Case Background

In 2002, Plaintiffs borrowed money from Wells Fargo to buy a house in LaGrange Park, Illinois for more than $200,000. Complaint ¶¶ 12, 62. They spent another $40,000 renovating the property. *Id*. ¶ 67. In 2006, Plaintiffs decided to refinance, and they took out an adjustable-rate mortgage. *Id*. ¶ 68. Unfortunately, that decision was particularly ill-timed: during the Great Recession, in 2008, the required monthly payment "increased drastically," Mr. Garcia's business failed, and as a result Plaintiffs stopped paying the mortgage. *Id*. ¶¶ 70-73.

Plaintiffs asked Wells Fargo to lower the mortgage payments. *Id*. ¶ 75. In November 2008, Wells Fargo denied their request for a repayment agreement because they failed to make the repayment plan's required payments. *Id*. Ex. A at 2. A year later, in 2009, Wells Fargo offered Plaintiffs a forbearance agreement, but Plaintiffs failed to make the requirement forbearance payments. Declaration of Stacie C. Knight ("Knight Decl."), Ex. A. Finally, in 2010, Plaintiffs were still in the house, Wells Fargo declined to offer them a loan modification under the federal government's Home Affordable Modification Program. Compl. Ex. A at 3. Under HAMP, a qualifying borrower is put on a trial payment plan, and if the trial payments are made on time, the borrower can receive a permanent loan modification. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 557 (7th Cir. 2012). Plaintiffs do not allege that they would have been able to make the trial payments that HAMP would have required. Nor do they allege that they would have been able to make the required payments under a permanently modified loan.

Wells Fargo later discovered that the automated software it used to evaluate requests for trial payment plans under HAMP contained a calculation error that led Wells Fargo to believe Plaintiffs did not qualify when it declined their application in 2010. Complaint ¶¶ 3, 98 & Ex. B at 2. Wells Fargo sent Plaintiffs a letter that admitted the mistake, stated Wells Fargo's desire to make things right, enclosed a payment, offered to mediate, and informed them about a class action case, *Hernandez v. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.). *Id*. Ex. B at 2. Wells Fargo eventually sent Plaintiffs a total of $24,500 in payments, but Plaintiffs filed this lawsuit, alleging consumer fraud.

  **C.** **Discovery History**

This is a copycat lawsuit. Thirty-six paragraphs of the complaint's allegations (paragraphs 23-33 and 37-61) are lifted, verbatim or nearly so, from the class action complaints in *Hernandez* and another case, *West v. Wells Fargo* (No. 19-cv-286, E.D. Ky.). This case was filed only after

3

the parties in *Hernandez* announced a class settlement that included all borrowers who experienced a foreclosure. In *Hernandez*, the parties conducted extensive discovery regarding the software error that impacted Plaintiffs' loan modification application. Wells Fargo produced approximately 11,000 documents (including the named plaintiffs' loan files and related documents), and the plaintiffs conducted numerous depositions of current and former Wells Fargo employees, including a comprehensive Rule 30(b)(6) deposition. Wells Fargo has agreed that Plaintiffs may use deposition transcripts from *Hernandez,* as well as documents and exhibits produced by Wells Fargo in that case. In exchange for that agreement, Plaintiffs agreed that they would not seek to re-depose the same witnesses or seek testimony on any topic that was covered by prior Rule 30(b)(6) testimony in *Hernandez*.

Plaintiffs apparently were satisfied with the information they obtained via that agreement. On March 7, 2022, Plaintiffs filed a Motion to Set Case for Trial, representing to the Court that they could "be ready for trial as early as April 12, 2022." Dkt. 72, ¶ 20. At the March 8, 2022 status conference, Plaintiffs' counsel reiterated that he "could be ready for trial very quickly" and "[w]e don't really feel like we need a lot else." Knight Decl. Ex. C, 3:20-23. To that end, Plaintiffs' counsel indicated he was considering "the possibility of taking **one** other employee deposition that did not get taken in [*Hernandez*]," "[b]ut other than that, we pretty much could be ready [for trial] very quickly." *Id*., 3:24-4:1.

Contrary to those representations, on April 21, 2022, Plaintiffs served seven deposition notices on Wells Fargo. Five of those notices seek depositions of former Wells Fargo employees: (1) Wells Fargo's former CEOs, John Stumpf and Timothy Sloan; (2) Mr. Hilzendeger; (3) Brett Potter, another individual having no involvement with Plaintiffs' loan; and (4) Ben Windust, a former employee whose electronic signature appears on certain modification denial letters to

4

Plaintiffs. The notices also included a Rule 30(b)(6) notice, which includes 31 topics, the vast majority of which seek testimony on topics that were covered by prior Rule 30(b)(6) testimony in *Hernandez*, in stark violation of Plaintiffs' agreement not to seek any such deposition testimony.[1]

## II. ARGUMENT

### A. Apex depositions are proper only in very limited circumstances.

Rule 26 limits discovery to matters that are "relevant" to a party's claims or defenses, Fed. R. Civ. P. 26(b)(1), and obligates courts, on motion, to "limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," "including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).

It is unduly burdensome to subject to a deposition a witness who possesses no relevant information. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) (granting motion to quash deposition subpoena where the information the non-party was thought to possess had "nothing to do with the defendant's charged wrongdoing"). The concern of undue burden is particularly pronounced, and additional protections are provided, where the deponent is a high-level executive. Because "high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts," courts often bar depositions of them even absent the required showing of good cause. *Todd v. Ocwen Loan Servicing, Inc.*, 2019 WL 8272621, at *2 (S.D. Ind. Dec. 13, 2019).

---

[1] Wells Fargo is separately moving for protective orders regarding its former CEOs, as well as Plaintiffs' overly broad, harassing, and improper Rule 30(b)(6) notice.

Accordingly, courts routinely exercise their authority to issue protective orders under Rule 26 precluding such depositions. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (affirming protective order barring the deposition of a "high-ranking executive in a multinational corporation"); *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2–3 (N.D. Ill. Dec. 7, 2017) (granting protective order barring the deposition of "Chairman of the Board of Management").

Consistent with these rules, courts preclude the deposition of apex individuals unless (1) the individual has some unique or superior, non-cumulative, first-hand knowledge of the facts at issue, and (2) the party seeking the deposition cannot obtain the discovery sought through less intrusive methods, such as through written discovery or by deposing lower-ranking employees. *See Nucap Indus. Inc.*, 2017 WL 6059770, at *2; *Patterson*, 281 F.3d at 681. These standards apply equally to former executives. *Lee v. City of Chicago*, 2021 WL 2399999, at *3 (N.D. Ill. June 11, 2021) ("[I]t is well-settled that [t]he apex doctrine is no less applicable to former officials than to current officials."); *Todd*, 2019 WL 8272621, at *3 (applying apex doctrine to request to depose former chief executive officer and granting protective order).

**B.     Mr. Hilzendeger is not a witness with unique knowledge that cannot be obtained from other sources.**

Plaintiffs cannot show that Mr. Hilzendeger has unique knowledge that cannot be obtained from other witnesses. The Court should thus prohibit his deposition from going forward.

Wells Fargo understands from Plaintiffs' initial disclosures that their interest in deposing Mr. Hilzendeger stems from his alleged involvement "in the investigation of Wells Fargo's servicing issues" and their belief that he "has information concerning Wells Fargo's HPA Tool errors and claims as detailed in the Complaint." Knight Decl., Ex. B. However, that generic description does not show that Mr. Hilzendeger has "***unique***" knowledge of the specific matter in

dispute. *Lee*, 2021 WL 2399999, at *2. Indeed, Plaintiffs have the transcripts of not one, but seven Wells Fargo witnesses in *Hernandez*, all of whom provided testimony regarding the "investigation of Wells Fargo's [alleged] servicing issues" and "information concerning Wells Fargo's HPA Tool errors and claims as detailed in the Complaint." That deposition testimony includes the Rule 30(b)(6) testimony of another senior executive, Carmen Bell, Senior Vice President, Customer Contact and Default Decisioning. Knight Decl. ¶ 5. Unlike Mr. Hilzendeger, Ms. Bell is the Wells Fargo employee who actually oversaw and has personal knowledge of the key events at issue in this case. *Id*. Ms. Bell testified for seven hours regarding the specifics of the software error, the initial discovery of that error in 2013 and subsequent efforts to determine customer impact, the re-discovery of the error in 2018, and Wells Fargo's resulting remediation plan. *Id*. Thus, no unique knowledge by Mr. Hilzendeger is, or can, be shown.

To the extent that Plaintiffs seek Mr. Hilzendeger's deposition on the basis that his name appears on documents mentioning the software error at issue here, such references do not suffice to show "unique, non-cumulative, first-hand relevant knowledge." *Nucap Indus. Inc.*, 2017 WL 6059770, at *2-3 (mere appearance of executive's name in documents did not show that executive was "uniquely 'hands-on'"). Again, Mr. Hilzendeger has no knowledge of this particular mortgage loan, the Plaintiffs, or their alleged emotional and physical injuries. Moreover, as a high-level executive, Mr. Hilzendeger was not personally involved in the discovery of the software error, the identification of affected customers, or the development of the resulting remediation plan. Instead, as with any other high-level executive, Mr. Hilzendeger's direct reports necessarily kept him informed of these issues, but, having no personal involvement, Mr. Hilzendeger cannot offer any "unique" testimony that Plaintiffs cannot obtain (or, in fact, have not already obtained), from other witnesses, including, as shown above, the testimony of senior executive Carmen Bell. Indeed,

7

because this case is not a nationwide collective action, but a single-plaintiff consumer protection matter regarding the handling of Mr. and Mrs. Garcia's mortgage loan, deposing a high-level executive like Mr. Hilzendeger is neither relevant nor proportional.[2] *Todd*, 2019 WL 8272621, at *3 ("This is not a nationwide collective action; if it were, deposing an executive may potentially be relevant, proportional, and permissible. As it stands today, however, deposing [a former high-level executive] is not proportional to the needs of the case.").

As the foregoing demonstrates, Mr. Hilzendeger does not have any information that Plaintiffs have not already obtained via the seven employee deposition transcripts from the *Hernandez* case. Thus, even under the ordinary standards applied to deposition testimony, his lack of knowledge warrants a protective order. *See Uppal*, 124 F. Supp. 3d at 815 (quashing deposition subpoena to witness who possessed some information about plaintiff but nothing relevant to plaintiff's claims against defendant); *Aleshire v. Harris*, *N.A.*, 2010 WL 2720757, at *2 (N.D. Ill. July 8, 2010) (quashing deposition subpoena based on lack of relevance). But here, the grounds for a protective order are even stronger because Mr. Hilzendeger is a former apex-level executive who does not possess unique knowledge that is not available from other sources. *See Nucap Indus. Inc.*, 2017 WL 6059770, at *2 (granting protective order where "[the apex witness] was not involved with, or ha[d] knowledge regarding, the central issues in the case"); *Celerity*, 2007 WL 205067, at *5 (granting protective order where there was "no indication" that apex witnesses "possess firsthand and non-repetitive knowledge regarding issues relevant to this lawsuit"). Because no unique knowledge is, or can be, shown, the Court should prohibit Plaintiffs from deposing Mr. Hilzendeger.

---

[2] Plaintiffs had the opportunity to participate in a class action related to these issues, but they declined.

### III. CONCLUSION

Based on the foregoing, Wells Fargo and Mr. Hilzendeger respectfully request that the Court enter a protective order precluding Plaintiffs from deposing Mr. Hilzendeger.

Dated: May 12, 2022

Respectfully submitted,

/s/ Shawn R. Obi

Shawn R. Obi (*pro hac vice*)
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213-615-1700
Fax: 213-615-1750
Email: SObi@winston.com

Christopher Parker
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone: 312-558-8085
Fax: 312-558-5700
Email: cparker@winston.com

Angela A. Smedley (*pro hac vice*)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Phone: 212-294-5348
Fax: 212-294-4700
Email: asmedley@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of May 2022, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system, upon the following:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　　　/s/ *Shawn R. Obi*