UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO GARCIA and JULIA GARCIA, ) ) Plaintiffs, ) ) vs. ) ) WELLS FARGO BANK, N.A., ) ) Defendant. ) | Case No. 1:20-cv-02402 Honorable Rebecca R. Pallmeyer **ORAL ARGUMENT REQUESTED** |

**DEFENDANT WELLS FARGO BANK, N.A.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER PRECLUDING
DEPOSITIONS OF ITS FORMER CHIEF EXECUTIVE OFFICERS**

Despite having deposition testimony from a senior Wells Fargo executive and other Wells Fargo employees who were directly involved with the issues in this case, Plaintiffs are now demanding the depositions of Wells Fargo's former highest-ranking executives, former Chief Executive Officers John G. Stumpf and Timothy J. Sloan. Those former CEOs have no knowledge of Plaintiffs or their claims, were not involved in the key events at issue in this case, and have nothing substantive to offer.

Under these circumstances, federal courts throughout the country explicitly protect high-ranking corporate executives from such abuses of the discovery process. Specifically, due to Mr. Stumpf and Mr. Sloan's former "apex" level positions at Wells Fargo, Plaintiffs are not entitled to their depositions unless those former CEOs have unique, non-cumulative, first-hand knowledge of the relevant facts that cannot be obtained from lower-level employees or other sources. Because Plaintiffs cannot make such a showing with respect to Wells Fargo's former CEOs, the purpose of those depositions can only be to annoy and harass. The Parties have conferred telephonically in compliance with Local Rule 37.2. Accordingly, good cause exists for

this Court to grant the requested protective order precluding Plaintiffs from deposing Mr. Stumpf and Mr. Sloan.

I.     **FACTUAL BACKGROUND**

    A.     **Mr. Stumpf and Mr. Sloan**

Mr. Stumpf was named Wells Fargo's President in 2005, was elected to its Board of Directors in June 2006, and was named CEO in June 2007. He became Chairman in January 2010. Mr. Stumpf resigned from Wells Fargo on October 12, 2016. He was succeeded by Mr. Sloan, who served as Wells Fargo's CEO until March 2019. Mr. Sloan had previously been Wells Fargo's Chief Operating Officer and Chief Financial Officer.

On April 21, 2022, a mere two weeks before the close of discovery,[1] Plaintiffs served deposition notices for Mr. Stumpf and Mr. Sloan. That same day, Plaintiffs served their Fourth Supplemental Rule 26(a) Disclosures, which identified—for the very first time in this 2+ years long litigation—Mr. Stumpf and Mr. Sloan as persons Plaintiffs believe are likely to have discoverable information. *See* Declaration of Stacie C. Knight ("Knight Decl."), Ex. A. Plaintiffs cited Mr. Sloan's March 2019 testimony before the Committee on Financial Services for the U.S. House of Representatives, and Mr. Stumpf's signature on two consent orders between Wells Fargo and the OCC. *See id*. To date, that is all Plaintiffs have provided in support of deposing Mr. Stumpf and Mr. Sloan.

This case concerns the handling of Plaintiffs' mortgage loan secured by a home in LaGrange Park, Illinois. After Plaintiff Eduardo Garcia's business failed during the Great Recession, Plaintiffs stopped making their mortgage payments and asked Wells Fargo to lower their payments. Complaint ¶¶ 70-75.

---

[1] The Court has since extended the fact discovery period to May 31, 2022.

2

In November 2008, Wells Fargo denied Plaintiffs' request for a repayment agreement because they failed to make the repayment plan's required payments. A year later, in 2009, Wells Fargo offered Plaintiffs a forbearance agreement, but Plaintiffs failed to make the requirement forbearance payments. Knight Decl., Ex. E. Finally, in 2010, Plaintiffs were still in the house, Wells Fargo declined to offer them a trial payment plan under the federal government's Home Affordable Modification Program. Under HAMP, a qualifying borrower is put on a trial payment plan, and if the trial payments are made on time, the borrower can receive a permanent loan modification. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 557 (7th Cir. 2012). Plaintiffs do not allege that they would have been able to make the trial payments that HAMP would have required. Nor do they allege that they would have been able to make the required payments under a permanently modified loan.

As Wells Fargo publicly disclosed in 2018, it later discovered that the automated software it used to evaluate requests for trial payment plans under HAMP contained a calculation error that led Wells Fargo to believe Plaintiffs did not qualify when it declined their application in 2010. Wells Fargo sent Plaintiffs a letter that admitted the mistake, stated Wells Fargo's desire to make things right, enclosed a payment, offered to mediate, and informed them about a class action case, *Hernandez v. Wells Fargo* (No. 3:18-cv-7354-WHA, N.D. Cal.). Wells Fargo eventually sent Plaintiffs a total of $24,500 in payments, but Plaintiffs filed this lawsuit, alleging consumer fraud.

Mr. Stumpf and Mr. Sloan—formerly the highest-ranking executives at Wells Fargo— have no personal knowledge of the relevant facts in this case. They do not know anything about Plaintiffs, their loan, or this lawsuit. They were not involved in the discovery of the software

error, the identification of affected customers, or the development of the resulting remediation plan.

Mr. Stumpf's name appears on a total of five produced documents: three organization charts and two sets of meeting minutes. Knight Decl., ¶¶ 6-7. The meetings were to discuss Wells Fargo's remediation plan. *Id*. ¶ 7. Mr. Stumpf did not attend. *Id*. Instead, the meeting attendants discussed whether it would be appropriate for Mr. Stumpf to be the signatory on customer letters related to the remediation (which, ultimately, he was not). *Id*. None of the produced documents relates to Wells Fargo's consent orders with the OCC, which is the subject on which Plaintiffs apparently wish to depose Mr. Stumpf. *See id*.; *see also id*., Ex. A.

Mr. Sloan's name appears on 21 produced documents. Knight Decl. ¶ 6. Of those 21 documents, there is a **single** email chain relating to Mr. Sloan's testimony before the Committee on Financial Services for the U.S. House of Representatives, which is the topic about which Plaintiffs apparently wish to question Mr. Sloan. *See id*. ¶ 8 and Ex. A.[2] Mr. Sloan was not included on that email chain. Knight Decl. ¶ 8. Instead, another Wells Fargo senior executive, Carmen Bell, who was deposed in *Hernandez*, forwarded a fact sheet regarding the remediation plan to Wells Fargo's corporate communications team for potential use in preparing Mr. Sloan for his testimony. *Id*. There is no unique information in the fact sheet. *Id*.

---

[2] The remaining documents are (1) three copies of a generic, company-wide email blast regarding Wells Fargo's August 3, 2018 10-Q filing; (2) minutes from the July 20, 2018 meeting of Wells Fargo's Regulatory Compliance Oversight Committee, where other attendees gave an update on Wells Fargo's remediation plan; (3) minutes from the August 23, 2018 meeting of Wells Fargo's Regulatory Compliance Oversight Committee, where Mr. Sloan gave a general description of the remediation plan; (4) an email from Mr. Sloan to former Wells Fargo Board member Betsy Duke forwarding a copy of an attorney-client privileged memo and two PowerPoint slides that were exhibits at Carmen Bell's Rule 30(b)(6) deposition and that were produced to Plaintiffs in this case; and (5) multiple copies of two email chains that include attorney-client privileged emails sent by or to Mr. Sloan, all relating to the Wells Fargo's 10-Q filings. Knight Decl. ¶ 8. The contents of those privileged emails have been withheld, and Mr. Sloan accordingly cannot provide testimony on their contents. *Id*.

B.     **Prior Discovery in *Hernandez***

As the Court knows, this is a copycat lawsuit. Thirty-six paragraphs of the complaint's allegations (paragraphs 23-33 and 37-61) are lifted, verbatim or nearly so, from the class action complaints in *Hernandez* and another case, *West v. Wells Fargo* (No. 19-cv-286, E.D. Ky.). This case was filed only after the parties in *Hernandez* announced a class settlement that included all borrowers who experienced a foreclosure. In *Hernandez*, the parties conducted extensive discovery regarding the software error that impacted Plaintiffs' loan modification application. Wells Fargo produced thousands of documents, and the plaintiffs conducted numerous depositions of current and former Wells Fargo employees—including a comprehensive Rule 30(b)(6) deposition of a senior Wells Fargo executive, Carmen Bell. Every employee deposed in *Hernandez* was either (1) directly involved in the initial discovery of the software error in 2013 and the resulting, albeit mistaken, conclusion that no customers had been impacted by the error; or (2) the re-discovery of the error in 2018, Wells Fargo's efforts to determine customer impact, and the resulting remediation plan. Because of their intimate, day-to-day involvement, those individuals provide Plaintiffs with the best opportunity to explore the relevant facts and issues. And, with the deposition of senior executive Carmen Bell, Plaintiffs have received relevant testimony from the standpoint of Wells Fargo's senior management.

Wells Fargo has agreed that Plaintiffs may use deposition transcripts from *Hernandez,* as well as documents and exhibits produced by Wells Fargo in that case. In exchange for that agreement, Plaintiffs agreed that they would not seek to re-depose the same witnesses or seek testimony on any topic that was covered by prior Rule 30(b)(6) testimony in *Hernandez*.

Apparently satisfied with the information they obtained via that agreement, on March 7, 2022, Plaintiffs filed a Motion to Set Case for Trial, representing to the Court that they could "be

ready for trial as early as April 12, 2022." Dkt. 72, ¶ 20. At the March 8, 2022 status conference, Plaintiffs' counsel reiterated that he "could be ready for trial very quickly" and "[w]e don't really feel like we need a lot else." Knight Decl. Ex. F, 3:20-23. To that end, Plaintiffs' counsel indicated he was considering "the possibility of taking *one* other employee deposition that did not get taken in [*Hernandez*]," "[b]ut other than that, we pretty much could be ready [for trial] very quickly." *Id*., 3:24-4:1.

Contrary to those representations, on April 21, 2022, Plaintiffs served seven deposition notices on Wells Fargo, including notices for Mr. Stumpf and Mr. Sloan. Again, that was the first time in 2+ years that Plaintiffs identified Mr. Stumpf and Mr. Sloan as persons they believe have discoverable information.

## II.  ARGUMENT

### A.  Apex depositions are proper only in very limited circumstances.

It is well-settled that depositions of high-ranking corporate executives—often called "apex" depositions—pose a distinct risk of abuse that calls for special vigilance under Rule 26(b)(2)(C). *See, e.g., Todd v. Ocwen Loan Servicing, Inc*., 2019 WL 8272621, at *2 (S.D. Ind. Dec. 13, 2019) (noting that "high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts"). The potential for abuse is obvious: not only are high-ranking executives less likely to have day-to-day familiarity with relevant facts than lower-level employees, but high-ranking executives are, within the corporate framework, "singularly unique and important individual[s] who can be easily subjected to unwarranted harassment and abuse." *Mulvey v. Chrysler Corp*., 106 F.R.D. 364, 366 (D.R.I. 1985) (precluding deposition of Chrysler chairman Lee Iacocca).

Given the potential for harassment and abuse, courts routinely exercise their authority to issue protective orders under Rule 26 precluding apex depositions. *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (affirming protective order barring the deposition of a "high-ranking executive in a multinational corporation"); *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2–3 (N.D. Ill. Dec. 7, 2017) (granting protective order barring the deposition of "Chairman of the Board of Management"). Indeed, as this Court recently reiterated,

> When such "apex" depositions are sought, courts may protect high-level executives from being deposed when ***any*** of four circumstances exist: (1) the [executive] has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the [executive's] other duties.

*Little v. JB Pritzker for Governor*, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) (quotations and citation omitted; emphasis added). Because Mr. Stump and Mr. Sloan have no unique information relevant to this litigation, and because any information Plaintiffs seek in attempting to depose them is readily available through other means, a protective order precluding their depositions is warranted.

**B.   Mr. Stumpf and Mr. Sloan do not have any unique, personal knowledge of the matters in dispute.**

Mr. Stumpf and Mr. Sloan do not have any unique, personal knowledge of the matters in dispute. The Court should thus prohibit Plaintiffs from deposing them.

Wells Fargo understands from Plaintiffs' initial disclosures that their interest in deposing Mr. Stumpf is because he "executed [Wells Fargo's] 2011 Consent Order [with the OCC] and 2013 Amendment thereto, and the 2015 Consent Order amending the 2011 Consent Order and 2013 Amendment to the 2011 Consent Order." Knight Decl., Ex. A. However, Mr. Stump's

7

"execution" of those documents is not a matter in dispute: either he signed the consent orders or he did not. He did—*along with every other member of Wells Fargo's Board of Directors at the time*. *See* Knight Decl., Ex. B. Because he was not the only signatory, it is patently obvious that Mr. Stumpf does not have unique, personal knowledge regarding the "execution" of those documents. To the extent Plaintiffs wish to question Mr. Stumpf on Wells Fargo's obligations under those consent orders and its efforts to comply therewith, those matters were covered in *Hernandez* during the Rule 30(b)(6) deposition of senior executive Carmen Bell. *See* Knight Decl., Ex. C. Thus, not only does Mr. Stumpf not have any unique, personal knowledge about those topics, but Plaintiffs' attempt to seek further testimony on those issues is a breach of their agreement not to seek testimony on any topic that was covered by prior Rule 30(b)(6) testimony in *Hernandez*.

Plaintiffs' effort to depose Mr. Sloan fares no better. According to their initial disclosures:

> Mr. Sloan testified before the Committee on Financial Services, U.S. House of Representatives, "stating that he was familiar with the internal investigation that revealed Wells Fargo had 'erroneously denied or did not offer a loan modification to 870 customers due to an underwriting software error" and that "[T]he first thing [Wells Fargo has] done is we have reached out to each one of [the customers], we sent them a $15,000 check, which is 2-1/2 times the standard that was set in the mortgage servicing settlement, and then we are asking them to come to see us and if there was additional harm that was done to them, we will make it right....what we are also doing is ask them to come in and see us and tell us what additional harm, if any, we caused."

Knight Decl., Ex. A. However, that very same information was covered in the Rule 30(b)(6) deposition of Carmen Bell, as well as documents produced to Plaintiffs in this case, which indicate that (1) 870 customers were impacted by the software error; (2) Wells Fargo developed a remediation plan to reach impacted customers; (3) remediation payment amounts were calculated using the National Mortgage Settlement as a starting point, and "recognizing the

8

housing market had changed significant[ly] since 2012, an accelerant was added to the … payouts," with $15,000 going to customers who experienced a completed foreclosure, short sale, or deed-in-lieu of foreclosure (vs. $6,000 under the National Mortgage Settlement); and (4) mediation was available to customers who did not feel that the remediation payments made things right. *See* Knight Decl., Exs. C and D. Accordingly, although Mr. Sloan presumably has some knowledge of the issues in this case, "mere knowledge of events is not sufficient to require a deposition: the [executive] must have ***unique*** personal knowledge." *Little*, 2020 WL 868528, at *2 (emphasis added); *see also Lee v. City of Chicago*, 2021 WL 2399999, at *4 (N.D. Ill. June 11, 2021) ("Without a showing that [the executive] has some unique personal knowledge, the fact that she was made aware of plaintiff's allegations or that she viewed [potential evidence] is insufficient to warrant her deposition."); *Nucap*, 2017 WL 6059770, at *2–3 (granting protective order barring the deposition of "Chairman of the Board of Management" because the witness "was not involved with … the central issues in the case"). There is no evidence indicating that Mr. Sloan has such information.[3]

Because Mr. Stumpf and Mr. Sloan do not have any unique, personal knowledge of the matters in dispute, the Court should prevent Plaintiffs from deposing them on this ground alone.

---

[3] To the extent Plaintiffs want Mr. Sloan to confirm the contents of his testimony, Wells Fargo will enter into an appropriate stipulation that preserves all objections to its admission. Such a stipulation would obviate the need for Mr. Sloan's testimony, given that he has no unique, personal knowledge. *See Lee*, 2021 WL 2399999, at *4 (apex deposition was not necessary when the defendant "has agreed to stipulate to the authenticity" of the documents at issue).

**C.      Plaintiffs can and have garnered the information they seek from other witnesses and discovery methods.**

The second and third factors—whether the information Plaintiffs seek "can be garnered from other witnesses or other discovery methods," *Little*, 2020 WL 868528, at *1, also support entry of a protective order preventing Plaintiffs from deposing Mr. Stumpf and Mr. Sloan.

Specifically, the deposition testimony and documents from *Hernandez*—which Wells Fargo has produced to Plaintiffs and has agreed they can use in this case—all provide detailed information about the relevant issues in this case. Plaintiffs cannot show that those deposition transcripts and documents are insufficient. *See id*. at *2 (denying apex depositions when a Rule 30(b)(6) witness would have "more detailed information about the allegations that plaintiffs make in their complaint" and apex witnesses had "produced extensive documents to plaintiffs that cover much of the ground that their own depositions would address"); *see also Bless v. Cook County Sheriff's Office*, No. 2017 WL 1344522, at *2 (N.D. Ill. Apr. 12, 2017) ("there is insufficient reason to expect the depositions to yield relevant evidence unobtainable through other means"); *Murillo v. Kohl's Corp.*, 2016 WL 6090862, at *3-4 (E.D. Wis. Oct. 18, 2016) (preventing deposition of defendant's second-highest ranking executive because she had no personal knowledge of the relevant issues and because "less burdensome channels of discovery have been available to the plaintiffs to gather information on the topics at issue," including Rule 30(b)(6) depositions, depositions of key employees, and documents). Because any information Plaintiffs hope to learn from Mr. Stumpf and Mr. Sloan can be "garnered from other witnesses or other discovery methods," *Little*, 2020 WL 868528, at *1, the Court should enter a protective order for this reason as well.

### III. CONCLUSION

"An apex deposition is generally inappropriate when an upper-level executive lacks personal knowledge regarding the litigation, or when the requested information can be garnered from more knowledgeable subordinates." *Murillo*, 2016 WL 6090862, at *4. Such is the situation with Mr. Stumpf and Mr. Sloan, who had no personal involvement in the discovery of the software error, the efforts to identify impacted customers, and the resulting remediation plan. "What is more," because Plaintiffs have been given access to the discovery in *Hernandez*, including thousands of documents and Rule 30(b)(6) and other deposition testimony, they "have had ample opportunity to [conduct discovery] with lower-level employees with direct, personal involvement and knowledge about these issues." *Id*. Accordingly, Mr. Stumpf and Mr. Sloan's depositions "would be unduly burdensome, disruptive, and disproportionate to the needs of the litigation, and [] a protective order should, therefore, issue preventing [their] deposition[s]." *Id*. Indeed, this is a classic case for prohibiting the deposition of a company's former high-ranking executives. Accordingly, Wells Fargo respectfully requests that the Court issue a protective order precluding Plaintiffs from deposing its former CEOs John Stumpf and Tim Sloan.

Dated: May 12, 2022                                                      Respectfully submitted,

                                                                                         _/s/ Shawn R. Obi_

                                                        Shawn R. Obi (*pro hac vice*)
                                                        Winston & Strawn LLP
                                                        333 South Grand Avenue
                                                        Los Angeles, CA 90071
                                                        Phone: 213-615-1700
                                                        Fax: 213-615-1750
                                                        Email: SObi@winston.com

>Christopher Parker
>Winston & Strawn LLP
>35 West Wacker Drive
>Chicago, IL 60601
>Phone:  312-558-8085
>Fax:  312-558-5700
>Email:  cparker@winston.com
>
>Angela A. Smedley (*pro hac vice*)
>Winston & Strawn LLP
>200 Park Avenue
>New York, NY 10166
>Phone:  212-294-5348
>Fax:  212-294-4700
>Email:  asmedley@winston.com
>
>*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of May 2022, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system, upon the following:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

                                                                                                      /s/ *Shawn R. Obi*