**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDUARDO GARCIA and JULIA GARCIA,  )
                                            )
            Plaintiffs,                )      Case No. 1:20-cv-02402

vs.                                )
                                            )      Honorable Rebecca R. Pallmeyer

WELLS FARGO BANK, N.A.,         )
                                            )      **ORAL ARGUMENT**
             Defendant.          )      **REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. FACTUAL BACKGROUND.....................................................................................1

    A.      Plaintiffs' Loan and Payment History, Including Failed Forbearance Programs and Multiple Unsuccessful Modifications......................................1

    B.      Wells Fargo Notifies Plaintiffs That the August 2010 Trial Loan Modification Denial Was an Error....................................................................4

III. STANDARD...............................................................................................................5

IV. WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ICFA CLAIM ...................................................................................6

    A.      Plaintiffs Cannot Establish the Software Error Constituted an "Unfair" Practice Under the ICFA....................................................................6

           1.      Plaintiffs Cannot Show That the Error Was Unethical, Oppressive, or Unscrupulous. ...........................................................7

           2.      Plaintiffs Cannot Establish the Injury Prong. ..................................10

    B.      Plaintiffs Cannot Show the Erroneous Denial Caused Their Foreclosure, Let Alone the Damages They Allege Flowed From the Foreclosure....................................................................................................11

           1.      Plaintiffs' Pattern of Nonpayment Precludes a Finding of Proximate Cause. ...........................................................................13

           2.      Plaintiffs Decided to Not Make Loan Payments Instead of Paying an Amount They Admittedly Could Afford. ........................16

    C.      Plaintiffs' Emotional Distress Claims and Claims of Credit Harm Are Unsupported By The Evidence.....................................................................17

           1.      The Court Should Grant Wells Fargo Judgment as a Matter of Law as to Plaintiffs' Claimed Emotional Distress Damages.............17

           2.      The Court Should Grant Wells Fargo Judgment as a Matter of Law on Plaintiffs' Claims of Credit Harm.........................................24

V. CONCLUSION.........................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiello v. Providian Fin. Corp.*,
239 F.3d 876 (7th Cir. 2001) ............................................................................................22

*Anderson v. Stauffer Chem. Co*.,
965 F.2d 397 (7th Cir. 1992) ..............................................................................................6

*Anthony v. Country Life Mfg., L.L.C*.,
2002 WL 31269621 (N.D. Ill. Oct. 9, 2002), *aff'd*, 70 F. App'x 379 (7th
Cir. 2003)....................................................................................................................13, 15

*Batson v. Live Nation Ent., Inc*.,
746 F.3d 827 (7th Cir. 2014) ............................................................................................11

*Biggs v. Vill. of Dupo*,
892 F.2d 1298 (7th Cir. 1990) ..........................................................................................20

*Blanton v. RoundPoint Mortg. Servicing Corp*.,
825 F. App'x 369 (7th Cir. 2020) ................................................................................20, 22

*Bomar v. Pac. Union Fin., LLC*,
2017 U.S. Dist. LEXIS 62915 (N.D. Ill. 2017) ...............................................................25

*Brown v. I.C. Sys., Inc.*,
2019 WL 1281972 (N.D. Ill. Mar. 20, 2019)....................................................................23

*Clark v. Experian Info. Sols., Inc*.,
256 F. App'x 818 (7th Cir. 2007) ......................................................................................12

*Deutsche Bank Nat'l Tr. Co. v. Pickar*,
2017 WL 3475083 (N.D. Ill. Aug. 14, 2017) ...................................................................16

*Diedrich v. Ocwen Loan Servicing, LLC*,
2015 WL 1885630 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th
Cir. 2016)....................................................................................................................19, 20

*Eddie Bauer, Inc. v. Focus Transp. Servs*.,
881 F. Supp. 1174 (N.D. Ill. 1995) ................................................................................5, 12

*Fogt v. 1-800-Pack-Rat, LLC*,
  2017 IL App (1st) 150383.............................................................................................. 16

*Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of N.Y.*,
  577 F. Supp. 2d 1023 (N.D. Ill. 2008) ......................................................................... 21

*Kremers v. Coca-Cola Co.*,
  712 F. Supp. 2d 759 (S.D. Ill. 2010) .............................................................................. 7

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
  2021 WL 365611 (N.D. Ill. Feb. 3, 2021), *aff'd*, 21 F.4th 933 (7th Cir.
  2021) ............................................................................................................................. 7, 8

*McGlenn v. Driveline Retail Merchandising, Inc.*,
  2021 WL 4301476 (C.D. Ill., 2021)............................................................... 13, 15, 19, 22

*Mullen v. GLV, Inc.*,
  488 F. Supp. 3d 695 (N.D. Ill. 2020) ............................................................................ 11

*Nekolny v. Painter*,
  653 F.2d 1164 (C.A. Ill., 1981)...................................................................................... 20

*Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*,
  771 F.3d 391 (7th Cir. 2014) ........................................................................................... 6

*Phillips v. Double Down Interactive LLC*,
  173 F. Supp. 3d 731 (N.D. Ill. 2016) ............................................................................ 10

*Price v. Philip Morris, Inc.*,
  219 Ill. 2d 182 (Sup. Ct. 2005) ................................................................................ 12, 13

*Priebe v. Autobarn, Ltd.*,
  240 F.3d 584 (7th Cir. 2001) ......................................................................................... 17

*Real Est. Value Co. v. USAir, Inc.*,
  979 F. Supp. 731 (N.D. Ill. 1997) ................................................................................. 17

*Reeder v. HSBC USA, Inc.*,
  2009 WL 4788488 (N.D. Ill. Dec. 8, 2009).................................................................... 25

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403 (2002) ................................................................................................. 7, 9

*Sarver v. Experian Info. Sols.*,
   390 F.3d 969 (7th Cir. 2004) ........................................................................................... 22

*Saunders v. Michigan Ave. Nat'l Bank*,
   278 Ill. App. 3d 307 (1996) ............................................................................................... 9

*Schrott v. Bristol-Myers Squibb Co*.,
   2003 WL 22425009 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th
   Cir. 2005) ......................................................................................................................... 17

*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ...........................................................................5, 10, 11, 13

*Siegel v. Shell Oil Co*.,
   656 F. Supp. 2d 825 (N.D. Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ....................... 9

*Walker v. Macy's Merch. Grp., Inc*.,
   288 F. Supp. 3d 840 (N.D. Ill. 2017) ............................................................................... 12

*White v. City of Chi*.,
   829 F.3d 837 (7th Cir. 2016) ............................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................. 5

iv

## I.     INTRODUCTION

Plaintiffs have undoubtedly suffered from many financial difficulties since 2006. The failure of their business; the 2008 Financial Crisis; Mr. Garcia's struggles with unemployment; and Mrs. Garcia's deteriorating health all impacted Plaintiffs' ability to make their monthly mortgage payments. And Wells Fargo did make a mistake when it erroneously denied Plaintiffs a trial loan modification. However, the evidence demonstrates that Plaintiffs fall far short of the showing that the erroneous denial deprived them of "meaningful choice" under the ICFA or that it is probable that it proximately caused the foreclosure from which all of their alleged damages derive. Wells Fargo offered to review Plaintiffs for nine separate modifications. Moreover, even if they *were* to show that the erroneous denial had "caused" the foreclosure, both Plaintiffs seek emotional distress damages that are precluded by their own testimony or other evidence in the record. Accordingly, Plaintiffs cannot point to any evidence, as they must, that in a sea of misfortune, Wells Fargo's solitary mistake was the proximate cause of the economic and emotional damages they currently claim. Wells Fargo is entitled to summary judgment.

## II.     FACTUAL BACKGROUND

### A.     <u>Plaintiffs' Loan and Payment History, Including Failed Forbearance Programs and Multiple Unsuccessful Modifications.</u>

The Plaintiffs in this case, Mr. and Mrs. Garcia, refinanced their mortgage in 2006 to invest in their first business, Woodland Lumber LLC ("Woodland Lumber"). Statement of Undisputed Material Facts ("SUMF") ¶ 15. Mr. Garcia stopped working as a self-employed carpenter so he could devote himself to the business. SUMF ¶¶ 6; 10. Mrs. Garcia continued

1

to work full-time at Alivio Medical Center. SUMF ¶¶ 7-9. The same year of their refinance, Plaintiffs claim their Woodland Lumber business partner defrauded them, and the company was involuntarily dissolved at the end of 2006. SUMF ¶¶ 11-13. Mr. Garcia attempted to re-enter the work force and regain his carpentry clients, but struggled to find any work as the economy entered a recession. SUMF ¶ 14.

By December 2006, Plaintiffs first defaulted on their refinanced loan. SUMF ¶ 17. After Woodland Lumber failed, Plaintiffs sought help with their refinanced loan payments, and in February 2007, Wells Fargo extended the first Temporary Forbearance Agreement to Plaintiffs. SUMF ¶ 18. Plaintiffs performed under that Agreement and brought their loan current until March 2008. SUMF ¶ 19. After their payments increased per the terms of their adjustable-rate note, Plaintiffs defaulted again and sought what would be the first of eight more loan modifications from Wells Fargo. SUMF ¶¶ 20-39. Plaintiffs did not qualify for a March 2008 loan modification because their reported monthly income was less than their reported monthly expenses. SUMF ¶ 20. Plaintiffs do not challenge that decision.

Although Plaintiffs did not qualify for the March 2008 loan modification (*id.*), Wells Fargo offered Plaintiffs two Special Forbearance Plans—one in 2008 and one in 2009. SUMF ¶ 22. Plaintiffs defaulted on both plans by failing to make the necessary payments. *Id.* Plaintiffs now claim they agreed to the September Special Forbearance Plan "just to gain time" so they could submit another loan modification application. SUMF ¶ 23. Deutsche Bank National Trust Company (as trustee for Morgan Stanley IXIS Real Estate Capital Trust) filed a foreclosure complaint against Plaintiffs in the Circuit Court of Cook County in January

2009. SUMF 42. Plaintiffs answered the complaint in February 2009, and the court entered a judgment of foreclosure against Plaintiffs in September 2009. *Id*.

In December 2009, Plaintiffs again sought assistance from Wells Fargo. SUMF ¶ 32. Plaintiffs were given the opportunity to apply for a loan modification, but their application was denied because Plaintiffs failed to provide the documents required for Wells Fargo to complete its evaluation of Plaintiffs' eligibility. SUMF ¶ 38. Then Wells Fargo offered Plaintiffs a March 2010 loan modification which would have lowered their monthly mortgage payment by almost $1,200—from roughly $3,000 to $1,871.60. SUMF ¶ 25. Plaintiffs testified that although they could have afforded to pay that modified monthly payment, they intentionally declined the modification. SUMF ¶¶ 26-39. Instead, Plaintiffs elected to pay neither their original unmodified mortgage payments nor the modified mortgage payments. SUMF ¶ 31. Plaintiffs' rationale for not making any payments at this time was to force Wells Fargo to negotiate with them until they received a subjectively "more comfortable" monthly mortgage payment than the modified payment of $1,871.60. SUMF ¶¶ 31-32. In April 2010, Plaintiffs applied for a HAMP trial loan modification—which they knew was not a permanent loan modification—but were erroneously denied in August 2010 because of a software calculation error, which is described more fully below. SUMF ¶¶ 33; 36. Plaintiffs claim it is this denial that is responsible for the eventual foreclosure of their property and the $25 million in damages they seek. At the time of the denial, Plaintiffs had not made a payment on their mortgage for 24 months. SUMF ¶ 37.

Within a couple of months of the August 2010 erroneous denial, Plaintiffs were

3

separately considered for another loan modification. SUMF ¶ 38. That modification was denied – as before – because Plaintiffs failed to provide the documents required for Wells Fargo to evaluate Plaintiffs' eligibility. *Id.* Two months after that denial, Plaintiffs submitted what would be their final modification application. SUMF ¶ 39. That application was denied because Plaintiffs' reported monthly income was less than their reported monthly expenses. *Id.*

After 30 months of missed payments and ***eight*** unsuccessful loan modification attempts—one of which Wells Fargo erroneously denied—the LaGrange Park Property was sold at a foreclosure sale on February 18, 2011. SUMF ¶¶ 40; 42-43.

## B.     Wells Fargo Notifies Plaintiffs That the August 2010 Trial Loan Modification Denial Was An Error.

The erroneous denial at issue here was the result of a calculation error in an underwriting tool called the "Home Preservation Application Tool" or "HPA Tool." That error led to erroneous denials of trial loan modifications for certain borrowers in the foreclosure process. SUMF ¶¶ 3-4. As Plaintiffs acknowledge, these trial loan modifications were not permanent loan modifications. SUMF ¶ 36. Instead, they required borrowers to (among other requirements) make timely payments during a three-month trial period in order to be eligible for a permanent modification. *Id.*

Many borrowers who received trial HAMP modifications did not avoid foreclosure. Indeed, approximately 47% of trial HAMP modifications from February 2009 to June 2012 failed to convert to permanent modifications for several reasons, including missing documentation (34%), payment default during the trial payment period (22%), and borrowers

withdrawing their requests for modifications (8%). SUMF ¶ 41. Plaintiffs engaged in all of these behaviors during the 30 months they were delinquent on their loan. SUMF ¶¶ 20-39. Given the history of Plaintiffs' loan, it is unlikely that Plaintiffs would have been able to avoid default or foreclosure even if the software error had not occurred and they had been approved for the trial modification in August 2010. *Id*. at ¶ 41.

In July 2019, Wells Fargo notified Plaintiffs of the error, sent them no-strings-attached payments totaling $24,500 and offered to mediate with them if Plaintiffs felt the payment did not make things right. SUMF ¶ 5. Plaintiffs did not mediate, and instead filed this lawsuit in April 2020. Wells Fargo paid the $24,500 to Plaintiffs' bankruptcy estate. *In re Eduardo Garcia and Julia Escamilla*, N.D. Ill Case No. 11-22208 (Dkt. 54).

## III.   STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has made a properly supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(e)). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87) (1986). "Where the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating

5

a factual basis on which it is entitled to relief." *Eddie Bauer, Inc. v. Focus Transp. Servs.*, 881 F. Supp. 1174, 1177 (N.D. Ill. 1995).

The non-moving party may not rely on conclusory allegations or speculation alone to oppose summary judgment. *Anderson v. Stauffer Chem. Co*., 965 F.2d 397, 402 (7th Cir. 1992). In ruling on summary judgment, the court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi*., 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## IV.    WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ICFA CLAIM

An ICFA claim brought by a private party has five elements: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred during a course of conduct involving trade or commerce; (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co*., 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). Wells Fargo moves for summary judgment on the first, fourth, and fifth elements of Plaintiffs' claim.

### A.    Plaintiffs Cannot Establish the Software Error Constituted an "Unfair" Practice Under the ICFA.

Plaintiffs premise their ICFA claim on "unfair" conduct. Compl. (Dkt. 1) ¶ 125. Whether a practice is "unfair" under the ICFA depends upon whether the practice: (1) offends public policy; (2) is immoral, unethical, oppressive or unscrupulous; and (3) causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–418 (2002). "[C]ourts must determine whether a particular challenged trade practice is 'unfair' within the meaning of the ICFA on a case-by-case basis." *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 771 (S.D. Ill. 2010) (collecting cases).

Plaintiffs concede—as they must—that they turned down an affordable loan modification Wells Fargo offered them. Thus, there is no genuine issue of material fact as to the "unfair" element of Plaintiffs' ICFA claim, and Wells Fargo is entitled to summary judgment.

### 1. Plaintiffs Cannot Show That the Error Was Unethical, Oppressive, or Unscrupulous.

A practice is "immoral, unethical, oppressive, or unscrupulous," if it "leaves the consumer with little alternative except to submit to it." *Id.* at 772. "Conduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden on its target." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 2021 WL 365611, at *6 (N.D. Ill. Feb. 3, 2021), *aff'd*, 21 F.4th 933 (7th Cir. 2021).

While Plaintiffs' untested allegations were sufficient at the pleading stage, discovery has confirmed that Wells Fargo's conduct in denying the HAMP trial modification did not impose a lack of meaningful choice on Plaintiffs. Plaintiffs had choices – but instead they chose to decline or fail to complete necessary paperwork for other modifications, failed to

7

perform on other forbearance agreements, and continued to default on their mortgage that was part of an admitted negotiation strategy. SUMF ¶¶ 20; 26-30. This is not Wells Fargo "impos[ing] a lack of meaningful choice" on Plaintiffs, as the law requires. *Leszanczuk*, 2021 WL 365611, at *6.

Plaintiffs did have a choice. More specifically, for instance, Plaintiffs could have accepted the loan modification Wells Fargo offered them just four months before the erroneous denial, which would have reduced their monthly mortgage payments from approximately $3,000 to $1,871. SUMF ¶¶ 25-26. They chose not to accept this modification. SUMF ¶ 27. Plaintiffs claim they rejected that offer only because they wanted to see if Wells Fargo would offer them an even lower payment. SUMF ¶¶ 27-32. In other words, rather than accept the loan modification offer (or make the required payments under the terms of their original unmodified mortgage), it was Plaintiffs' "intention to negotiate" with Wells Fargo until Plaintiffs were given what they viewed as a "better" and "more comfortable" payment. SUMF ¶ 31. Mr. Garcia testified that he declined the modification because he believed it was "not a comfortable sum of money" for them to pay. SUMF ¶ 27. However, Mr. Garcia understood that if he declined the modification, Wells Fargo could foreclose on the house and that he was still responsible for the original monthly mortgage payments. SUMF ¶ 28.

For Mrs. Garcia's part, she testified that Plaintiffs could have afforded the $1,871 monthly payment they rejected. SUMF ¶ 26. According to Mrs. Garcia, she would have accepted the modification and made the $1,871 payments had she known that the property could have been foreclosed on if she did not accept the offer. SUMF ¶ 30. She wanted

8

someone from Wells Fargo to "take care of [Plaintiffs]" and verbally tell her, after missing some 19 months of mortgage payments, "Mrs. Garcia if you don't take this last opportunity, we're going to sell your house." SUMF ¶ 29. Plaintiffs received a total of four default and acceleration notices expressly stating this would happen. SUMF ¶ 43. In any event, Plaintiffs' decision to decline the modification Wells Fargo offered them does not constitute a lack of meaningful alternatives imposed *by Wells Fargo*, as required under ICFA.

Moreover, within a couple of months of the August 2010 erroneous denial, Wells Fargo considered Plaintiffs for another loan modification, but Plaintiffs failed to provide the documents required to evaluate their eligibility. SUMF 38. Plaintiffs' failure to provide documents further demonstrates that Wells Fargo's conduct did not impose a lack of meaningful alternatives upon Plaintiffs.

Courts have not hesitated to dispose of ICFA claims on summary judgment where, as here, alternatives existed. In *Siegel v. Shell Oil Co*., 656 F. Supp. 2d 825, 833 (N.D. Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010), the court noted that alternative options demonstrated "an absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness." *Id.* The court granted summary judgment in favor of defendants and the Seventh Circuit affirmed. *See generally id*.; *see also Robinson*, 201 Ill. 2d at 420 (plaintiffs had not proven oppressive conduct under the ICFA because they could have leased a car elsewhere and avoided defendant's penalty provisions); *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 314 (1996) (bank's fee was not an unfair trade practice under ICFA when the customer "not only had control over whether she would be assessed an overdraft fee, but was

free to select another Bank"). Here too, the evidence demonstrates it was not Wells Fargo that imposed any lack of meaningful choice on Plaintiffs. Instead, Plaintiffs' financial circumstances, nearly three years of missed mortgage payments, negative equity, their decision to reject a modification offer, and a desire to continue what they personally believed were "negotiations" with Wells Fargo created any lack of meaningful choice they experienced. These circumstances do not amount to an unfair ICFA practice under the law. Summary judgment should be entered in favor of Wells Fargo.

### 2. Plaintiffs Cannot Establish the Injury Prong.

Plaintiffs' decision to reject Wells Fargo's March 2010 modification offer also negates injury under ICFA as a matter of law. Indeed, under ICFA, "[e]ven if [a plaintiff] could establish that the defendants' conduct was unfair, in order to establish harm […], [a plaintiff] must still show that he suffered substantial injury, *and that he could not avoid this injury*." *Siegel*, 612 F.3d at 937 (emphasis added); *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (in order to constitute substantial injury within the meaning of the ICFA, the practice must be "one that consumers themselves could not reasonably have avoided").

As before, the evidence shows that Plaintiffs could have avoided their claimed injuries by accepting the modification Wells Fargo offered to them just months prior to the erroneous denial, which would have significantly lowered their monthly payments. *See* Section II, *supra*. Courts routinely grant summary judgment or motions to dismiss for ICFA defendants where a plaintiff could have avoided an injury based on the existence of alternatives. *See Siegel*, 612

10

F.3d at 937 (affirming summary judgment where plaintiff could have purchased gasoline from gas stations that did not artificially inflate prices). For example, in *Batson v. Live Nation Ent., Inc*., 746 F.3d 827, 834 (7th Cir. 2014), the Seventh Circuit affirmed the dismissal of plaintiff's ICFA claim and agreed with the lower court's analysis that plaintiff could have reasonably avoided a concert ticket fee that bundled the cost for the ticket and parking. The plaintiff could have avoided the fee by "opting instead for alternative entertainment" to the concert. *Id*.

Plaintiffs' claimed reasons for not pursuing the loan modification do not require a different conclusion. As this District has explained, "whether a consumer's [] decision was justified, despite the availability of alternatives, is not an element of an unfair practices claim." *Mullen v. GLV, Inc*., 488 F. Supp. 3d 695, 712 (N.D. Ill. 2020) (granting summary judgment for defendants on ICFA claim alleging concealment of coach's history of sexual abuse despite plaintiff's contention that her decision to enroll daughters in defendants' programs was justified because she did not know about coach's history at the time). Instead, "[t]he relevant inquiry is whether a consumer's injury 'could reasonably have been avoided' by, for example, purchase of available alternatives." *Id*. Because Plaintiffs admit that Wells Fargo offered them a loan modification they could have afforded but nonetheless chose not to accept, there is no genuine issue of material fact regarding the injury prong of Plaintiffs' ICFA claim. Wells Fargo is entitled to judgment as a matter of law.

**B.** **Plaintiffs Cannot Show the Erroneous Denial Caused Their Foreclosure, Let Alone the Damages They Allege Flowed *From* the Foreclosure.**

11

Nor is there any genuine issue of material fact regarding proximate cause, which is an essential element of Plaintiffs' ICFA claim. *See Clark v. Experian Info. Sols., Inc*., 256 F. App'x 818, 822 (7th Cir. 2007). According to Plaintiffs, the erroneous trial modification denial "*caused* [them] to lose their Family Home," which in turn resulted in damages "flowing directly from this harm." Compl. (Dkt. 1) ¶¶ 35; 114-115 (emphasis added). At this stage, Plaintiffs must substantiate those assertions with "specific evidence demonstrating a factual basis." *Eddie Bauer*, 881 F. Supp. at 1177. They cannot do so.

Plaintiffs acknowledge that the erroneous denial of their trial modification and the foreclosure of their home are not the same. SUMF ¶ 35. Plaintiffs also admit that the error only prevented them from getting a trial—not permanent—modification. SUMF ¶ 36. Plaintiffs would have had to successfully complete the trial modification to receive a permanent modification and then perform under that modification to avoid foreclosure. *Id*. The evidence also demonstrates that, from the time Plaintiffs refinanced their mortgage in 2006, they faced numerous financial difficulties, loan payment problems, and various medical conditions. SUMF ¶¶ 11-44; 45-66. The evidence also shows that all of these issues caused Plaintiffs' delinquency and claimed damages. *See id*.

In the ICFA context, "the relevant [cause-in-fact] inquiry is whether the harm would have occurred *absent the defendant's conduct*." *Price v. Philip Morris, Inc*., 219 Ill. 2d 182, 269 (Sup. Ct. 2005) (emphasis added). Further, "when multiple factors may have combined to cause the injury, [the Court] consider[s] whether the defendant's conduct was a material element and a substantial factor in bringing about the injury." *Walker v. Macy's Merch. Grp.,*

12

*Inc.*, 288 F. Supp. 3d 840, 856 (N.D. Ill. 2017) (quotation omitted). This showing can only be made where there is "'reasonable certainty' that the defendant's acts caused the injury." *Anthony v. Country Life Mfg., L.L.C.*, 2002 WL 31269621, at *2 (N.D. Ill. Oct. 9, 2002), *aff'd*, 70 F. App'x 379 (7th Cir. 2003). Here, despite extensive discovery, Plaintiffs have proffered no evidence showing that an erroneous denial on a single trial modification application can be disentangled from the morass. *See Siegel*, 612 F.3d at 937 (affirming summary judgment of ICFA claim "because many factors contributed to [plaintiff's harm and] his claim that the defendants' conduct caused" that harm "[wa]s therefore undermined").

### 1. Plaintiffs' Pattern of Nonpayment Precludes a Finding of Proximate Cause.

Plaintiffs must demonstrate it is "probable" they would have avoided foreclosure in the absence of Wells Fargo's erroneous trial modification denial. *See Price*, 219 Ill. 2d at 269; *McGlenn v. Driveline Retail Merchandising, Inc.*, 2021 WL 4301476, at *10 (C.D. Ill., 2021) (proximate cause can be established through circumstantial evidence only if the evidence makes the causation conclusion "probable as opposed to merely possible"). However, Plaintiffs' years of failing to make their loan payments, breaking modification payment plans, and failing to complete applications call for a different conclusion. *See* SUMF ¶¶ 15-44. A bevy of financial problems over at least four years—not the one erroneous denial by Wells Fargo in August 2010—led to Plaintiffs' inability to keep their house. *See id*. They repeatedly defaulted on their loan and remained in default despite multiple modifications and forbearance agreements Wells Fargo offered them. SUMF ¶¶ 17-43. Indeed, Deutsche Bank National Trust Company (as trustee for Morgan Stanley IXIS Real Estate Capital Trust) filed a

foreclosure complaint against Plaintiffs in January 2009. SUMF ¶ 42. Plaintiffs answered the complaint, and the court entered a judgment of foreclosure against Plaintiffs in September 2009. *Id*. In addition, it is undisputed that Mr. Garcia endured long periods of unemployment and that Plaintiffs lost their business at the same time through no fault of Wells Fargo. *Id*. at ¶¶ 10-14; 24. Plaintiffs incurred dozens of debts (aside from that owed to Wells Fargo) and also failed to pay those off. SUMF ¶¶ 24; 44. This pattern of nonpayment even led to repossession of Mrs. Garcia's car by a different bank. SUMF ¶ 16.

Even if Plaintiffs had been approved for and accepted the erroneously denied trial modification, the evidence does not suggest it is probable that Plaintiffs would have been able to save their home. *See* SUMF ¶¶ 34; 41. Borrowers who obtained HAMP modifications frequently lost their homes in foreclosure—this is especially true of those, like Plaintiffs, with long delinquencies and histories of breaking loan modification payment plans and failing to complete modification applications. *Id*. at ¶ 41. In the first three years of the HAMP program (which includes the dates of the erroneous denial and the Garcias' foreclosure), only around half of all borrowers who received a trial modification were able to convert it into a permanent modification. *Id*. Of those, approximately a quarter re-defaulted within two years and approximately 35% re-defaulted within four. *See id*. Together, these statistics give Plaintiffs, *at most*, a 40% likelihood of both getting a permanent modification and holding onto their property for a mere two years without re-defaulting. *See id*. This is well short of the probability showing required.

14

In fact, of the seven times Plaintiffs were considered for a loan modification after their uncured September 2008 default, *six* resulted in denials for reasons they do not and cannot challenge. SUMF ¶¶ 20-40. Plaintiffs twice lost forbearance plans for failing to make the required payments, twice could not receive a full review because they did not submit the requested documents, did not qualify for one because their expenses were greater than their income, and in one instance they rejected a loan modification for which they were approved. SUMF ¶¶ 22-23; 38-39; 25-32. Acknowledging this history, Mr. Garcia conceded that it was possible Plaintiffs would not have been able to complete the one erroneously denied trial modification. SUMF ¶ 34. He also admitted the possibility that Plaintiffs would have declined it. *Id*. Further, both Plaintiffs testified to engaging in some level of gamesmanship with Wells Fargo: both reported declining a modification they could have afforded to pay, and Mrs. Garcia admitted that they agreed to a 2008 forbearance plan, which they promptly broke, "just to gain time and submit the application for the affordable house modification." SUMF ¶¶ 25-32; 22-23. Moreover, even after the August 2010 erroneous denial, Wells Fargo considered Plaintiffs for another loan modification, but Plaintiffs failed to provide the documents required to evaluate their eligibility. SUMF ¶ 38.

The evidence thus does not show the required "probability" that Plaintiffs would have accepted the erroneously denied trial modification if received—let alone completed the required trial payments and the required regular payments thereafter—and thus avoided foreclosure. Instead, the evidence supports the opposite. Since it is not "reasonabl[y] certain[]" or probable that Wells Fargo was the proximate cause of Plaintiffs' harm, their

claim should be summarily adjudicated. *See Anthony*, 2002 WL 31269621, at *2; *McGlenn*, 2021 WL 4301476, at *10.

### 2. Plaintiffs Decided to Not Make Loan Payments Instead of Paying an Amount They Admittedly Could Afford.

Plaintiffs' willful decision not to make their loan payments, even when they testified they would have been able to, demonstrates that Wells Fargo was not the proximate cause of their foreclosure. *See* Section IV. A.1, *supra*. The evidence instead demonstrates that the loss of Plaintiffs' home is fundamentally attributable to Plaintiffs' own conduct. Had Plaintiffs decided to accept the March 2010 modification instead of continuing to pay nothing on their loan, and completed all necessary trial payments, they could have brought their loan current and obviated the need for a subsequent loss mitigation review altogether. Where, as here, Plaintiffs' "own actions caused . . . the foreclosure of their property" and there is "no basis . . . to find that [the bank's] actions caused [Plaintiffs] to stop making payments," courts have found summary judgment to be warranted. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Pickar*, 2017 WL 3475083, at *5 (N.D. Ill. Aug. 14, 2017) (summary judgment granted where plaintiffs rejected modification and stopped making payments on the note, which led to default that brought on foreclosure action); *Fogt v. 1-800-Pack-Rat, LLC*, 2017 IL App (1st) 150383, ¶ 71 (granting summary judgment where plaintiffs failed to update credit card information, which led plaintiffs to fall behind on rental payments and explaining that "[a]bsent the plaintiffs' [own] failures," they would not have been harmed). This Court should conclude the same.

16

C.    **Plaintiffs' Emotional Distress Claims and Claims of Credit Harm Are Unsupported By The Evidence.**

Even if Plaintiffs could establish the erroneous denial proximately caused the foreclosure, Plaintiffs cannot adduce evidence that certain categories of damages they claim flowed from the erroneous denial. Indeed, there is no triable issue regarding Plaintiffs' claimed emotional distress damages and damages to their credit scores. Accordingly, the Court should dispose of these damages on summary judgment. *Priebe v. Autobarn, Ltd*., 240 F.3d 584, 589 (7th Cir. 2001) (affirming summary judgment as to ICFA claim because plaintiff failed to prove damages); *Real Est. Value Co. v. USAir, Inc*., 979 F. Supp. 731, 741 (N.D. Ill. 1997) ("[A] party may be entitled to summary judgment with respect to certain categories of damages sought").

### 1. The Court Should Grant Wells Fargo Judgment as a Matter of Law as to Plaintiffs' Claimed Emotional Distress Damages.

Here, Plaintiffs cannot adduce sufficient evidence that they suffered emotional distress as a result of Wells Fargo's alleged violation of ICFA. Rather, the medical evidence in the record either (1) does not address the erroneous denial's impact on Plaintiffs' conditions or finds that it had none, or (2) shows that all of the conditions for which Plaintiffs seek damages were either pre-existing at the time of the error or have never been diagnosed by a doctor. Accordingly, there is no triable issue regarding Plaintiffs' claimed emotional distress damages, and Wells Fargo is entitled to judgment as a matter of law.

**Mrs. Garcia**:    It is axiomatic that when a plaintiff "fails to offer any evidence demonstrating that her physical complaints are related to" the harm alleged, she also fails to

demonstrate evidence of causation. *Schrott v. Bristol-Myers Squibb Co.*, 2003 WL 22425009, at *6 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th Cir. 2005). Mrs. Garcia's claims fail this test at the outset because all of the medical conditions for which she seeks damages predate the foreclosure and error, in some cases by many years. Indeed, before Plaintiffs' financial difficulties began, Mrs. Garcia was diagnosed with several medical conditions, including migraines, fibromyalgia, and Major Depressive Disorder. SUMF ¶¶ 45; 53; 55-56. Mrs. Garcia's primary care physician traces her fibromyalgia and migraine pain to a severe car accident that occurred nearly 30 years ago, and links Mrs. Garcia's depression to the chronic physical pain she experiences because of her other medical conditions. SUMF ¶¶ 46-47. An independent neuropsychological analysis of Mrs. Garcia and her medical conditions confirms that the medications she takes to treat her medical conditions are mismanaged and likely extend and worsen her symptoms. SUMF ¶¶ 55; 57-58. Medication mismanagement aside, Mrs. Garcia testified that she does not "believe" in depression and, consequently, has never sought nor followed through with treatment for it. SUMF ¶¶ 59; 49. Mrs. Garcia has also disregarded the advice and treatment recommendations of her doctors. *Id.* at ¶¶ 49, 59. For example, she refused recommended psychotherapy because she preferred to seek pastoral and spiritual care, despite expressing an understanding that these cannot replace formal psychotherapy. *Id.* In light of this evidence, independent medical examiner Dr. Hartman concluded that Mrs. Garcia's chronic psychological and medical conditions are not the result of losing the house in foreclosure, but instead are the result of her mistreated and untreated

medical and psychological conditions. *Id*. at ¶¶ 55-56. Moreover, Dr. Hartman found that Mrs. Garcia may magnify her symptoms for secondary (financial) gain. *Id*. at ¶ 60.

Accordingly, Mrs. Garcia cannot demonstrate that proximate cause as to her claimed emotional distress damages is "probable," as opposed to merely "possible," and summary judgment should be granted. *McGlenn*, 2021 WL 4301476, at *10.

**Mr. Garcia**:  Mr. Garcia testified that his feelings of anxiousness, being "on edge," and frustration all pre-dated the erroneous denial and arose from his inability to find steady employment and accomplish work projects starting around 2008. SUMF ¶ 61. Similarly, Mr. Garcia's medical records noted issues with sleep and a severe sleep disorder years before the erroneous denial. *Id*. Moreover, Mr. Garcia testified that there was "no room" for depression in his life, it was not in his nature to feel depressed, and he confirmed that he is a person with a "positive outlook." *Id*. Mr. Garcia also denied the existence of any marital distress. *Id*. And while both Plaintiffs testified experiencing emotional distress in connection with prosecuting this lawsuit, such damages are not recoverable. *Id*. ¶¶ at 54; 62; *see Diedrich v. Ocwen Loan Servicing, LLC*, 2015 WL 1885630, at *9 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d 583 (7th Cir. 2016) (stress relating to plaintiff's "involvement in the lawsuit itself . . . does not 'suffice as a harm warranting actual damages'") (collecting cases).

Critically, the only doctor who has ever evaluated Mr. Garcia for emotional distress found there to be none. Dr. Hartman, who performed an independent medical examination, concluded that Mr. Garcia "did not display any diagnosable stress disorder specific to the bank and mortgage difficulties." SUMF ¶ 62. Dr. Hartman further concluded that Mr. Garcia

did not appear anxious or depressed. *Id*. at ¶ 63. While Dr. Hartman acknowledged that Mr. Garcia described the loss of his home as shocking and stressful, this single statement is not enough to establish injury as a result of Wells Fargo's alleged violation of ICFA. *Id*. at ¶ 62; *see Nekolny v. Painter*, 653 F.2d 1164, 1172–73 (C.A. Ill., 1981). Dr. Hartman further noted that Mr. Garcia's mental state is influenced by his untreated sleep apnea and hypertension, demonstrating that Wells Fargo was not the "but for" cause of Mr. Garcia's damages. SUMF ¶¶ 63-64. Finally, Dr. Hartman noted that Mr. Garcia exaggerated some symptoms. *Id*. at ¶ 65. Without any medical records or testimony from Mr. Garcia's own doctors substantiating his potentially exaggerated emotional distress allegations, Dr. Hartman's findings further bolster the argument that Mr. Garcia did not experience demonstrable emotional distress as a result of Wells Fargo's alleged violation of ICFA. *See Biggs v. Vill. of Dupo*, 892 F.2d 1298, 1304-05 (7th Cir. 1990) ("[W]e require that a plaintiff show *demonstrable* emotional distress[.]") (emphasis in original).

Plaintiffs attempt to address these insurmountable issues by alleging that Wells Fargo "exaggerated, increased, exacerbated" or otherwise worsened their pre-existing medical conditions. Declaration of Shawn R. Obi (Obi Dec.) at Ex. 37 (Julia Garcia's Resp. to Interrog.) at p. 9. The Court should reject that attempt. The evidence provides no basis on which a jury could separate out how much of the "worsening" was caused by the foreclosure, let alone reasonably conclude that the bank was the proximate cause of Plaintiffs' claimed ailments. *See Diedrich*, 2015 WL 1885630, at \*9; *Blanton v. RoundPoint Mortg. Servicing Corp*., 825 F. App'x 369, 373 (7th Cir. 2020). On the contrary, although Plaintiffs blame

Wells Fargo for causing or exacerbating their medical conditions (Obi Dec. at Ex. 37, Julia Garcia's Resp. to Interrog. p. 9), as shown above, the evidence confirms numerous contributing causes, including (1) Mr. Garcia's alleged emotional distress is completely untreated or mistreated (SUMF ¶¶ 49; 55-59), and (2) Mrs. Garcia's treatment of her depressive disorder is "peculiar," lacks a formal psychiatric evaluation, and leaves some obvious depressive symptoms unaddressed. SUMF ¶¶ 58-59. In addition, as shown above, Mrs. Garcia's medications are mismanaged, likely causing extension and worsening of her symptoms and risking potentially dangerous interactions. SUMF ¶ 57. And Plaintiffs cite stress from being in default and having to apply for loan modifications starting in 2008 (SUMF ¶¶ 50-51; 61), and from filing this lawsuit (*id*. at ¶¶ 54; 62), as contributing to their medical conditions as well.

The evidence in the record thus provides no means by which a jury could reasonably determine the medical impact of Wells Fargo's erroneous denial amidst this constellation of causes. This difficulty is made more acute by the passage of time. *Cf. Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1040 (N.D. Ill. 2008) (granting summary judgment on ICFA claim where plaintiff did not learn of alleged wrongful conduct until years after harm was caused). Plaintiffs here did not learn of the alleged wrongful conduct—the error—until eight years after it occurred, and they could not have discussed Wells Fargo's conduct with their doctors prior to that time. This means that Plaintiffs' doctors could not, and did not, try to isolate or assess the error as a potential cause to the Garcias' health conditions.

Indeed, several of Plaintiffs' doctors confirmed at deposition that they did not recall discussing even the foreclosure with Plaintiffs. SUMF ¶ 48. And Plaintiffs' primary physician, Dr. Pillai, testified that she remembered once speaking to the Garcias about losing their home, but she observed that they had "the same response that anybody [would] ha[ve]." *Id.* at ¶ 47. Dr. Pillai did not have an answer for how much, if any, of Plaintiffs' medical conditions might be attributable to Wells Fargo. *Id.*; *cf. Blanton*, 825 F. App'x at 373 (granting summary judgment on ICFA claim where treating physician who was offered as expert on cause of the plaintiff's injury had not made that determination in the course of providing treatment). Out of the 8,000 pages of medical records produced in this case from 13 doctors, there is a single reference to the foreclosure, and none contain a diagnosis based on that subject. Obi Dec. at Ex. 37 (Julia Garcia's Resp. to Interrog.) at p. 14; SUMF at ¶ 48. Plaintiffs cannot adduce any other evidence on this point except for their own testimony. *See, e.g.*, *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (explaining that the Seventh Circuit maintains "a strict standard for a finding of emotional damage" and such claims must be supported by more than a plaintiff's own "conclusory" statements); *Aiello v. Providian Fin. Corp.,* 239 F.3d 876, 880 (7th Cir. 2001) (noting that the law is "wary of claims of emotional distress, because they are so easy to manufacture").

Indeed, Dr. Hartman has advised caution about uncritically accepting Plaintiffs' self-reported symptoms and their causes, as each Plaintiff is prone to some amount of exaggeration and symptom-magnification. SUMF ¶¶ 60, 65. Such testimony alone is insufficient to demonstrate that Wells Fargo is the probable (not merely possible) proximate cause of

Plaintiffs' alleged physical injuries and emotional distress. *McGlenn*, 2021 WL 4301476, at *10).

Nor is there sufficient evidence to show that Plaintiffs' claimed emotional conditions proximately caused the additional harms they allege. For example, Mrs. Garcia seeks to recover damages arising from her alleged inability to keep her job or find work. Compl. (Dkt. 1) ¶ 115(H). Mrs. Garcia alleges that "[d]ue to the stress and subsequent deterioration of her physical and mental health, Mrs. Garcia was eventually forced to quit her job, which significantly and permanently derailed her professional career." *Id*. But Plaintiffs cannot show that it was probable that Mrs. Garcia quit her job because of the foreclosure as opposed to her pre-existing health issues or other unrelated reasons. SUMF ¶ 9. Elena Briseño, Mrs. Garcia's former co-worker, testified that Mrs. Garcia did not leave her job at Alivio because of the stress due to the foreclosure; instead, she left because of disagreements with leadership. *Id*. Another former co-worker, Susan Vega, similarly testified that Mrs. Garcia quit because of issues with management. *Id*. Martha Koehler, Mrs. Garcia's spiritual advisor and supervisor at Hispanic Bible School, likewise testified that changes in management at Alivio played a role in Mrs. Garcia leaving her job at Alivio. *Id*. And there is no evidence that her career has been "permanently derailed" because of Wells Fargo. Compl. (Dkt. 1) ¶ 115(H). Mrs. Garcia returned to Alivio in 2020 to work on a temporary project. SUMF ¶ 9. Mrs. Garcia's self-serving testimony does not create a triable issue on this record. *See Brown v. I.C. Sys., Inc.*, 2019 WL 1281972, at *7 (N.D. Ill. Mar. 20, 2019) (finding at summary judgment that plaintiff's deposition testimony was insufficient to prove certain damages for ICFA claim

because any amount awarded based on her testimony would be "arbitrary and purely speculative").

In sum, the record confirms that Plaintiffs cannot demonstrate with reasonable certainty or probability that Wells Fargo was the proximate cause of their claimed emotional distress damages. Having failed to establish this necessary element of their ICFA claim, it fails as a matter of law.

### 2. The Court Should Grant Wells Fargo Judgment as a Matter of Law on Plaintiffs' Claims of Credit Harm.

The Court should also grant Wells Fargo judgment as a matter of law on Plaintiffs' claims of credit harm.

Here, Plaintiffs seek damages in the form of "severe damage to [their] credit rating" and the "[i]nability to access credit to purchase a reliable automobile." Obi Dec. at Ex. 37 (Julia Garcia's Resp. to Interrog) at p. 9. Plaintiffs allege – but have no evidence that – their "creditworthiness was obliterated [and that] the foreclosure and bankruptcy they were often unable to finance anything and had difficulty procuring basic services and necessities." Compl. ¶ 115(G). They also claim that this damage to their credit, in turn, caused them to be "unable to qualify to rent almost any form of housing in LaGrange Park, ultimately forcing them to live in a much less desirable area, where credit checks for apartments were not required." ¶ 115(P)(d). They allege they "were unable to finance a car even at above-market, high interest rates[,] forc[ing] [Plaintiffs] to buy several cars of little value for cash." Compl. ¶ 115(P)(e).

These allegations have no evidentiary basis. Indeed, the only record evidence on this subject refutes this claim. First, Mr. Garcia conceded that his credit score was negatively affected because he did not make his mortgage payments. SUMF ¶ 66. Next, it is undisputed that Plaintiffs' car was repossessed years before the erroneous denial, which undoubtedly caused their credit score to suffer. *Id*. at ¶ 16. Similarly, Mrs. Garcia filed for bankruptcy, which likewise negatively affected her credit score. SUMF ¶ 44. Plaintiffs offer nothing but their own allegations, which do not suffice at this stage. *See Bomar v. Pac. Union Fin., LLC*, 2017 U.S. Dist. LEXIS 62915, at *11–12 (N.D. Ill. 2017) (granting summary judgment on an ICFA claim because the plaintiff "offered no evidence . . . establishing that his credit score was diminished or that he paid excessive or unnecessary interest"). Moreover, the record here contains no evidence, as required, that "any third-party user obtained, let alone acted upon, the false information in Plaintiffs' credit reports." *See Reeder v. HSBC USA, Inc*., 2009 WL 4788488, at *13–14 (N.D. Ill. Dec. 8, 2009) (ICFA claim did not even survive past the pleadings for failure to allege "that any third-party user obtained, let alone acted upon, the false information in Plaintiffs' credit reports"). Accordingly, summary judgment should be entered in favor of Wells Fargo on this element of Plaintiffs' alleged damages.

## V.    CONCLUSION

Plaintiffs cannot adduce the required evidence establishing a causal connection between their claimed injuries and Wells Fargo's alleged wrongdoing in denying their August 2010 trial modification. Nor can they establish their entitlement to certain damages they claim

or an unfair act under the ICFA, as they must. Plaintiffs cannot prove these essential elements of their claim, so summary judgment must be entered in favor of Wells Fargo.

For these reasons, Wells Fargo respectfully requests summary judgment be entered in its favor and for any such further relief that this Court deems just and proper.

Dated: June 10, 2022                    Respectfully submitted,


                                        */s/ Angela A. Smedley*

                                        Angela A. Smedley (*pro hac vice*)
                                        Winston & Strawn LLP
                                        200 Park Avenue
                                        New York, NY 10166
                                        Phone:  212-294-5348
                                        Fax:  212-294-4700
                                        Email:  asmedley@winston.com

                                        Shawn R. Obi (*pro hac vice*)
                                        Winston & Strawn LLP
                                        333 South Grand Avenue
                                        Los Angeles, CA 90071
                                        Phone: 213-615-1700
                                        Fax: 213-615-1750
                                        Email: SObi@winston.com


                                        Christopher Parker
                                        Winston & Strawn LLP
                                        35 West Wacker Drive
                                        Chicago, IL 60601
                                        Phone:  312-558-8085
                                        Fax:  312-558-5700
                                        Email:  cparker@winston.com


                                        *Attorneys for Wells Fargo Bank, N.A*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of June, 2022, she electronically filed the foregoing Memorandum of Law In Support of Defendant's Motion For Summary Judgment with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Rusty A. Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
(312) 525-2166
lopez@robsonlopez.com

Nicholas H. Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

*Attorneys for Plaintiff*

/s/ *Shawn R. Obi*

1