# EXHIBIT 24



*Commitment to Customer Program*

## Risk & Materiality Assessment Template

Instructions: The purpose of the Risk and Materiality Assessment is to assist in the determination of whether the issue qualifies as a Commitment to Customer Issue, recognizing that this Policy and the Corporate Program in general are not intended to address issues of a de minimis nature. The Steering Committee will establish Commitment to Customer Issue risk and materiality thresholds. On at least an annual basis, these thresholds will be reviewed and subject to adjustment, as appropriate. This template may be used to perform omissions testing. Completion of section A will assist in the determining if the issue at hand qualifies as a C2C issue. The user will be prompted to complete the risk and materiality sections (B-F), as necessary. Attributes marked with an asterisk and answered affirmatively require timely notification be provided to the CFPE.

Note that this assessment methodology will be approved by the Commitment to Customer Steering Committee.

### Risk & Materiality Assessment

| # | Assessment Attribute | | Attribute Type | Attribute Sub-Type | Risk Type | Response | Risk Level Score | Weight per Question | Response Description (Required) | Supporting Documentation |
|---|---|---|---|---|---|---|---|---|---|---|
| **A. Qualified C2C Issue Definition** | | | | | | | | | | |
| 1 | Does the issue appear to have an actual or perceived negative impact on affected consumers (i.e. an individual, including an individual with a Representative, who maintains, is offered, or applies for a financial product or service from Wells Fargo for personal, family, or household purposes), or applicants or customers who are governed by the jurisdiction of the CFPB through the Enumerated Consumer Financial Laws? | Perceived impact may mean that WF does not believe an error occurred but an outside party or regulator may believe the negative impact exists and we are remediating due to that perception. | Definition | - | N/A | **Yes** | Continue to Next Question | N/A | A examination was initiated to review customers who were denied a loan modification due to the process used to estimate attorney fees. The Home Preservation Application (HPA) tool used by the Wells Owned, Bank and Private, FNMA, FHLMC and VA portfolios was placed into production April 13, 2010 with logic to utilize a State Fee Matrix that provided maximum allowable foreclosure attorney fees and costs.**As of 3/20/2018, it was determined that VA is out of scope as they did not utilize the state fee matrix. The HPA tool was automated to pull in attorney fees that were paid at the time of the decision from MSP screen (DDCH) and added them to the maximum allowable from a state matrix. Potential Impact to the customer: This practice potentially over stated the dollar amount for recoverable fees that were incurred at the time of the decision, which could have created an HTI impact making the payment unaffordable and potentially declining for either affordability and/or NPV. The fee matrix usage was eliminated from the HPA tool on 10/20/2015. | |
| 2 | Does the issue appear to require historical remediation related to past events? | If WF can take action to prevent the negative impact, it is not a C2C issue. | Definition | - | N/A | **Yes** | Continue to Next Question | N/A | Yes. The State Fee Matrix was utilized within the HPA tool from April 13, 2010 through October 20, 2015. | |
| 3 | Does the issue appear to be systemic in nature (*i.e.*, affecting multiple consumers due to one or more common root causes)? | This does not necessarily mean caused by a system failure. It means that multiple customers are impacted by the same failure. | Definition | - | N/A | **Yes** | Continue to Next Question | N/A | Yes, multiple consumers have been impacted by this issue. | |
| 4 | Does the issue appear to be within the control of Wells Fargo or parties under Wells Fargo's control (for example, third-party service providers)? | Excludes BCP incidents or other external forces. | Definition | - | N/A | **Yes** | C2C Issue - Complete Sections B-F | N/A | Yes, this issue is within the control of Wells Fargo. | |
| **B. Materiality Assessment** | | | | | | | | | | |
| 1 | Does the issue appear to affect more than XXX accounts? **Use the Risk and Materiality Thresholds listed for your business below.** | | Materiality | | Operational Risk | No | Continue to Next Question | N/A | Validated by Wells Fargo Audit Services (WFAS) and RECOR Data Validation Team (DVT). | |
| 2 | Does the issue involve potential remediation equal to or greater than $XXXXXX in total? **Use the Risk and Materiality Thresholds listed for your business below.** | | Materiality | | Financial Risk | No | Continue to Risk Assessment | N/A | Remediation amount is below threshold. | |
| | **Business Group** | | **Dollar Threshold (millions)** | **Account Threshold (thousands)** | | | | | | |



*Together we'll go far*

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | | | | **Risk & Materiality Assessment** | | | | | | |
| 4 | # | Assessment Attribute | | Attribute Type | Attribute Sub-Type | Risk Type | Response | Risk Level Score | Weight per Question | Response Description (Required) | Supporting Documentation |
| 14 | | Community Banking Group (CBG) | | $ 1.5 | 25.0 | | | | | | |
| 15 | | Consumer Lending Group (CLG)<br>    Real Estate Lending (RE)<br>    Consumer Credit Solutions (CCS)<br>    Dealer Services (DS) | | $ 10.0<br>$ 5.0<br>$ 5.0 | 50.0<br>25.0<br>25.0 | | | | | | |
| 16 | | Wealth Brokerage and Retirement (WBR) | | $ 5.0 | 5.0 | | | | | | |
| 17 | | Wholesale (WHSL) | | $ 5.0 | 25.0 | | | | | | |
| 18 | **C.  Risk Assessment - Identification Source** | | | | | | | | | | |
| 19 | 1 | Was the issue identified through a regulatory examination, inquiry and/or complaint?* | The inquiry or complaint would also have come from a regulator, not through standard internal processes. | Risk | Identification Source | Regulatory Risk | No | 0 | 3 | No, the issue was not identified through a regulatory examination, inquiry or complaint. The issue was discovered while an assessment was taking place for a separate issue within Settlement. | |
| 20 | 2 | Was the issue identified by a third-party business partner and/or government-sponsored entity (GSE) with which and/or to whom Wells provides services (*e.g.*, mortgage loan servicing, joint marketing, etc.)? | | Risk | Identification Source | Third-Party Risk | No | 0 | 1 | No, the issue was not identified by a third party business provider or a GSE. | |
| 21 | 3 | Was the issue identified by a third-party service provider? | | Risk | Identification Source | Third-Party Risk | No | 0 | 1 | No, the issue was not identified by a third party service provider. | |
| 22 | 4 | Was the issue identified through a high-profile channel (*e.g.*, news media, social media, etc.)? | | Risk | Identification Source | Reputational Risk | No | 0 | 1 | No, the issue was not identified through a high-profile channel. | |
| 23 | 5 | Was the issue identified through a consumer lawsuit and/or other legal action?* | | Risk | Identification Source | Legal Risk | No | 0 | 3 | No, the issue was not identified through a consumer lawsuit or other legal action. | |
| 24 | 6 | Was a similar issue identified in regulatory action taken against another institution?* | Answer yes if our remediation is driven in whole or in part by the action taken at the other institution. | Risk | Identification Source | Regulatory Risk, Legal Risk | No | 0 | 3 | No, we are not aware of a similar issue being identified against another financial institution. | |
| 25 | **D.  Risk Assessment - Affected Population** | | | | | | | 0.00 | 12.00 | | |
| 26 | 1 | Does the issue appear to affect high-risk consumers, protected classes, or vulnerable populations (e.g., service members, loss mitigation/workout mortgage borrowers, foreclosures, etc.), or does the issue appear to involve potential discrimination and/or pose potential Fair Lending-related risks?* | Answer yes if the nature of the issue uniquely or disproportionately impacts high risk consumers. | Risk | Affected Population | Reputational Risk | **Yes** | 3 | 3 | Yes, this issue impacts Loss Mitigation and Foreclosure loans. | |
| 27 | 2 | Does the issue appear to affect consumers nation-wide (and/or globally)? | | Risk | Affected Population | N/A | **Yes** | 1 | 1 | Yes, this issue does affect consumers nation-wide. | |
| 28 | 3 | Does the issue appear to affect consumers across multiple products? | | Risk | Affected Population | N/A | No | 0 | 1 | No, the issue is limited to Home Lending Loss Mitigation products. | |

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | | | | | Risk & Materiality Assessment | | | | | |
| 4 | # | Assessment Attribute | | Attribute Type | Attribute Sub-Type | Risk Type | Response | Risk Level Score | Weight per Question | Response Description (Required) | Supporting Documentation |
| 29 | 4 | Does the issue appear to affect consumers across multiple lines of businesses (LOBs) and/or service delivery channels? | To cross LOB's, the issue must extend beyond Home Lending. | Risk | Affected Population | N/A | No | 0 | 1 | No, the issue is limited to Home Lending. | |
| 30 | E. Risk Assessment - Nature of Issue | | | | | | | 4.00 | 6.00 | | |
| 31 | 1 | Does the issue appear to be a repeat issue? | Repeat issue means that the same issue has recurred despite corrective action to prevent and NEW | Risk | Nature of Issue | Operational Risk | No | N/A | N/A | No, this is not a repeat issue. | |
| 32 | 2 | Does the issue appear to be attributable (in whole or part) to a third-party service provider? | Respond yes if an error by a third party was a driver for the remediation. | Risk | Nature of Issue | Third-Party Risk | No | 0 | 1 | No, the issue is not attributable to a 3rd party service provider. | |
| 33 | 3 | Does the issue appear to be related to a high-risk product or service (e.g., credit card add-on product, mortgage loan modification, special purpose credit programs, etc.)?* | There are no high risk products identified by Home Lending, If the issue relates to modifications, answer question D1 (High | Risk | Nature of Issue | Reputational Risk, Regulatory Risk | No | 0 | 3 | There are no high risk products identified by Home Lending. | |
| 34 | 4 | Does the issue appear to involve potential privacy and/or information security-related risks? | | Risk | Nature of Issue | Regulatory Risk | No | 0 | 1 | No, the issue does not appear to involve privacy and/or information security related risks. | |
| 35 | 5 | Does the issue appear to involve potential non-compliance with consumer protection laws or regulations, including those enumerated consumer financial laws applicable to the business?* | Only Law Department can state that a violation has occurred. LOB may respond No if there are clearly no compliance aspects of the issue after consulting with RECOR. | Risk | Nature of Issue | Regulatory Risk | Yes | 3 | 3 | [Redacted - WP & ACP] | |
| 36 | 6 | Does the issue appear to involve potential non-compliance with consumer protection laws or regulations, including those enumerated consumer financial laws applicable to the business?* | Partner with Investor Services or Agency Relations if a violation is suspected. | Risk | Nature of Issue | Third-Party Risk, Legal Risk | Yes | 1 | 1 | [Redacted - WP & ACP] | |
| 37 | 7 | Does the issue appear to involve potential non-compliance with consumer protection laws or regulations, including those enumerated consumer financial laws applicable to the business?* | Answer yes if the error cannot be cured due to missed timing or other factor that cannot be corrected after the fact. | Risk | Nature of Issue | Operational Risk | No | 0 | 2 | [Redacted - WP & ACP] | |
| 38 | 8 | Does the issue appear to pose potential serious reputation risk to the Bank? | Consider Rep Risk questions C4, D1, and E3. If those are Yes, then Sponsor should consider identifying as serious risk. | Risk | Nature of Issue | Reputational Risk | No | N/A | N/A | No serious reputational risk. | |
| 39 | F. Risk Assessment - Corrective Action and Remediation | | | | | | | 4.00 | 11.00 | | |

| # | Assessment Attribute | | Attribute Type | Attribute Sub-Type | Risk Type | Response | Risk Level Score | Weight per Question | Response Description (Required) | Supporting Documentation |
|---|---|---|---|---|---|---|---|---|---|---|
|  | Risk & Materiality Assessment | | | | | | | | | |
| 1 | Are there any known record retention, data integrity or other operational challenges associated with obtaining data and calculating potential financial restitution?* | | Risk | Corrective Action and Remediation | Financial Risk, Operational Risk | No | 0 | 3 | No record retention or data integrity challenges. | |
| 2 | Does the issue involve potential corrective action that may require an extended period of time to complete (with or without a feasible interim solution)?* | This should consider your final corrective action, not long-term efficiency enhancements that are release dependent. | Risk | Corrective Action and Remediation | Operational Risk | No | 0 | 3 | No, the state fee matrix is no longer in use. | |
| G. Conclusion | | | | | | | 0.00 / 8.00 | 6.00 / 35.00 | | |
| 1 -- Is this a C2C Issue? | | | Yes | | | | | | | |
| 2 - Assessed Materiality Level | | | Low | | | | | | | |
| 3 - Assessed Risk Level | | | Low | | | | | | | |
| 4- Is this Issue subject to Governance Working Group acceptance? | | | No | | | | | | | |
| 5 - Notify CFPE?* | | | Yes | | | | | | | |
| Legend | | | | | | | Executed By | | Cathy Gutierrez / Jason DePino | |
| Risk Level | | | Risk | | | | Date | | 4/5/18 | |
| High | | | 20-35 | | | | LOB Approver | | Brian Spensley | Approval |
| Moderate | | | 10-19 | | | | Date | | 4/11/18 | |
| Low | | | ≤9 | | | | RECOR Approver | | Brian Dietz | Approval |
| | | | | | | | Date | | 4/18/18 | |

| Interested Parties Included: | | | | |
|---|---|---|---|---|
| Name | Functional Title | Email | Participated Y/N | |
| Spensley, Brian | LoB Approver | Brian.A.Spensley@wellsfargo.com | | |
| Thompson, Jill | Lending Officer, Default Underwriting Escalation Team – Primary Business Contact | jillthompson@wellsfargo.com | Y | |
| Archer, Kari L. | Business Support Consultant, Default Underwriting Escalation Team | Kari.L.Archer@wellsfargo.com | Y | |
| Gutierrez, Cathy | Default Customer Impact Resolution (DCIR) Incident Owner | cathy.gutierrez@wellsfargo.com | Y | |
| Depino, Jason A. | Default Customer Impact Resolution (DCIR) Incident Owner | Jason.A.Depino@wellsfargo.com | Y | |
| Rodriguez, Ruby | Servicing Operational Risk Management - CIT Analyst | ruby.rodriguez@wellsfargo.com | Y | |

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | | | | **Risk & Materiality Assessment** | | | | | | |
| 4 | # | Assessment Attribute | | Attribute Type | Attribute Sub-Type | Risk Type | Response | Risk Level Score | Weight per Question | Response Description (Required) | Supporting Documentation |
| 65 | | Alvarez, Adam | Customer Excellence Data Analytics (CEDA) | adam.alvarez@wellsfargo.com | | Y | | | | | |
| 66 | | Bothwell, Katherine M. | RECOR | Katherine.M.Bothwell@wellsfargo. | | | | | | | |
| 67 | | Camp, James | Operational Risk Consultant, Settlement | james.t.camp@wellsfargo.com | | Y | | | | | |
| 68 | | Cannady, Annette | Customer Service | Annette.Cannady@wellsfargo.com | | | | | | | |
| 69 | | Cortese, Ralph V. | RECOR WFHL FCRA Program Compliance Manager | Ralph.V.Cortese@wellsfargo.com | | | | | | | |
| 70 | | Drzewiecki, Kathleen | Business Support Consultant, BK | kathleen.m.drzewiecki@wellsfargo.com | | | | | | | |
| 71 | | Edwardson, Jessica M. | Operational Risk Consultant, Settlement | jessica.m.edwardson@wellsfargo.com | | Y | | | | | |
| 72 | | Giroux, Chelsea | Foreclosure | chelsea.giroux@wellsfargo.com | | | | | | | |
| 73 | | Good, Todd | Customer Care and Recovery Group (CCRG) | todd.a.good@wellsfargo.com | | | | | | | |
| 74 | | Graves, Darla J. | Investor Reporting FHLMC | Darla.J.Graves@wellsfargo.com | | | | | | | |
| 75 | | Guttry, Tammy | Operational Risk Consultant, CAMO | Tammy.A.Guttry@wellsfargo.com | | | | | | | |
| 76 | | Hohenstern, Kimberly | Customer Service | kimberly.hohenstern@wellsfargo. | | | | | | | |
| 77 | | Hutzell, Travis | Customer Excellence Data Analytics (CEDA) | travis.hutzell@wellsfargo.com | | Y | | | | | |
| 78 | | Johnson, Lynne | MHA Operation Reporting | lynne.m.johnson@wellsfargo.com | | | | | | | |
| 79 | | Johnson, Tonya | Paralegal | tonya.johnson2@wellsfargo.com | | | | | | | |
| 80 | | Kohls, Bob | Legal | bobkohls@wellsfargo.com | | | | | | | |
| 81 | | Ossian, Brandy | Finance | brandy.ossian@wellsfargo.com | | | | | | | |
| 82 | | Parker, Linda G | ORC Credit Bureau Reporting | LINDA.G.PARKER@wellsfargo.com | | | | | | | |
| 83 | | Rivera, Ramon | Home Preservation Specialists (HPS) | ramon.rivera@wellsfargo.com | | | | | | | |
| 84 | | Rodriguez, Ruby | CIT Analyst | ruby.rodriguez@wellsfargo.com | | Y | | | | | |
| 85 | | Simpson, Roger | ORC Credit Bureau Reporting | roger.simpson@wellsfargo.com | | | | | | | |
| 86 | | Solis, Gerry | Customer Service | gerry.solis@wellsfargo.com | | | | | | | |
| 87 | | Vaske, Lori | COE Communications | lori.vaske@wellsfargo.com | | | | | | | |
| 88 | | Williams, Julie T. | Customer Service | julie.williams@wellsfargo.com | | Y | | | | | |
| 89 | | Nicole Nichols | | | | Y | | | | | |
| 90 | | Jeff Liggett | | | | Y | | | | | |