# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EDUARDO GARCIA and JULIA GARCIA, | Case No.: 1:20-cv-02402 |
| Plaintiffs, | |
| vs. | Honorable Rebecca R. Pallmeyer |
| WELLS FARGO BANK, N.A., | |
| Defendant. | JURY TRIAL DEMANDED |

## PRETRIAL ORDER

This matter having come before the court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule 16"), and Nick Wooten, Rusty A. Payton, and Salvador J. Lopez, having appeared as counsel for Plaintiffs and Amanda Groves, Scott Ahmad, Angela A. Smedley, and Christopher Parker, having appeared as counsel for Defendant, the following actions were taken:

**(1)** This is an action for damages alleging Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Defendant denies the claims and asserts various defenses. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1332(a) and 1367. Jurisdiction is not disputed.

**(2)** The following stipulations and statements were submitted and are made a part of this Order:

**(a)** a comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in jury trials, may be read to the jury by the court or any party);

### Stipulated Undisputed Facts

1. Plaintiffs Eduardo Garcia ("Eduardo") and Julia Garcia ("Julia") (collectively, the "Garcias") are residents of Illinois.

2. Defendant Wells Fargo is a national banking association with its main office located in Sioux Falls, South Dakota, and its principal place of business in San Francisco, California.

3. The Garcias purchased the property at 407 Beach Avenue, LaGrange Park, Illinois 60526 for $203,000.00 in 2002.

1

4.        On or about January 26, 2006, the Garcias refinanced their mortgage loan with First NLC Financial Services, LLC.

5.        The note for the refinance included an initial interest rate of 8.1400% with the first payment of $1,658.11 due on March 1, 2006. The note provided that the interest rate "may change on the first day of February 2008, and on that day every sixth month thereafter" and could increase up to 15.14%.

6.        In May 2006, America's Servicing Company, a division of Wells Fargo, first became the mortgage servicer for the Garcias' loan.

7.        In March 2008, pursuant to their note with First NLC Financial Services, the Garcias' adjustable interest rate increased from 8.14% to 11.09625%, and their monthly mortgage payments increased from $1,658 to approximately $3,000.

8.        In February 2009, the Home Affordable Modification Program, known as HAMP, was created. HAMP was intended to modify loans for borrowers who could make a modified payment under certain criteria announced by the Treasury Department.

9.        On April 13, 2010, Wells Fargo placed into use the Home Preservation Application tool ("HPA tool").

10.      The HPA tool had a calculation error programmed into its logic which caused the dollar amount for recoverable attorneys' fees to be erroneously overstated for certain borrowers.

11.      On April 22, 2010, the Garcias applied for a HAMP trial loan modification.

12.      The HPA tool error caused Wells Fargo to erroneously deny the Garcias' HAMP trial loan modification on August 24, 2010.

13.      The trial loan modification would have provided a monthly payment of $1,348.48 if it had been granted.

14.      The trial loan modification was not a permanent modification. The Garcias would have needed to take additional steps, including completing three trial payments to be eligible for a permanent loan modification.

15.    On May 26, 2011, the Garcias filed for bankruptcy under Chapter 7 of the Bankruptcy Code, Case No. 11-22208, Northern District of Illinois.

16.    In July and November 2019, the Garcias received checks totaling $24,500 from Wells Fargo.

**<u>Stipulated Case Description</u>**

Plaintiffs' Proposal:

This trial involves a dispute about how Wells Fargo serviced (or handled) the Garcias' mortgage loan account. The jury in this action will be called upon to decide this dispute.

Defendant's Proposal:

Wells Fargo contends that Plaintiffs' description is overbroad and instead proposes the following description, which Wells Fargo believes is aligned with what is in dispute in this matter:

This trial involves a dispute about whether Wells Fargo's mistaken denial in August 2010 of a trial loan modification violated the Illinois Consumer Fraud Act and proximately caused Plaintiffs' injury. Wells Fargo denies these allegations.

**(b)** except for rebuttal exhibits and demonstratives, the Parties' exhibits are contained in Exhibit List A and B, as follows:

**<u>Exhibit Lists</u>:**

**The Parties have agreed that as to any exhibits where there is no objection to admissibility, there are no objections to authenticity.**

Exhibit "A" contains the Garcias' proposed exhibit list along with Wells Fargo's objections as Garcia 1-104.

Exhibit "B" contains Wells Fargo's proposed exhibit list along with the Garcias' objections as WF1-142.01.

**(c)** the following is a list or lists of names of the potential witnesses to be called by each party, with a statement of any objection to calling, or to the qualifications of, any witness identified on the list;

3

**Plaintiffs' Witness List**

As a threshold matter, Wells Fargo objects that Plaintiffs list at least 18 witnesses they intend to call, in addition to at least one witness they "may" call. In light of the fact that the parties informed the Court that the trial is "expected to be a five-day jury trial" (Dkt. No. 156), calling at least 18 witnesses for Plaintiffs alone is excessive and not feasible to accomplish in the 5-day time frame. In addition, Wells Fargo requests that the parties get equal time to make their presentations.

**Witnesses who will be called**:

1. **Eduardo Garcia** - Eduardo will testify as to his actions with respect to the mortgage loan, loan modification, and the allegations in the complaint, Wells Fargo's conduct and actions with respect to the mortgage loan, loan modification, and allegations in the complaint, and the effect of Wells Fargo's conduct on him, Julia, and their family.

   **Wells Fargo's Position:** No objection.

2. **Julia Garcia** - Julia will testify as to her actions with respect to the mortgage loan, loan modification, and the allegations in the complaint, Wells Fargo's conduct and actions with respect to the mortgage loan, loan modification, and allegations in the complaint, and the effect of Wells Fargo's conduct on her, Eduardo, and their family.

   **Wells Fargo's Position:** No objection.

3. **Byron Garcia** - Byron Garcia is the son of Eduardo and Julia. Byron observed his parents' physical and emotional health during the relevant time period and how Wells Fargo's conduct affected his mother and father, and the Garcia family.

   **Wells Fargo's Position:** No objection.

4. **Miriahm Garcia** - Miriahm Garcia is the daughter of Eduardo and Julia. Miriahm observed her parents' physical and emotional health during the relevant time period and how Wells Fargo's conduct affected her mother and father, and the Garcia family.

   **Wells Fargo's Position:** No objection.

5. **Rosa Garcia** - Rosa Garcia is Julia's sister. Rosa observed the Garcias during the relevant time period and will testify to what the Garcias were going through with Wells Fargo and their attempts to keep their Family Home.

   **Wells Fargo's Position:** Wells Fargo objects to Rosa Garcia's testimony as being cumulative and/or duplicative of the testimony of the other members of the Garcia family and thus unnecessary for a 5-day trial.

6. **Susan Vega** - Susan Vega is a friend and was Julia's co-worker prior to and during the relevant time. Ms. Vega will testify as to Julia's work ethic at Alivio. Ms. Vega observed Julia during the relevant time and will testify to her observations of Julia's physical and emotional health from before the Garcias' issues with Wells Fargo through and after the Garcias' loss of their Family Home.

   **Wells Fargo's Position:** Wells Fargo objects to any testimony regarding Mrs. Garcia's "work ethic" as irrelevant.

7. **Elena Briseño** - Elena Briseño is a friend and was Julia's co-worker prior to and during the relevant time. Ms. Briseño will testify as to Julia's work ethic at Alivio. Ms. Briseño observed Julia during the relevant time and will testify to her observations of Julia's physical and emotional health from before the Garcias' issues with Wells Fargo through and after the Garcias' loss of their Family Home.

   **Wells Fargo's Position:** Wells Fargo objects to any testimony regarding Mrs. Garcia's "work ethic" as irrelevant.

8. **Martha Polo Koehler** - Martha Polo Koehler has been a spiritual, academic, and personal counselor, and Julia's supervisor during the relevant time. Ms. Koehler will testify as to Julia's work ethic at Alivio. Ms. Koehler observed Julia during the relevant time and will testify to her observations of Julia's physical and emotional health from before the Garcias' issues with Wells Fargo through and after the Garcias' loss of their Family Home. Ms. Koehler will testify to her observations of Julia and the stress she was under when the Garcias were trying to save their home and after they lost their home to Wells Fargo. Ms. Koehler will testify to the importance for Latinos to own their own house and how the Latinos' house payment is the main expense and it is a priority for Latinos to make their house payment.

**Wells Fargo's Position:** Wells Fargo objects to any testimony regarding Mrs. Garcia's "work ethic" as irrelevant. Wells Fargo further objects to any testimony on "the importance for Latinos to own their own house and how the Latinos' house payment is the main expense and it is a priority for Latinos to make their house payment" as irrelevant, improper opinion, and unduly prejudicial.

9. **Marco Garduño** is a friend and was Julia's co-worker prior to and during the relevant time. Mr. Garduño will testify as to Julia's work ethic at Alivio. Mr. Garduño observed Julia during the relevant time and will testify to his observations of Julia's physical and emotional health from before the Garcias' issues with Wells Fargo through and after the Garcias' loss of their Family Home.

**Wells Fargo's Position:** Wells Fargo objects to Marco Garduño's testimony as being cumulative and/or duplicative of the testimony of Mrs. Garcia's other former co-workers, including Ms. Vega, Ms. Briseño, and Ms. Koehler, and thus unnecessary for a 5-day trial. Wells Fargo further objects to any testimony regarding Mrs. Garcia's "work ethic" as irrelevant.

10. **Anita Pillai, M.D.** - Dr. Pillai is the Garcias' primary care physician. Dr. Pillai will testify as to her observations, diagnosis, treatment, care, and prognosis for Julia, including prescriptions issued during the course of her treatment and care of Julia. Dr. Pillai will testify that at each appointment with any member of the Garcia family, but primarily with Julia Garcia, that she undertook a differential diagnosis of her patient based upon her observations, examination, and her patient's self-reported symptoms and issues. Dr. Pillai is expected to provide testimony on her treatment of Julia Garcia's various medical issues, (including her medication and treatment regimen), and her personal observations, impressions, and opinions of her patient made during her treatment and care of Julia Garcia, and any other member of the Garcia family, in accordance with the voluminous medical records.

**Wells Fargo's Position:** Wells Fargo objects to the extent Dr. Pillai attempts to offer expert opinion, as Plaintiffs have not designated her as an expert herein. Wells Fargo further objects to the extent Dr. Pillai intends to testify on the extent to which Wells Fargo allegedly caused any of Plaintiffs' medical conditions, or the extent to which she would attribute any of those conditions to Wells Fargo. At Dr. Pillai's deposition, she testified that she is "not an expert" and "cannot comment" on the extent to which she could "attribute" the

Garcias' conditions to Wells Fargo. *See* Pillai Tr. at 94:9-95:5. Dr. Pillai also cannot testify to causation because (1) she did not consider the cause of Plaintiffs' injuries during her course of treatment and (2) did not submit a report opining on the cause of Plaintiffs' injuries. *See Meyers v. National Railroad Passenger Corp. (Amtrak)*, 619 F.3d 729, 734-35 (7th Cir. 2010) ("a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment," is "required to submit an expert report in accordance with Rule 26(a)(2)"); *Blanton v. RoundPoint Mortg. Servicing Corp.*, 825 F. App'x 369, 373-74 (7th Cir. 2020) (rejecting argument that plaintiffs' treating physician could provide admissible evidence on causation in ICFA case "because Dr. Bice did not make a determination about the causation of [plaintiff]'s injury at the time he treated [plaintiff]" and "did not submit an expert report").

11. **Robert Ferguson** - Robert Ferguson is a Wells Fargo corporate representative. Mr. Ferguson was a lending manager in litigation and a team member in the litigation support area for Wells Fargo during the time Wells Fargo serviced the Garcias' mortgage loan. Mr. Ferguson is now a manager for the litigation support area. Mr. Ferguson has information as to Wells Fargo's conduct and handling of the Garcias' account.

    **Wells Fargo's Position:** Wells Fargo objects to Plaintiffs' inclusion of Mr. Ferguson on their witness list, as he resides over 100 miles from the Court and thus is outside the subpoena power of the Court.[1] Wells Fargo further objects to Plaintiffs' characterization of Mr. Ferguson's professional history.

12. **Carmen Bell** - Carmen Bell is a Wells Fargo corporate representative. Ms. Bell was a senior vice president for Wells Fargo ("Head, Wells Fargo Home Mortgage Customer Contact and Default Decisions") during the time Wells Fargo Serviced the Garcias' mortgage loan, and is currently a senior vice president. Ms. Bell has information as to Wells Fargo's conduct and handling of the Garcias' account, and information as to the Wells Fargo's HPA Tool and

---

[1] For all witnesses who appear on both Plaintiffs' and Defendant's witness lists, including Mr. Ferguson, the parties have agreed to a procedure for such witnesses. In particular, if Plaintiffs' counsel calls a Wells Fargo employee or expert on Wells Fargo's witness list at trial, Wells Fargo can do direct examination, not limited to the issues Plaintiffs' counsel raises, as well as a re-direct. This way, witnesses should not need to testify twice (once by each party). This same arrangement applies for Plaintiffs, if any of their family members or other fact witnesses on Plaintiffs' witness list are called by Wells Fargo.

Wells Fargo's erroneous denials of loan modifications. Ms. Bell was "primarily responsible for determining impacted customers and the remediation plan for the issues described in the [*Hernandez*] complaint."

**Wells Fargo's Position:** Wells Fargo objects to Plaintiffs' inclusion of Ms. Bell on their witness list, as she resides over 100 miles from the Court and thus is outside the subpoena power of the Court. Wells Fargo further objects to Plaintiffs' characterization of Ms. Bell's professional history and knowledge basis.

13. **WF 30(b)(6) witness** - Wells Fargo's corporate representative will testify on those topics for trial listed in the Garcias' trial subpoena to Wells Fargo.

    **Wells Fargo's Position:** Wells Fargo objects because Plaintiffs' trial subpoena to Wells Fargo is improper and unsupported by the Federal Rules. There is no 30(b)(6) witness at trial; 30(b)(6) witnesses are limited to depositions. Wells Fargo further objects that Plaintiffs' topics listed on the purported trial subpoena are overbroad and include irrelevant topics that were not listed on Plaintiffs' 30(b)(6) deposition notice, including "Wells Fargo's gross revenue for 2022" and "explain the term net interest income as used in Wells Fargo's SEC reporting." Wells Fargo plans to move to quash the trial subpoena. However, Wells Fargo will bring a corporate representative to trial.

14. **William L. Conte, MD, MS** - Dr. Conte was retained by Wells Fargo and conducted an Independent Medical Examination (physical) of Julia Garcia. Dr. Conte is a physician practicing in Merrillville, Indiana.

    **Wells Fargo's Position:** No objection.

15. **David E. Hartman, PhD, MS, ABN, ABPP** - Dr. Hartman was retained by Wells Fargo and conducted Independent Medical Examinations (mental) of Julia Garcia and Eduardo Garcia. Dr. Hartman is a clinical psychologist and neuropsychologist and is not a medical doctor.

    **Wells Fargo's Position:** No objection.

16. **Peter Ross** - Peter Ross is alleged to be an expert in banking hired by Wells Fargo to testify regarding the reasonableness of Wells Fargo's actions in this case.

**Wells Fargo's Position:** No objection to Mr. Ross as a witness. Wells Fargo objects to the characterization of Mr. Ross's engagement for Wells Fargo.

17. Any individual designated by Wells Fargo as its corporate representative, even if for appearance purposes only, or any employees of Wells Fargo on Wells Fargo's witness list.

   **Wells Fargo's Position**: Wells Fargo objects to this category as unnecessary. Plaintiffs will have the opportunity to cross-examine any witnesses on Wells Fargo's witness list.

18. Any witness needed solely for rebuttal.

   **Wells Fargo's Position**: No objection.

**Witnesses who may be called**:

19. Any person listed on Wells Fargo's witness list but not named on the Garcias' witness list.

**Wells Fargo's Position:** Wells Fargo objects to this category as unnecessary. Plaintiffs will have the opportunity to cross-examine any witnesses on Wells Fargo's witness list.

**Witnesses whose testimony Plaintiffs will be presented by deposition or other testimony**:

20. **Diane Young** - Diane Young was a 30(b)(1) deponent in the *Hernandez* matter. The Garcias may present portions of Ms. Young's deposition transcript in *Hernandez*, including exhibits, for testimony, impeachment, to authenticate Wells Fargo's business records, or for rebuttal purposes.

   **Wells Fargo's Position:** Wells Fargo objects that any designations of Ms. Young's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial for any purpose if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Young is not unavailable pursuant to FRE 804(a), even though she resides over 100 miles from the Court and thus is outside the Court's subpoena power.

21. **Beena Menon** - Beena Menon was a 30(b)(1) deponent in the *Hernandez* matter. The Garcias may present portions of Ms. Menon's deposition transcript in *Hernandez*, including exhibits, for testimony, impeachment, to authenticate Wells Fargo's business records, or for rebuttal purposes.

    **Wells Fargo's Position:** Wells Fargo objects that any designations of Ms. Menon's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial for any purpose if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Menon is not unavailable pursuant to FRE 804(a), even though she resides over 100 miles from the Court and thus is outside the Court's subpoena power.

22. **Susan Crawford** - Susan Crawford was a 30(b)(1) deponent in the *Hernandez* matter. The Garcias may present portions of Ms. Crawford's deposition transcript in *Hernandez*, including exhibits, for testimony, impeachment, to authenticate Wells Fargo's business records, or for rebuttal purposes.

    **Wells Fargo's Position:** Wells Fargo objects that any designations of Ms. Crawford's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial for any purpose if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Crawford is not unavailable pursuant to FRE 804(a), even though she resides over 100 miles from the Court and thus is outside the Court's subpoena power.

23. **Wells Fargo** - The Garcias may use affidavits or deposition transcripts of Wells Fargo representatives or employees, not listed above, from *Hernandez* to authenticate its business records or for rebuttal purposes.

    **Wells Fargo's Position:** Wells Fargo objects to this "witness" *en toto*. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial for any purpose if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Plaintiffs have not identified any deponents from the *Hernandez* action that are unavailable pursuant to FRE 804(a). Moreover, pursuant to LR16.1.4. - Final Pretrial Order Form, Plaintiffs are required to identify "designated page and line

numbers to be read into evidence" for any deposition testimony they plan to designate.

24. **John G. Stumpf** - John G. Stumpf testified at a hearing before the Committee on Financial Services, U.S. House of Representatives, on September 29, 2016. The Garcias may use portions of the transcript and video from that hearing in lieu of Mr. Stumpf's deposition and live testimony, and for rebuttal purposes.

**Wells Fargo's Position:** Wells Fargo objects to this testimony on a number of grounds. Wells Fargo objects that it is unaware of any Federal Rule of Civil Procedure or Evidence that would provide that Plaintiffs can use Congressional testimony "in lieu of …. deposition and live testimony," even though Mr. Stumpf does not reside within 100 miles of the Court and thus is not within its subpoena power. Wells Fargo objects that the video of testimony, which Plaintiffs designated as an exhibit, spans over 4 hours, so any attempt to excerpt it would be tantamount to cherrypicking sound bites without the full context. Wells Fargo further objects that this testimony is irrelevant because it occurred in September 2016 – years after the relevant events in the action, including the August 2010 erroneous denial and the February 2011 foreclosure. Wells Fargo further objects that this testimony was conducted for various purposes unrelated to this action. Wells Fargo further objects that this testimony is unduly prejudicial, confuses the issues, would be misleading to the jury, and would waste time. Wells Fargo further objects that this exhibit was not identified during discovery. Wells Fargo further objects that this exhibit should be barred from the action because Plaintiffs attempted to produce it on May 25, 2023, almost a year after the discovery deadline and less than a month before trial. Wells Fargo further objects to the authenticity of the exhibit. Wells Fargo further objects that this testimony is hearsay and thus is inadmissible. Wells Fargo also intends to file a motion in limine to exclude all Congressional testimony from the trial on these grounds.

25. **Timothy J. Sloan** - Timothy J. Sloan testified at a hearing before the Committee on Financial Services, U.S. House of Representatives, on March 12, 2019. The Garcias may use portions of the transcript and video from that hearing in lieu of Mr. Sloan's deposition and live testimony, and for rebuttal purposes.

**Wells Fargo's Position**: Wells Fargo objects to this testimony on a number of grounds. Wells Fargo objects that it is unaware of any Federal Rule of Civil Procedure or Evidence that would provide that Plaintiffs can use Congressional testimony "in lieu of …. deposition and live testimony," even though Mr. Sloan does not reside within 100 miles of the Court and thus is not within its subpoena power. Wells Fargo objects that the video of testimony, which Plaintiffs designated as an exhibit, spans over 4 hours,, so any attempt to excerpt it would

be tantamount to cherrypicking sound bites without the full context. Wells Fargo further objects that this testimony is irrelevant because it occurred in March 2019 – years after the relevant events in the action, including the August 2010 erroneous denial and the February 2011 foreclosure. Wells Fargo further objects that this testimony was conducted for various purposes unrelated to this action. Wells Fargo further objects that this testimony is unduly prejudicial, confuses the issues, would be misleading to the jury, and would waste time. Wells Fargo further objects that this exhibit was not identified during discovery. Wells Fargo further objects that this exhibit should be barred from the action because Plaintiffs attempted to produce it on May 25, 2023, almost a year after the discovery deadline and less than a month before trial. Wells Fargo further objects to the authenticity of the exhibit. Wells Fargo further objects that this testimony is hearsay and thus is inadmissible. Wells Fargo intends to file a motion in limine to exclude all Congressional testimony from the trial on these grounds.

26. **Elizabeth A. Duke, Chair, Wells Fargo & Company -** Elizabeth A. Duke testified at a hearing before the Committee on Financial Services, U.S. House of Representatives, on March 11, 2020. The Garcias may use portions of the transcript and video from that hearing in lieu of Ms. Duke's deposition and live testimony, and for rebuttal purposes.

   **Wells Fargo's Position:** Wells Fargo objects to this testimony on a number of grounds. Wells Fargo objects that it is unaware of any Federal Rule of Civil Procedure or Evidence that would provide that Plaintiffs can use Congressional testimony "in lieu of …. deposition and live testimony," even though Ms. Duke does not reside within 100 miles of the Court and thus is not within its subpoena power. Wells Fargo objects that the full video including the testimony, which Plaintiffs designated as an exhibit, spans nearly 3 hours, so any attempt to excerpt it would be tantamount to cherrypicking sound bites without the full context. Wells Fargo further objects that this testimony is irrelevant because it occurred in March 2020 – years after the relevant events in the action, including the August 2010 erroneous denial and the February 2011 foreclosure. Wells Fargo further objects that this testimony was conducted for various purposes unrelated to this action. Wells Fargo further objects that this testimony is unduly prejudicial, confuses the issues, would be misleading to the jury, and would waste time. Wells Fargo further objects that this exhibit was not identified during discovery. Wells Fargo further objects that this exhibit should be barred from the action because Plaintiffs attempted to produce it on May 25, 2023, almost a year after the discovery deadline and less than a month before trial. Wells Fargo further objects to the authenticity of the exhibit. Wells Fargo further objects that this testimony is hearsay and thus is inadmissible. Wells Fargo also intends to file a motion in limine to exclude all Congressional testimony from the trial on these grounds.

27. **James H. Quigley, Independent Chairman, Wells Fargo & Company -** James H. Quigley testified at a hearing before the Committee on Financial Services, U.S. House of Representatives, on March 11, 2020. The Garcias may use portions of the transcript and video from that hearing in lieu of Mr. Quigley's deposition and live testimony, and for rebuttal purposes.

**Wells Fargo's Position:** Wells Fargo objects to this testimony on a number of grounds. Wells Fargo objects that it is unaware of any Federal Rule of Civil Procedure or Evidence that would provide that Plaintiffs can use Congressional testimony "in lieu of …. deposition and live testimony," even though Mr. Quigley does not reside within 100 miles of the Court and thus is not within its subpoena power. Wells Fargo objects that the full video including the testimony, which Plaintiffs designated as an exhibit, spans nearly 3 hours, so any attempt to excerpt it would be tantamount to cherrypicking sound bites without the full context. Wells Fargo further objects that this testimony is irrelevant because it occurred in March 2020 – years after the relevant events in the action, including the August 2010 erroneous denial and the February 2011 foreclosure. Wells Fargo further objects that this testimony was conducted for various purposes unrelated to this action. Wells Fargo further objects that this testimony is unduly prejudicial, confuses the issues, would be misleading to the jury, and would waste time. Wells Fargo further objects that this exhibit was not identified during discovery. Wells Fargo further objects that this exhibit should be barred from the action because Plaintiffs attempted to produce it on May 25, 2023, almost a year after the discovery deadline and less than a month before trial. Wells Fargo further objects to the authenticity of the exhibit. Wells Fargo further objects that this testimony is hearsay and thus is inadmissible. Wells Fargo also intends to file a motion in limine to exclude all Congressional testimony from the trial on these grounds.

28. **Lawrence Frank, M.D. -** Dr. Lawrence Frank will testify in accordance with his deposition.

**Wells Fargo's Position**: Wells Fargo objects to the extent that Dr. Frank attempts to offer expert opinion, as Plaintiffs have not designated him as an expert. Wells Fargo objects that any designations from Dr. Frank's deposition cannot be read into the record at trial. Pursuant to FRCP 32(a)(4), deposition testimony can only be read into the record if a witness is unavailable for trial. As Dr. Frank resides within 100 miles of the Court, he could be subpoenaed to testify at trial.

29. **Mark Loren Fehr, M.D. -** Dr. Mark Fehr will testify in accordance with his deposition.

**Wells Fargo's Position**: Wells Fargo objects to the extent that Dr. Fehr attempts to offer expert opinion, as Plaintiffs have not designated him as an

expert.

**Defendant's Witness List**

**Witnesses who will be called:**

1. Robert Ferguson, Loan Administration Manager. Mr. Ferguson will testify regarding facts concerning the remediation plan described in the Complaint and Plaintiffs' loan.

2. Carmen Bell, Head, Wells Fargo Home Mortgage Customer Contact and Default Decisions. Ms. Bell will testify regarding facts concerning the remediation plan described in the Complaint. She will also testify regarding facts concerning the loan modification underwriting tool error alleged in the Complaint, and facts concerning Wells Fargo's compliance efforts with respect to mortgage modifications.

3. Peter M. Ross. Mr. Ross is an expert witness who has over thirty-five years of experience in mortgage banking. He has examined Plaintiffs' loan file. He will testify regarding facts concerning Plaintiffs' loan file and issues related to causation.

4. Eduardo Garcia. Mr. Garcia is one of the parties to this action. He would be expected to testify regarding the facts and circumstances surrounding the allegations in the Complaint and Plaintiffs' claimed damages.

5. Julia Garcia.  Mrs. Garcia is one of the parties to this action.  She would be expected to testify regarding the facts and circumstances surrounding the allegations in the Complaint and Plaintiffs' claimed damages.

6. Byron Garcia. Byron Garcia is the son of Eduardo and Julia Garcia. He would be expected to testify regarding the Garcias' financial condition, prior foreclosure proceedings, and their claimed damages.

7. Miriahm Garcia. Miriahm Garcia is the daughter of Eduardo and Julia Garcia. She would be expected to testify regarding her mother's decision to leave her employment at Alivio Medical Center. She would also be expected to testify regarding the Garcias' financial condition, prior foreclosure proceedings, and their claimed damages.

8. Susan Vega. Susan Vega was Mrs. Garcia's co-worker prior to and during the relevant time. She would be expected to testify regarding Mrs. Garcia's decision to leave her employment at Alivio Medical Center.

10. Elena Briseño. Elena Briseño was Mrs. Garcia's co-worker prior to and during the relevant time. She would be expected to testify regarding Mrs. Garcia's decision to leave her employment at Alivio Medical Center.

11. Martha Polo Koehler. Martha Polo Koehler has been Mrs. Garcia's "spiritual" advisor and was Mrs. Garcia's supervisor during the relevant time. She would be expected to testify regarding Mrs. Garcia's decision to leave her employment at Alivio Medical Center.

**Witnesses who may be called:**

12. Dr. William L. Conte. Dr. Conte is a doctor who performed an independent medical examination of Mrs. Garcia. He may testify as an expert witness regarding facts concerning Mrs. Garcia's medical conditions.

13. Dr. David Hartman. Dr. Hartman is a psychologist who performed an independent medical examination concerning Plaintiffs' mental health conditions and medical history. He may testify as an expert witness regarding facts concerning Plaintiffs' mental health conditions and medical history.

14. Daisy Garcia. Daisy Garcia is Byron Garcia's spouse. She may testify regarding Plaintiffs' claimed damages.

15. Dr. Lawrence Frank. Dr. Frank is a doctor who saw Mrs. Garcia as a patient in 2019. He may testify regarding facts concerning Mrs. Garcia's mental and medical conditions.

**(d)** list of all depositions, and designated page and line numbers, to be read into evidence and statements of any objections thereto;

**Plaintiffs' designations:**

Deposition of Lawrence Frank, M.D. - Pages 89:8-90:24.

Wells Fargo objects that these designations cannot be read into the record at trial. Pursuant to FRCP 32(a)(4), deposition testimony can only be read into the record if a witness is unavailable for trial. As Dr. Frank resides within 100 miles of the Court, he could be subpoenaed to testify at

trial. Dr. Frank is also listed on Wells Fargo's witness list as a witness Wells Fargo may call. Wells Fargo further objects to this testimony on the grounds that the selected provision includes an extraneous comment directed at defense counsel and is not testimony at 89:1-7. Wells Fargo further objects to this testimony as irrelevant (FRE 401, 402) and prejudicial (FRE 403).

Defendant's counter designations are as follows: Deposition of Lawrence Frank, M.D. 39:11-19; 52:2-11; 88:25.

Deposition of Mark Loren Fehr, M.D. Pages 70:6-71:20.

. Wells Fargo objects to the selected testimony as irrelevant (FRE 401, 402) and prejudicial (FRE 403).

Defendant's counter designations are as follows:
Deposition of Mark Loren Fehr, M.D. 29-12 -30: 4, 69:16- 25

Deposition of Diane Young. Pages 80:19-23 (Exhibit 367), 91:11-94:9 (Exhibit 369), 113:20-118:21 (Exhibit 376), 117:16-119:11; 147-148:10 (Exhibit 388)

Wells Fargo objects that any designations of Ms. Young's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial for any purpose if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Young is not unavailable pursuant to FRE 804(a), even though Ms. Young resides over 100 miles from the Court and thus is outside of its subpoena power. Wells Fargo further objects to the selected testimony on the grounds that it is irrelevant (FRE 401, 402) and prejudicial (FRE 403), including that it would confuse the issues and mislead the jury. Wells Fargo further objects that the selected testimony includes references to deposition exhibits, which cannot be designated as part of deposition designations.

Defendant's counter designations are as follows:

| Plaintiffs' Designations | Defendant's Counter Designations |
|---|---|
| 80:19-23 (Exhibit 367) | None |
| 91:11-94:9 (Exhibit 369) | 90:5-91:9 |
| 113:20-118:21 (Exhibit 376) | 112:23-113:18 |
| 117:16-119:11 | 93:15-94:9, 108:3-7, 115:17-116:4, 119:12-21 |
| 147-148:10 (Exhibit 388) | 143:14-146:16; 148:12-19 |

Deposition of Beena Menon: 12:14-24; 114:10-22; 115:4-8; 116:17-21, 24-117:1 (Exhibit 376 and 374)

Wells Fargo objects that any designations of Ms. Menon's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Menon is not unavailable pursuant to FRE 804(a), even though she resides over 100 miles from the Court and thus is outside of its subpoena power. Wells Fargo further objects to the selected testimony on the grounds that it is irrelevant (FRE 401, 402) and prejudicial (FRE 403), including that it would confuse the issues and mislead the jury. Wells Fargo further objects that the selected testimony includes references to deposition exhibits, which cannot be designated as part of deposition designations.

Defendant's counter designations are as follows:

| Plaintiffs' Designations | Defendant's Counter-Designations |
|---|---|
| 12:14-24 | 12:3-13; 12:25-13:4 |
| 114:10-22; 115:4-8; 116:17-21, 24-117:1 (Exhibit 376 and 374) | 112:11-113:19; 115:9-116:16; 116:22-23 |

Deposition of Susan Crawford: 13:7-19; 66-68:17 (lead-in to 68:6-17); 69:7-10, 18-23; 70-71:4

Wells Fargo objects that any designations of Ms. Crawford's transcript from the *Hernandez* action cannot be read into the record at trial. Pursuant to FRE 804(b)(1), deposition transcripts from another action can only be read into the record at trial if the testimony meets certain criteria and the witness is unavailable for trial as defined by FRE 804(a). Ms. Crawford is not unavailable pursuant to FRE 804(a), even though she resides over 100 miles from the Court and thus is outside the Court's subpoena power. Moreover, pursuant to LR16.1.4. - Final Pretrial Order Form, Plaintiffs are required to identify "designated page and line numbers to be read into evidence" for any deposition testimony they plan to designate. Several of Plaintiffs' designations do not include line numbers and omit complete questions and responses. Wells Fargo further objects to the selected testimony on the grounds that it is irrelevant (FRE 401, 402) and prejudicial (FRE 403), including that it would confuse the issues and mislead the jury.

Defendant's counter designations are as follows:

| Plaintiffs' designations | Defendant's counter-designations |
|---|---|
| 13:7-19 | None |
| 66-68:17 (lead-in to 68:6-17) | 65:23-69:13 |
| 69:7-10, 18-23 | 69:14-23, 69:24-71:4 |
| 70-71:4 | 72:2-8, 118: 2-9 |

**Defendant's designations:**

**Wells Fargo's Designations for Dr. Mark Loren Fehr**

7:21-24
12:3-8
28:3-23
30:16-31:2
35:14-22
36:19-37:15
37:17-39:2
60:6-62:14

**(e)** an itemized statement of damages;

| | |
|---|---|
| 1) | Approximately $68,850 invested in improvements and upgrades to the foreclosed home. |
| 2) | $2,049 in Chapter 7 fees and attorneys fees. |
| 3) | Loss of equity in home of $207,888.00. |
| 4) | Approximately $1,500 in apartment application fees. |
| 5) | The costs of moving from their home to an apartment. |
| 6) | Approximately $5,000 in tools and power tools that Mr. Garcia was forced to sell cheaply or give away. |
| 7) | Loss of furniture and personal belongings that had to be sold, given away, or thrown out when they were forced out of the house. |
| 8) | Approximately $150 per month for prescription costs associated with anti-anxiety and antidepressant medications prescribed by Dr. Pillai. |
| 9) | Out of pocket medical expenses related to stress, anxiety, and depression. |
| 10) | Time spent by the Garcias trying to get Wells Fargo to address their loan modification efforts, going to court on the foreclosure case, and moving from their home. |

Wells Fargo objects to #3 as being subject to a motion in limine Wells Fargo intends to file.

Wells Fargo objects to #5, #7, #9 and #10 as lacking an itemization as required by LR16.1.4.-Final Pretrial Order Form. As the Northern District of Illinois has explained, complying with the pretrial order requirements, including the itemization of damages, is of critical importance. *Toney v. Rosewood Care Ctr., Inc.*, No. 98 C 693, at 2002 WL 992642 *2-3 (N.D.

Ill. May 15, 2002). Thus, if Plaintiffs cannot itemize these categories at this stage in the case, they should be excluded from the trial.

Wells Fargo further objects to #10 to the extent it includes "time spent by the Garcias to address their loan modification efforts." #10 is speculative, including because the Garcias do not state how much time they spent on those efforts or how time spent could be calculated into damages. Under Illinois law, damages need to be demonstrated to a reasonable degree of certainty, and may not be awarded based on conjecture or speculation. *See Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F.Supp.2d 761, 767 (N.D. Ill. 2005).

Wells Fargo objects to #8 and #9 as seeking damages for expenses Plaintiffs would have incurred regardless of any injury allegedly caused by Wells Fargo. To recover damages for ICFA, a plaintiff needs to "show he suffered actual damage *as a result of* the defendant's *violation* of the act." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (emphasis added). It is undisputed that Mrs. Garcia suffered from depression, anxiety and stress before the erroneous denial and thus would have needed that medical care regardless of Wells Fargo's conduct.

Wells Fargo further objects to #1 - #10, excluding the amount for Chapter 7 filing fees, as lacking sufficient support, including because they lack documentary support, making them speculative and lacking "a reasonable degree of certainty." Under Illinois law, damages need to be demonstrated to a reasonable degree of certainty, and may not be awarded based on conjecture or speculation. *See Dunkin' Donuts*, 428 F.Supp.2d at 767. Moreover, even if a party establishes it is entitled to damages, but is unable to prove those damages with a reasonable degree of certainty, it may only recover nominal damages awarded at the discretion of the trial judge. *Euroholdings Capital & Inv. Corp. v. Harris Trust.& Sav. Bank*, 602 F. Supp. 2d. 928, 936 (N.D. Ill. 2009).

As to general unliquidated damages:

**Compensatory Damages**:

The Plaintiffs will seek an amount of general unliquidated damages to be determined as the jury deems reasonable and may award. The Plaintiffs have previously provided the formula that they intend to present to the jury as their proposal to calculate compensatory damages in this case.

Wells Fargo objects to the inclusion of the formula that Plaintiffs plan to present and is seeking the exclusion of it from the trial in a motion in limine.

**Punitive Damages**:

19

The Plaintiffs will seek an award of punitive damages as the jury deems reasonable and may award. The Plaintiffs have previously provided Wells Fargo several various manners of calculating punitive damages that they may suggest to the jury as part of their arguments. Ultimately, the jury will determine if these damages should be awarded, and, if so, in what amount.

Wells Fargo objects and states that it does not believe that "Plaintiffs have "previously provided Wells Fargo several various manners of calculating punitive damages that they may suggest to the jury as part of their arguments." Wells Fargo further objects and states that it is well-settled that "punitive damages are . . . not subject to precise calculation" and "must not be grossly excessive." *Davis v. Harris*, 2006 WL 3513918, at *4 (C.D. Ill. Dec. 5, 2006).

With regard to Plaintiffs' specific proposed formulas for punitive damages, Wells Fargo objects to the presentation of those formulas to the jury as irrelevant, unduly prejudicial, confusing the issues for the jury, misleading the jury, and not grounded in law on their face. Wells Fargo further objects that these formulas were not disclosed during discovery. Wells Fargo is seeking the exclusion of those formulas from the trial in a motion in limine.

**Plaintiffs' Response:** The Defendants are not entitled to invade the work-product or trial strategy of Garcias' counsel. There is no case law that requires Plaintiffs' counsel to disclose a calculation of unliquidated damages. It should be noted that adjustments to the roster of Winston attorneys handling this case could be the reason that trial counsel is not familiar with previous conversations on this point.

In the past, Garcias' counsel has suggested several ways that punitive damages could be argued. Garcias' counsel is not bound to argue any one of these methods. Garcias' counsel may argue some or all of these methods as plausible, reasonable, and justifiable. After all, Garcias' counsel's argument about an appropriate damages award is not evidence, but simply arguments to the jury. Among the many ways that a jury could determine a proper punitive damages award include, at least, the following: disgorgement of all funds received by Wells Fargo under HAMP; a percentage of Wells Fargo's revenue equivalent to the percentage of income derived by dividing the criminal fines for various categories of offenses by the average median income for Cook County to yield a percentage of income which would then be multiplied by Wells Fargo's 2022 revenue to

produce a similar financial punishment; a multiple of Wells Fargo's daily net interest income from 2022's financials; an amount equal to fines and penalties levied against Wells Fargo under various consent decrees; a multiple of the fines and penalties levied against Wells Fargo under the various consent decrees; a disgorgement of all Wells Fargo's net income between 2011-2022; and finally, a death penalty award large enough to put Wells Fargo into FDIC receivership.

**(f)** for a jury trial, each party shall provide the following:

    (i)    The parties have been instructed not to file trial briefs.

    (ii)    one set of marked proposed jury instructions, verdict forms and special interrogatories, if any; and

    (iii)    a list of the questions the party requests the court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a);

### *Voir Dire* **Questions**

Exhibit "C-1" contains the Garcias' *voir dire* questions and Defendant's objections.

Exhibit "C-2" contains Wells Fargo's proposed *voir dire*.

Exhibit "D" contains the Garcias' proposed Jury Questionnaire and Defendant's objections.

Wells Fargo objects to the inclusion of Plaintiffs' proposed jury questionnaire because it does not adhere to the Court's protocol. Instead, the Court's protocol states that the Court drafts the jury questionnaire with the input of the parties. The Court's rules on the Jury Selection Process state, "In drafting the questionnaire, Judge Pallmeyer uses the parties' proposed *voir dire* questions and ordinarily permits counsel to review the questionnaire and make suggestions for changes prior to administration of the questionnaire." Thus, Wells Fargo contends that this exhibit should be removed.

### **Jury Instructions**

Exhibit E contains the parties jury instructions. Nine instructions are disputed. The rest are agreed.

### **Verdict Forms**

Exhibit "F-1" contains the Garcias' proposed verdict forms with Defendant's objections and Exhibit "F-2" contains Defendant's proposed jury verdict forms with the Garcia's objections.

**(g)** The Parties agree discovery is complete.

**Expert Witness Qualifications**

Exhibit G contains Wells Fargo's expert witnesses' qualifications, followed by any objections by the Garcias.

<u>**Garcias and Wells Fargo have agreed**</u>:

a. Not to reference any motions *in limine*;
b. Not to reference any settlement discussions in this matter;
c. To bar non-party witnesses from the courtroom prior to their testimony;
d. Not to reference the Court's prior orders in this case on motions in limine and discovery motions;
e. Not to mention whether a party refused to stipulate to a fact;
f. Not to mention any prior versions of the complaint other than the operative complaint;
g. Not to reference that the Garcias may have a contingency attorney fee agreement;
h. Not to use the following phrases: (a) McDonald's coffee cup case and its derivatives; (b) Runaway jury verdict; (c) Lawsuit lottery; (d) Frivolous lawsuit; or (e) Jackpot Justice
i. Not to mention the size of the law firm or number of lawyers or other professionals representing any party;
j. Not to mention liability insurance;
k. Not to mention what the Garcias would do with the proceeds from a judgment;
l. The Golden Rule;
m. Not to present a day in the life evidence for the Garcias;
n. Not to elicit testimony from the Garcias on hearsay medical information received from their doctors.

**(h)** subject to full compliance with all the procedural requirements of Rule 37(a)(2), a brief summary of intended motions in *limine*. Any briefs in support of and responses to such motions shall be filed as directed by the Court.

<u>**Defendant's Motions *in Limine***</u>:

1. Motion *in Limine* to preclude any prescribed methodology for or numeric value of non-economic damages not based in evidence.

2. Motion *in Limine* to exclude evidence and argument related to theories of liability that were not alleged in plaintiffs' complaint, including (i) dual tracking, and (ii) allegedly "predatory" modification offers and servicing.

3. Motion *in Limine* to preclude evidence of consent orders, Congressional testimony and reports, all documents produced after the discovery deadline, and punitive damages, including Plaintiffs' purported proposed formulas for calculating punitive damages, or to bifurcate punitive damages in the alternative.

4. Motion *in Limine* to exclude evidence and argument regarding recovery of economic damages for lost equity.

5. Motion *in Limine* to exclude evidence and argument regarding any inflammatory, offensive, and defamatory rhetoric of Wells Fargo, including any unrelated press mentions or settlements of any other matters involving Wells Fargo, including but not limited to *Hernandez v. Wells Fargo Bank, N.A*., No. 3:18cv07354 (N.D. Cal.).

The following *optional* statement was submitted and is included below and made a part of this Order:

**(i)** an agreed statement or statements of the contested issues of fact and law;

The contested issues of fact and law are:
(1) Whether Wells Fargo violated the ICFA;
(2) Whether the Garcias suffered damages proximately caused by Wells Fargo; and
(3) The amount of damages, if any, that the Garcias should be awarded.

**(3)** Garcias' position is that the trial of this case is expected to take 7 days including jury selection. Given the impending 4th of July holidays, the Garcias can begin the trial earlier than June 23, 2023, if the Court is so inclined.

Wells Fargo's position is the trial of this case is expected to take 5-6 days, including jury selection. Wells Fargo does not agree to alter the trial start date.

The case is currently listed on the trial calendar for June 23, 2023, to be tried when reached.

**(4)** [*Indicate the type of trial by placing an X in the appropriate box*]

[X] Jury        [ ] Non-jury

**(5)** The parties recommend that 12 jurors be selected at the commencement of the trial.

**(6)**   The Garcias do not agree that liability and damages, or punitive damages, should be bifurcated for trial. Wells Fargo intends to file a motion in limine to bar punitive damages from the action, and Wells Fargo also intends to move to bifurcate punitive damages from the trial, in the alternative.

**(7)**   [*Pursuant to 28 U.S.C. § 636(c), parties may consent to the reassignment of this case to a magistrate judge who may conduct any or all proceedings in a jury or non jury civil matter and order the entry of judgment in the case. Indicate below if the parties consent to such a reassignment.*]

   The parties do not consent to this case being reassigned to a magistrate judge for trial.

**(8)**   This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

**(9)**   The possibility of settlement of this case was considered by the parties.

ENTER:

Dated:  June 12, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

Dated:

/s/ Nick Wooten
Nicholas H. Wooten
DC LAW, PLLC
1012 W. Anderson Lane
Austin, Texas 78757
Phone: (512) 910-3285
Fax: (512) 220-1801
nick@texasjustice.com

Rusty A. Payton
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
Phone: (773) 682-5210

/s/ Amanda L. Groves
Amanda L. Groves
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071
Phone: (213) 615-1700
Fax: (213) 615-1750
agroves@winston.com
Angela A. Smedley
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Phone: (212) 294-6700
Fax: (212) 294-4700

info@payton.legal

Salvador J. Lopez
Robson & Lopez, LLC
121 S. Western Avenue, Suite 1
Chicago, Illinois 60612
Phone: (312) 523-2166
lopez@robsonlopez.com

*Counsel for Plaintiffs*

asmedley@winston.com

Scott Ahmad
Christopher Parker
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5600
Fax: (312) 558-5700
sahmad@winston.com
cparker@winston.com

*Counsel for Defendant*