UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO GARCIA and JULIA GARCIA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, N.A., ) <br> ) <br> Defendant. ) | No. 20 C 2402 <br><br> Judge Rebecca R. Pallmeyer |

## ORDER

The court held pretrial conferences on June 8 and 14, 2023 to discuss various pretrial motions, disputed witnesses and exhibits, proposed verdict forms, and proposed jury instructions. The court settled many of the disputes for the reasons discussed on the record, but reserved ruling on certain issues, which the court now resolves as explained herein.

## DISCUSSION

The court has broad discretion to decide pretrial motions as part of its inherent authority to manage the course of trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "Often, however, the better practice is to wait until trial to rule on objections, particularly when admissibility substantially depends upon facts which may be developed there." *Navarrete v. Madison Cnty.*, No. 17-CV-347-SMY, 2021 WL 2374350, at *1 (S.D. Ill. June 10, 2021) (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). The court will only grant a motion *in limine* to exclude evidence when the evidence appears to be inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). Even where the moving party makes such a showing that this test is met, the court retains jurisdiction to change its ruling at trial. *Luce*, 469 U.S. at 41 n.4.

I.  **Motions *In Limine***

Wells Fargo has filed several motions *in limine*, many of them addressed at the pretrial conference. Wells Fargo's remaining motion asks the court to bar "evidence and argument

related to theories of liability that Plaintiffs did not allege in their Complaint." See MIL No. 2 [168] at 1. According to Wells Fargo, Plaintiffs have advanced two "new theories of liability"—first, that Wells Fargo engaged in HAMP-prohibited "dual-tracking"[1] and second, that Wells Fargo offered loan modifications and forbearance plans that "did not comply with HAMP." Id. To the extent that Plaintiffs will seek to argue that dual-tracking or offering non-HAMP modification offers can, on their own, provide a basis for ICFA liability at this point in the case, the court agrees with Wells Fargo that any new claim is untimely and will be barred.

But based on the summary judgment briefing and Plaintiffs' counsel's statements in court, it does not appear that Plaintiffs intend to pursue new "theories of liability." Instead, Plaintiffs' arguments and evidence are directed at their initial theory: that Wells Fargo failed to properly evaluate Garcias under HAMP, as Wells Fargo was obligated to do under its Servicer Participation Agreement with the government. Plaintiffs' complaint does not discuss "dual-tracking" in so many words, but it does it allege that Wells Fargo failed to evaluate the Garcias for a loan modification under HAMP and then "needlessly foreclosed" on them. (See Compl. [1] ¶¶ 27–28.) Plaintiffs will presumably want to tell the jury that the HAMP guidelines prohibited Wells Fargo from foreclosing until Plaintiffs were properly evaluated for a HAMP trial modification, which, in Plaintiffs' view, never happened. That argument may or may not be persuasive to the jury, but it is consistent with Plaintiffs' theory throughout this case. Similarly, Plaintiffs want to explain to the jury that Wells Fargo offered several other modifications, none of which were "HAMP modifications," to make clear that, in Plaintiffs' view, Wells Fargo did not evaluate them under the standards of HAMP.[2] Neither is an independent theory of liability, but both are relevant to Plaintiffs' ICFA unfairness claim.

---

[1] Dual-tracking, in short, is when a mortgage servicer forecloses on a borrower while still evaluating the borrower for a loan modification.

[2] If Wells Fargo's summary judgment briefing is any clue, Wells Fargo intends to spend significant time on these other modification offers, too.

Wells Fargo's motion *in limine* is accordingly denied without prejudice. If certain documents or lines of questioning suggest that Plaintiffs are changing their theory of liability—rather than adducing evidence that supports their original theory—or attempting to suggest that the evidence supports a new and independent claim, Wells Fargo is welcome to re-raise its arguments at the appropriate time. The court also invites the parties to weigh in on how the court's ruling on this motion affects Wells Fargo's unresolved objections to certain exhibits by the close of business on Tuesday, June 20, 2023.

## II.     Disputed Jury Instructions

The court, with the assistance of the parties, resolved all but one disputed jury instruction—on punitive damages—during the pretrial conferences. *See* Proposed Pretrial Order [164] Ex. E at 19–23 (detailing the parties' dueling proposed instructions). Plaintiffs' proposed instructions hews closest to the Illinois Pattern Jury Instructions and is very similar to those adopted in similar cases, including those reviewed by the Seventh Circuit. *See, e.g.*, Jury Instructions [274] at 44–45, *Saccameno v. Ocwen Loan Servicing, LLC*, 15-cv-01164 (N.D. Ill. Apr. 11, 2018).

The court adopts an amended version of Plaintiffs' proposed instructions, which shall read as follows.

**PUNITIVE DAMAGES**

> If you find for the Garcias, you may, but are not required to, assess punitive damages against Wells Fargo. The purposes of punitive damages are to punish a defendant for its conduct and to serve as an example or warning to the defendant and others not to engage in similar conduct in the future.
>
> The Garcias must prove by a preponderance of the evidence that punitive damages should be assessed against Wells Fargo. You may assess punitive damages only if you find that Wells Fargo's conduct was committed with fraud, actual malice, deliberate violence or oppression, or, if you find that Wells Fargo acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others, and proximately caused injury and/or damage to the Garcias, and if you believe that justice and the public good require it.
>
> If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in

3

an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward any party.

In arriving at your decision as to the amount of punitive damages, you should consider the following three questions. The first question is the most important one in determining the amount of punitive damages:

(1) How reprehensible was Wells Fargo's conduct? On this subject, you should consider the following:

>(a) The facts and circumstances of Wells Fargo's conduct;

>(b) The financial vulnerability of the Garcias;

>(c) The duration of the misconduct;

>(d) The frequency of Wells Fargo's misconduct;

>(e) Whether the harm was physical as opposed to economic; and

>(f) Whether Wells Fargo tried to conceal the misconduct.

(2) What actual and potential harm did Wells Fargo's conduct cause to the Garcias in this case?

(3) What amount of money is necessary to punish Wells Fargo and discourage it and others from future wrongful conduct?

The amount of punitive damages must be reasonable and in proportion to the actual and potential harm suffered by the Garcias.

Because Wells Fargo is a corporation, punitive damages may be awarded against Wells Fargo only (1) if you find in favor of the Garcias and against Wells Fargo, and (2) if you find that, as to the unfair acts or practices giving rise to liability under the ICFA Unfairness Claim, one or more of the following conditions are proved:

>(a) The corporation, through its management, authorized the doing and the manner of the unfair act or practice; or

>(b) The unfair act or practice was that of a managerial employee who was acting in the scope of his or her employment; or

>(c) The corporation, through its management or a managerial employee, ratified or approved the unfair act or practice.

### III. Verdict Form

Plaintiffs propose a special verdict form under Fed. R. Civ. P. 49 under which the jury—if it decides Plaintiffs are entitled to punitive damages—would rank Wells Fargo's conduct from 1 to 9 on a "reprehensibility scale." *See* Proposed Pretrial Order, Ex. F-1 at 6–7. Wells Fargo opposes

4

such a form and argues that the question is "wholly irrelevant" and "prejudicial." *Id.* Plaintiffs filed a brief in support of their proposed form [165] and Wells Fargo has moved to strike that brief and the proposed form [177].[3]

In Plaintiffs' written submission in support of the proposed form and at the June 8 pretrial conference, they explained the origin of the belief that such a form is necessary. Specifically, Plaintiffs note that the Seventh Circuit has overturned large punitive damages awards from juries based on a finding that the conduct at issue was "less reprehensible" than in other cases. *See, e.g.*, *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1088 (7th Cir. 2019). In Plaintiffs' view, a special verdict form—in which the jury could make explicit how "reprehensible" it found Wells Fargo's conduct—could aid the appellate court if it comes time to review a punitive damages award in this case. Wells Fargo responds that such a reprehensibility scale has no basis in caselaw and in fact "*contravenes* controlling law." Wells Fargo Br. at 4.

At the pretrial conference, Plaintiffs conceded that they are not aware of a case in which such a scale has been used. To some degree, of course, that is true of all special verdict forms. The court does not equate novelty with error, though it recognizes that any special verdict must "accurately reflect[] controlling law." *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 214 (7th Cir. 1995). So, for example, a verdict form that asked whether the plaintiff's age was "one of the reasons" for his discharge was reversible error when the standard under the ADEA was whether age was the "but for" cause of the discharge. *Id.* at 213–14.

That form is not analogous to the one Plaintiffs propose here. Each party's proposed punitive damages instruction adopts the same IPI language, which asks the jury: "How

---

[3] Wells Fargo urges that Plaintiffs' memorandum in support of their proposed form is untimely and improper. *See* Wells Fargo Br. [177] at 2–3. While the court recognizes that Wells Fargo was not given as much time to review Plaintiffs' memorandum as it should have been, it does not believe that Plaintiffs' delay is a basis to strike the proposed form, which was itself provided to Wells Fargo at the appropriate time. The court has carefully considered Wells Fargo's brief opposing the form and Wells Fargo's oral arguments at the June 8 pretrial conference.

reprehensible was Wells Fargo's conduct?" Plaintiffs' proposed verdict form simply asks the jury to answer that question using a numeric scale after considering the listed factors. In the court's view, Plaintiffs' proposed scale may be unusual, but it is consistent with the controlling law on punitive damages and potentially provides a basis for court review of any such award. Wells Fargo also insists that Plaintiffs' request is self-interested. See Wells Fargo Br. at 5. But either side could benefit from the special verdict form. If the jury awards large punitive damages with a low reprehensibility score, Wells Fargo will have a strong ground for post-trial motions or an appeal.

In sum, the court agrees that—assuming a jury finds for Plaintiffs and chooses to award punitive damages—a special verdict form will help this court to review post-trial motions and will facilitate the Seventh Circuit's review as well. The court intends to adopt the 1-through-9 scale proposed by Plaintiffs, with the word "minimally" appearing above "1" and the word "extremely" appearing above 9.[4] The court is confident that the jury—with the aid of the reprehensibility factors detailed in the punitive damages jury instruction and through its own common sense—will be able to rank Wells Fargo's conduct without being misled or confused, as Wells Fargo charges.

That said, the court agrees with Wells Fargo that Plaintiffs' proposed verbiage introducing the scale to the jury needs revision. The court invites the parties to propose competing language by close of business on Tuesday, June 20, 2023.

Dated: June 16, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

---

[4] The court adopts these terms from the caselaw provided by Plaintiffs. See Plaintiffs' Br. [165] at 6 (quoting *Int'l Union of Operating Eng'rs, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 490, 870 N.E.2d 303, 324 (2006) and *Sommerfield v. Knasiak*, 967 F.3d 617, 623 (7th Cir. 2020)). If Wells Fargo wishes to propose terms that are similarly rooted in caselaw, the court will consider revisions.